No. 23-30666

# United States Court of Appeals for the Fifth Circuit

STATE OF LOUISIANA, ET AL.,
*Plaintiffs-Appellees*,

v.

DEB HAALAND, ET AL.,
*Defendants*,

v.

SIERRA CLUB, ET AL.,
*Intervenor-Defendant-Appellants.*

SHELL OFFSHORE INC.,
*Plaintiff-Appellee*,

v.

U.S. DEPARTMENT OF THE INTERIOR, ET AL.,
*Defendants*,

v.

SIERRA CLUB, ET AL.,
*Intervenor-Defendant-Appellants.*

On Appeal from the United States District Court for the Western District of Louisiana, Case Nos. 2:23-cv-01157 (Lead); 2-23-cv-01167 (Member), Honorable James D. Cain, Jr.

## EMERGENCY MOTION FOR STAY PENDING APPEAL

Date: September 22, 2023

Christopher Eaton
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-1526
ceaton@earthjustice.org
*Counsel for Intervenor-Defendant-Appellants*

## CERTIFICATE OF INTERESTED PARTIES

Counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

**Intervenor-Defendant-Appellants:**

1. Sierra Club
2. Center for Biological Diversity
3. Friends of the Earth
4. Turtle Island Restoration Network

**Counsel for Intervenor-Defendant-Appellants Sierra Club, Center for Biological Diversity, Friends of the Earth, and Turtle Island Restoration Network:**

5. Christopher Douglass Eaton, Earthjustice

**Plaintiffs-Appellees:**

6. State of Louisiana, by and through its Attorney General, Jeff Landry
7. American Petroleum Institute
8. Chevron U.S.A. Inc.
9. Shell Offshore Inc.

**Counsel for Plaintiffs-Appellees:**

10. Jeff Landry, Louisiana Dept. of Justice
11. Elizabeth B. Murrill, Louisiana Dept. of Justice
12. Joseph S. St. John, Louisiana Dept. of Justice
13. Jordan B. Redmon, Louisiana Dept. of Justice
14. James A. Holms, Christovich & Kearney
15. Kyle D. Anderson, Christovich & Kearney
16. Paul D. Clement, Clement & Murphy, PLLC
17. C. Harker Rhodes IV, Clement & Murphy, PLLC

18. Andrew Lawrence, Clement & Murphy PLLC
19. James Y. Xi, Clement & Murphy, PLLC
20. Michael R. Phillips, Kean Miller LLP
21. Claire E. Juneau, Kean Miller LLP
22. Jeffrey J. Gelpi, Kean Miller LLP
23. Robert Kallam, Kean Miller LLP
24. Catherine E. Stetson, Hogan Lovells US LLP
25. Sean Marotta, Hogan Lovells US LLP
26. Dana A. Raphael, Hogan Lovells US LLP
27. Nikesh Jindal, King & Spalding LLP
28. Sarah C. Bordelon, Holland & Hart LLP
29. Steven J. Rosenbaum, Covington & Burling LLP
30. Bradley K. Ervin, Covington & Burling LLP
31. Samuel Howe, Covington & Burling LLP
32. R. Keith Jarrett, Liskow & Lewis, APLC
33. Kelly Brechtel Becker, Liskow & Lewis, APLC
34. Michael J. Mazzone, Haynes & Boone, LLP

**Defendants**

35. Deb Haaland, in her official capacity as Secretary of the Interior
36. Laura Daniel-Davis, in her official capacity as Principal Deputy Assistant Secretary of the Interior for Land and Minerals Management
37. Elizabeth Klein, in her official capacity as Director of BOEM of Ocean Energy Management
38. James Kendall, in his official capacity as Director of the Gulf of Mexico Regional Office of BOEM of Ocean Energy Management
39. U.S. Department of the Interior
40. Bureau of Ocean Energy Management

**Counsel for Defendants**

41. Luther L. Hajek, U.S. Department of Justice, Environment & Natural Resources Division
42. Alexis G. Romero, U.S. Department of Justice, Environment & Natural Resources Division

Date: September 22, 2023          /s/ Christopher D. Eaton
                                 Christopher D. Eaton
                                 EARTHJUSTICE

ii

810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-1526
ceaton@earthjustice.org
*Counsel for Intervenor-Defendant-Appellants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 2

    I.   Legal Background ...................................................................... 2

       A.  Outer Continental Shelf Lands Act ................................... 2

       B.  Administrative Procedure Act .......................................... 4

       C.  Inflation Reduction Act ................................................... 4

    II.  Factual Background ................................................................. 5

       A.  The Critically Endangered Rice's Whale .......................... 5

       B.  Gulf of Mexico Lease Sale 261 ....................................... 7

    III.  Procedural History ................................................................. 9

ARGUMENT ..................................................................................... 11

    I.   Intervenor-Defendants Will Likely Succeed in Reversing the
    Injunction. ............................................................................ 11

       A.  The District Court Issued an Improper Mandatory
       Injunction. .................................................................... 11

       B.  Intervenor-Defendants are Likely to Prevail on Appeal ................ 14

          1.  Plaintiffs' procedural claims lack merit. ..................... 14

          2.  BOEM's decision did not violate the APA. ................. 16

       C.  Plaintiffs Face No Irreparable Harm. ............................. 18

    II.  The Balance of Equities and the Public Interest
    Overwhelmingly Favor a Stay. ............................................... 20

CONCLUSION ................................................................................. 24

CERTIFICATE OF SERVICE ............................................................ 25

CERTIFICATE OF COMPLIANCE ......................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amoco Prod. Co. v. Vill. of Gambell,*
    480 U.S. 531 (1987) ................................................................................ 22

*Aransas Project v. Shaw,*
    775 F.3d 64 (5th Cir. 2014) .................................................................... 22

*Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,*
    462 U.S. 87 (1983) .................................................................................... 4

*BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of Currency of U.S.,*
    467 F.3d 871 (5th Cir. 2006) .................................................................. 13

*Brock v. Pierce Cnty.,*
    476 U.S. 253 (1986) ................................................................................ 14

*Burgess v. FDIC,*
    871 F.3d 297 (5th Cir. 2017) .................................................................. 18

*Cal. v. Watt,*
    668 F.2d 1290 (D.C. Cir. 1981) ................................................................ 3

*Cal. v. Watt,*
    712 F.2d 584 (D.C. Cir. 1983) .................................................................. 3

*Chambless Enterprises, LLC v. Redfield,*
    508 F.Supp.3d 101 (W.D. La. 2020) ....................................................... 18

*Davis v. Mineta,*
    302 F.3d 1104 (10th Cir. 2002) .............................................................. 22

*Defs. of Wildlife v. U.S. Fish & Wildlife Serv.,*
    539 F.Supp.3d 543 (D.S.C. 2021) .......................................................... 24

*DHS v. Regents of Univ. of California,*
    140 S. Ct. 1891 (2020) ............................................................................ 13

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ................................................................ 17

*Google, Inc. v. Hood*,
   822 F.3d 212 (5th Cir. 2016) .................................................. 11

*La., ex rel. Guste v. Verity*,
   853 F.2d 322 (5th Cir. 1988) .................................................. 22

*Holland Am. Ins. Co. v. Succession of Roy*,
   777 F.2d 992 (5th Cir. 1985) .................................................. 19

*Jiao v. Xu*,
   28 F.4th 591 (5th Cir. 2022) ............................................. 11, 20

*Louisiana v. Horseracing Integrity & Safety Auth. Inc.*,
   617 F.Supp.3d 478 (W.D. La. 2022) ....................................... 19

*Marathon Oil Co. v. Babbitt*,
   966 F.Supp. 1024 (D. Colo. 1997), *aff'd*, 166 F.3d 1221 (10th
   Cir. 1999) ................................................................................ 14

*Marsh v. Or. Natural Res. Council*,
   490 U.S. 360 (1989) ................................................................. 4

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ............................................................... 14

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................... 4

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005) ............................................................... 17

*Nat'l Wildlife Fed'n v. NMFS*,
   886 F.3d 803 (9th Cir. 2018) ............................................. 21, 24

*Nken v. Holder*,
   556 U.S. 418 (2009) .......................................................... 11, 20

*O'Reilly v. U.S. Army Corps of Eng'rs*,
   477 F.3d 225 (5th Cir. 2007) .................................................. 13

*Roark v. Individuals of the Fed. Bureau of Prisons*,
    2013 WL 2153944 (E.D. Tex. May 16, 2013), *affirmed*............................ 12

*Roark, v. Individuals of Fed. Bureau of Prisons, Former and Current*,
    558 Fed. Appx. 471 (5th Cir. 2014) ...................................................11, 12

*Sampson v. Murray*,
    415 U.S. 61 (1974) ............................................................................. 18

*Wyo., ex rel. Sullivan v. Lujan*,
    969 F.2d 877 (10th Cir. 1992)................................................................ 13

*United States v. Hasson*,
    26 F.4th 610 (4th Cir. 2022) ................................................................. 20

*Zhu v. Gonzales*,
    493 F.3d 588 (5th Cir. 2007) ................................................................. 13

**Federal Statutes**

5 U.S.C. § 706(2)(A), (D) ........................................................................ 4

16 U.S.C. § 1536(a)(2)............................................................................. 5

43 U.S.C. § 1331 *et seq.*......................................................................... 2

43 U.S.C. § 1345(a) ................................................................................ 3

Pub. L. No. 117-169, 136 Stat. 1818 (2022) ................................................. 4

**Rules**

Fifth Circuit Rule 27.4 ............................................................................. 2

Fed. R. App. P. 8(a).............................................................................2, 11

Fed. R. Civ. P. 8(a)(1) ........................................................................... 10

**Regulations**

30 C.F.R. § 550.105 .............................................................................. 23

30 C.F.R. § 550.207 .............................................................................. 23

30 C.F.R. § 556.304(c) ................................................................. 3

30 C.F.R. § 556.305(a) ................................................................. 3

30 C.F.R. § 556.307 ................................................................... 16

30 C.F.R. § 556.307(a) .............................................................. 3, 15

82 Fed. Reg. 6643 (Jan. 19, 2017) ................................................ 7

84 Fed. Reg. 15,466 (Apr. 15, 2019) ............................................ 7

88 Fed. Reg. 16,030 (Mar. 15, 2023) ..................................... *passim*

88 Fed. Reg. 47,453 (July 24, 2023) ......................................... 5, 6

88 Fed. Reg. 916, 944 (Jan. 5, 2023) ........................................... 5

## INTRODUCTION

The district court's "preliminary" injunction improperly mandates action that changes the status quo and effectively grants final judgment to Plaintiffs, even though such relief would not even be available following a successful merits decision. The injunction poses unjustified harm to the critically endangered Rice's whale and to Intervenor-Defendants' interests in protecting the whale. Intervenor-Defendants respectfully seek a stay pending appeal. A ruling is requested by September 26, 2023—prior to the affected agency action that is scheduled to take place on September 27—because of the pressing need for relief of the injunction's detrimental impact on a species that numbers less than 50 individuals.

The Rice's whale is one of the most endangered marine mammals on Earth. Based on an evolving understanding of threats to the species, the Bureau of Ocean Energy Management ("BOEM") included two interim protective measures as part of an offshore oil and gas lease sale in the Gulf of Mexico: Lease Sale 261. After providing notice that it was considering this step in March 2023, BOEM excluded 6 million acres of proposed critical habitat for the species, leaving 67.3 million acres available for leasing. In addition, BOEM required certain vessel speed and transit restrictions in the whale's habitat to protect the species from deadly vessel strikes. These measures are fully within

1

BOEM's discretion to prepare and implement oil and gas lease sales under the Outer Continental Shelf Lands Act ("OCSLA").

In challenging these measures, Plaintiffs demanded, and the district court granted, "preliminary" relief that far exceeded the bounds of the law allows: an injunction forcing BOEM to change the terms of the sale and move forward by September 30. The district court relied on several manifest errors of law and factual conclusions that contradict the record, substituted its judgment for that of the agency, and credited speculative and exaggerated claims of economic harm while failing to address the uncontested irreparable harm to Rice's whales from the injunction.

This Court should preserve the status quo and immediately stay the injunction. *See* Fed. R. App. P. 8(a). Intervenor-Defendants have contacted the parties per Fifth Circuit Rule 27.4. Plaintiffs oppose the motion and Federal Defendants were unable to respond before filing.

## BACKGROUND

### I.  Legal Background

#### A. Outer Continental Shelf Lands Act

OCSLA governs the leasing, exploration, and development of oil and gas deposits in the Outer Continental Shelf ("OCS"). 43 U.S.C. § 1331 *et seq*. OCSLA charges the Secretary of the Interior, acting through BOEM, with

managing oil and gas activities on the OCS in a manner that considers and safeguards the marine environment. *Id*. §§ 1334(a), 1344(a).

OCSLA prescribes a four-stage "pyramidic" process for offshore oil and gas development : (1) five-year leasing programs; (2) lease sales; (3) exploration plans; and (4) development and production plans. *Cal. v. Watt*, 668 F.2d 1290, 1297 (D.C. Cir. 1981). §§ 1337, 1340, 1344, 1351. BOEM's five-year program develops a schedule of proposed lease sales indicating leasing activity "size, timing, and location," *id*. § 1344(a), and retaining discretion to modify, scale back, or cancel proposed lease sales. *See id*. § 1344(a), (e); *Cal. v. Watt*, 712 F.2d 584, 588 (D.C. Cir. 1983).

At the lease sale stage, BOEM decides whether and under what conditions to offer OCS areas for leasing. *Id*. § 1337. BOEM first publishes a proposed notice of sale that "contains a description of the area proposed for leasing, the proposed lease terms and conditions of sale, and proposed stipulations to mitigate potential adverse impacts on the environment." 30 C.F.R. § 556.304(c). Governors of affected States and local governments may submit comments "regarding the size, timing, and location" of the proposed sale. 43 U.S.C. § 1345(a); 30 C.F.R. § 556.305(a). BOEM considers "all comments and recommendations received in response to the proposed notice of sale." 30 C.F.R. § 556.307(a). A final notice of sale is then published, which describes

3

"the areas offered for lease, the lease terms and conditions of sale, and stipulations to mitigate potential adverse impacts on the environment." *Id.* § 556.308(a).

## B. Administrative Procedure Act

Challenges to an agency's decision brought under the APA must show that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D); *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989). Agency action will be upheld if the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made. *Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983) (citation omitted). The scope of review is narrow, and the Court is not to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## C. Inflation Reduction Act

Enacted August 16, 2022, the IRA, Pub. L. No. 117-169, 136 Stat. 1818 (2022), directs the Secretary of the Interior to hold four oil and gas lease sales—257, 258, 259, and 261—proposed under the 2017–2022 Outer Continental Shelf Leasing Program. *Id.* § 50264. As relevant here, the Secretary is required to "conduct Lease Sale 261" no later than September 30, 2023. *Id.* § 50264(e).

4

## II.    Factual Background

### A. The Critically Endangered Rice's Whale

There are approximately 51 Rice's whales remaining on this planet and they exclusively inhabit the northern Gulf of Mexico. 88 Fed. Reg. 47,453, 47,460 (July 24, 2023). Rice's whales are especially vulnerable to low levels of human-caused mortality. Exhibit A at 534; Exhibit B at 2.

Recent science demonstrates that more than 40% of the whale's population persistently occurs in the western and central Gulf in water depths between 100 and 400 meters. *See* 88 Fed. Reg. 916, 944 (Jan. 5, 2023) (stating "core habitat area contains approximately 57 percent of predicted Rice's whale abundance"). *See also* Exhibit D at iii; Exhibit E, ¶¶ 14–17, 23, 27. On July 24, 2023, the National Marine Fisheries Service ("NMFS") proposed to formally designate these areas as the species' critical habitat under the Endangered Species Act ("ESA"). 88 Fed. Reg. 47,453. That designation, when final, carries with it a prohibition on activities that destroy or adversely modify this habitat. 16 U.S.C. § 1536(a)(2).



Oil and gas activities in the Gulf pose a serious threat to the continued survival of the Rice's whale. Exhibit D at 23–27, 89–90; Exhibit A at 545–46. The species is particularly susceptible to vessel strikes because they spend most of their time near the water's surface. Exhibit F at 344–63; Exhibit A at 534. Oil and gas vessel traffic accounts for an average of 40% of traffic throughout the northern Gulf of Mexico. Exhibit E, ¶ 31 & Exhibit G at 10 tbl.2. Other oil and gas exploration activities also causes behavioral disturbance. E.g., Exhibit F at 313–22, 408–13, 452–63, 463–66, 492–524; Exhibit D at iv, 44. In 2010, the BP *Deepwater Horizon* oil spill disaster caused up to a 22% decline in the Rice's whale population. 88 Fed. Reg. at 47,455.

In 2019, NMFS listed the Rice's whale as endangered primarily due to the small population size, restricted range, and harm from oil and gas activities. 84 Fed. Reg. 15,466 (Apr. 15, 2019). On March 13, 2020, BOEM, in coordination with NMFS, completed ESA consultation, resulting in a "Biological Opinion on the Federally Regulated Oil and Gas Program Activities in the Gulf of Mexico." *See* Exhibit F. In the Opinion, NMFS concluded that without mitigation measures, oil and gas activities in the Gulf are likely to jeopardize the continued existence of the Rice's whale. *Id.* at 554. NMFS has since concluded that "the loss of even a single reproductive female could lead this species to extinction." Exhibit C at 6.

**B. Gulf of Mexico Lease Sale 261**

On January 17, 2017, BOEM issued its Record of Decision (ROD) and approval for the 2017–2022 Program, which contemplated ten region-wide lease sales in the Gulf during the five-year period. *See* 82 Fed. Reg. 6643 (Jan. 19, 2017); Exhibit J. The 2017–2022 Program ROD stated that at the lease sale and later stages of development "[a]dditional specific mitigation measures may also be developed and applied, as appropriate." Exhibit J at 2. That Program noted

that any proposed lease sales may be "scaled back," "reduce[d]," "limit[ed]," or "cancelled."[1]

BOEM has regularly utilized its discretion to determine the appropriate size and conditions for Gulf lease sales in implementing the 2017–2022 Program. *See* Exhibit K at 8 n.1, 11 n.3; Exhibit L, ¶¶ 41–43. Lease sale sizes and stipulations continue to evolve with each subsequent sale.

BOEM did not hold Lease Sales 259 or 261 prior to the expiration of the 2017–2022 Program. However, the IRA mandated that these sales go forward, and BOEM prepared a supplemental environmental impact statement ("SEIS") for these sales, finalized in January 2023. In March 2023, BOEM published a Proposed Notice of Sale for Lease Sale 261 ("Proposed NOS"). 88 Fed. Reg. 16,030 (Mar. 15, 2023); Exhibit M. The notice included the lease stipulations that were recently modified in Lease Sale 259. Exhibit M at 10. BOEM stated it "reserves the right to modify the sale area in the Final NOS, including removing additional areas from Lease Sale 261. Specifically, BOEM is considering removing the area comprising the northeastern Gulf of Mexico and continental shelf break between the 100 meters and 400 meters in depth isobaths to protect

---

[1] 2017-2022 Program at 4-10, 6-7, 6-9, https://www.boem.gov/sites/default/files/oil-and-gas-energy-program/Leasing/Five-Year-Program/2017-2022/2017-2022-OCS-Oil-and-Gas-Leasing-PFP.pdf.

Rice's Whales that may transit through the area." *Id.* at 7. The Proposed NOS further stated that BOEM "reserves the right to revise the areas offered for bidding and associated terms and conditions described in this Proposed NOS." *Id.* at 20.

On August 23, 2023, BOEM issued the Lease Sale 261 ROD which set the date of the sale as September 27, 2023, and decided to offer for lease a subset of the blocks analyzed in the final SEIS. Exhibit N. These restrictions reduced the total estimated acreage available for lease from 73.4 million acres (Proposed NOS) to 67.3 million acres. *Id.* BOEM also included the interim stipulation to restrict vessel speed and transit in Rice's whale habitat and other protective measures. *Id.* at 12–13.

### III.    Procedural History

Plaintiffs challenged BOEM's protective measures in Lease Sale 261, alleging that BOEM's adoption of these measures was procedurally invalid, arbitrary and capricious, and inconsistent with OCSLA, the IRA, and the APA. Exhibit L, ¶¶ 84-124.

Plaintiffs moved for a preliminary injunction. Exhibit O. The government and Intervenor-Defendants opposed. Exhibit P at 10-25; Exhibit Q at 14-45. On September 21, the district court held oral argument and granted Plaintiffs' motion. Exhibit R at 30. The district court concluded that Plaintiffs would likely

win on their claims that implementation of the measures was procedurally invalid, *id*. at 16, despite recognizing that BOEM noticed the changes in the Proposed NOS in March and that multiple governors and others specifically commented on that proposal, *id*. at 12-13, 14. The district court also found that Plaintiffs were likely to succeed on their claims that BOEM failed to adequately justify its decision to include Rice's whale protections because it earlier declined to impose these measures. *Id*. at 20-22.

The district court then concluded that a mandatory injunction was warranted yet failed to address the uncontested evidence in the record demonstrating the likelihood of irreparable harm to the Rice's whale from such an injunction. The district court "enjoined" the government "from implementing the acreage withdrawal and Stipulation 4(B)(4)." Exhibit R at 30. The court then ordered the government "to proceed with Lease Sale 261, absent the challenged terms, by September 30, 2023." *Id*.

Intervenor-Defendants promptly appealed. Intervenor-Defendants now move this Court for an emergency stay pending appeal given the exigencies involved. *See* Fed. R. Civ. P. 8(a)(1). It is impracticable to move first in the district court, given the emergency nature of the relief sought and because the district court granted the preliminary injunction motion on an expedited basis. *Id*. 8(a)(2)(A)(i). With less than three business days before the lease sale is held,

10

asking the district court to reconsider the injunction it just entered on a compressed time frame is not practicable under Rule 8(a).

## ARGUMENT

A motion for stay pending appeal is governed by the four-factor test in *Nken v. Holder*, 556 U.S. 418, 426 (2009). Each factor supports a stay here.

## I.    Intervenor-Defendants Will Likely Succeed in Reversing the Injunction.

Intervenor-Defendants are likely to prevail on the merits of an appeal because Plaintiffs cannot meet any, much less all, of the requirements for a preliminary injunction. *See Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016). This Court will reverse a preliminary injunction if it is based on an error of law or clearly erroneous findings of fact. *Jiao v. Xu*, 28 F.4th 591, 598 (5th Cir. 2022).

### A. The District Court Issued an Improper Mandatory Injunction.

The district court's injunction improperly mandated BOEM's action without providing support for such extraordinary relief. As this Court recently emphasized, "The preliminary injunction's purpose is to maintain the status quo until the parties have a chance to adjudicate the merits." *Feds for Medical Freedom*, 63 F.4th at 389. Mandatory injunctions forcing a particular action, like Plaintiffs' request, are "particularly disfavored" and the party seeking relief must demonstrate that "the facts and law clearly favor the moving party." *Roark, v.*

11

*Individuals of Fed. Bureau of Prisons, Former and Current*, 558 Fed. Appx. 471, 472 (5th Cir. 2014). "Otherwise, the normal procedures of litigation would be short-circuited by the simple vehicle of trying a case by way of a motion for injunctive relief." *Roark v. Individuals of the Fed. Bureau of Prisons*, 2013 WL 2153944, at*4 (E.D. Tex. May 16, 2013), *affirmed* by *Roark*, 558 Fed. Appx. at 472. That is precisely what occurred here.

Neither the Plaintiffs nor the district court demonstrated this case is the "rare instance" in which the facts and law "clearly favor" the extraordinary remedy that Plaintiffs seek. Plaintiffs did not even address the issue. The district court stated that the pendency of the sale and supposed unavailability of other recourse met the standard, failing at all to address whether the likelihood of success or irreparable harm "clearly favor" the Plaintiffs.[2] In so doing, the district court "short-circuited" normal litigation procedures by granting Plaintiffs' relief without making clear findings on the merits.

Moreover, the Order provides relief far beyond what the Plaintiffs could receive on the merits. "Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency

---

[2] The district court also confusingly alludes to the defendants' ability to "neatly undo" the injunction, should they prevail on the merits. Exhibit R at 30. Yet the court does not explain how the government can "undo" a sale that has already been held or "unscramble the egg."

12

hands." *BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of Currency of U.S.*, 467 F.3d 871, 873 (5th Cir. 2006) (quoting *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002))*see O'Reilly v. U.S. Army Corps of Eng'rs*, 477 F.3d 225, 238-39 (5th Cir. 2007) (reversing injunction that would have compelled agency to take particular action on remand). The APA does not permit a court to "substitute its judgment for that of the agency," *DHS v. Regents of Univ. of California*, 140 S. Ct. 1891, 1905 (2020). Nor does it allow a remedy that excludes remand except in "rare circumstances." Exhibit R at 28-29. Vacatur is ***not*** one of those "rare circumstances, which the district court fundamentally misstates. *See id*. And the district court did not vacate (or set aside) the Bureau's decision—it ordered the opposite by forcing the agency to hold a modified Lease Sale 261. *Id*. at 30. This case presents no "rare circumstances" that this Circuit has found would warrant the type of mandatory relief that the district court attempts to couch in APA principles. *See, e.g., Zhu v. Gonzales*, 493 F.3d 588, 602 (5th Cir. 2007) (ordering alternative relief because the court had already remanded twice before and the court "need not give it a third bite").

More specifically, courts cannot order BOEM to conduct leasing in a particular manner: "federal courts do not have the power to order competitive leasing. By law, that discretion is vested absolutely in the federal government's executive branch and not in its judiciary." *Wyo., ex rel. Sullivan v. Lujan*, 969 F.2d

13

877, 882 (10th Cir. 1992); *Marathon Oil Co. v. Babbitt*, 966 F.Supp. 1024, 1026 (D. Colo. 1997), *aff'd*, 166 F.3d 1221 (10th Cir. 1999). The district court does not cite a single case where a court has issued such an injunction forcing BOEM to offer certain lease areas for sale or prohibiting mitigation measures. The injunction, rather than restoring BOEM's discretion, rewrites Lease Sale 261 BOEM five days before it is held. That approach commits the very errors that Plaintiffs (wrongly) attribute to the original decision. The injunction is improper on this basis alone.

Were the lease sale decision vacated or remanded, BOEM would retain its authority to act. *See Brock v. Pierce Cnty.*, 476 U.S. 253, 266 (1986). If there remains a concern over whether BOEM would expeditiously resolve the matter, the court could simply establish a date by which a decision must be made. In the end, the district court did not establish the grounds for a *sub silentio* permanent injunction nor is one warranted by the circumstances here. As the Supreme Court has cautioned, "[i]f a less drastic remedy (such as partial or complete vacatur) . . . [is] sufficient to redress [plaintiffs'] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010).

## B. Intervenor-Defendants are Likely to Prevail on Appeal

### 1.    *Plaintiffs' procedural claims lack merit.*

14

The district court's sole basis for finding procedural deficiencies was BOEM's supposed failure to provide notice that the agency was considering protective measures for the Rice's whale. *See* Exhibit R at 19. Yet, at the same time, the district court documented how BOEM in fact provided the very notice it concluded was lacking. As the district court observed, the Proposed NOS specifically stated that BOEM reserved the right "to modify the sale area in the Final NOS," including the exclusion of Rice's whale habitat. *Id.* at 12. And, as the district court also noted, BOEM explicitly "reserve[d] the right to revise the . . . terms and conditions described in this Proposed NOS." *Id.* Yet the district court then concluded that the two measures "only arose in a [separate] district court filing," while ignoring the statements in BOEM's Proposed NOS that it had earlier documented. *Id.* at 19.

Any questions about proper notice are further allayed considering that multiple Gulf states and two industry plaintiffs commented on the very measures at issue in May. *See* Exhibit R at 12-13; Exhibit Q at 11; Exhibit S at 23-24. BOEM thoroughly considered those comments and provided responsive letters to the relevant state governors, as required under 30 C.F.R. § 556.307(a). Exhibit Q at 21. Although the district court acknowledges these comments, Exhibit R at 12-13, 14, it again improperly ignores their import when evaluating whether BOEM provided notice.

15

Not surprisingly, it is routine for a final NOS to differ from the proposed NOS. As the district court noted, BOEM included stipulations to protect Rice's whales in its final notices for lease sales 256 and 257, despite not considering them as part of the 2012-2017 Program. Exhibit R at 9. With Lease Sale 259 in March, BOEM included multiple new elements in the Final NOS, excluding 7 million acres of wind energy areas that were not part of the Proposed NOS. *See* Exhibit U. Given BOEM's procedures and its requirement to consider "all comments and recommendations received in response to the proposed notice of sale," 30 C.F.R. § 556.307, it would be arbitrary if BOEM did not continue to evaluate the appropriate terms and conditions to be included in a final lease.

2. *BOEM's decision did not violate the APA.*

The district court's principal bases for concluding that BOEM's decision was likely arbitrary is that it failed to explain its "shift in position from its supplemental EIS issued in January 2023" and "based its unexplained change in position . . . on a single study." Exhibit R at 20, 22. Even the limited record available at this stage of the case demonstrates that BOEM's decision was not based solely on a single study, but rather on several considerations, including reducing risk to the Rice's whale while the agency is engaged in ESA consultation and recent critical habitat determinations.

16

"An initial agency interpretation is not instantly carved in stone. On the contrary, the agency must consider varying interpretations and the wisdom of its policy on a continuing basis, for example, in response to changed factual circumstances, or a change in administrations." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (cleaned up). So long as the agency's "new policy is permissible under the statute, [] there are good reasons for it, and [] the agency believes it to be better," it must be upheld. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). BOEM has met these standards here.

BOEM detailed its reasoning in the record. Exhibit S at 24 (detailing factors and concluding that exclusion of Rice's whale habitat provides "reasonable balance" between protecting species and "robust leasing"), 28 (explaining interim stipulation). BOEM explained that removing the expanded area from the sale "could reduce risks to [the Rice's whale] while reinitiated consultation with NMFS is ongoing," Exhibit N at 12. and that its decision to approve the sale would comply with its obligation "under Section 7 of the ESA to prevent jeopardy to listed species or adverse modification of designated critical habitat." *Id.* at 13. Moreover, BOEM noted that NMFS had recently proposed the same area excluded from the sale as critical habitat for the Rice's

whale. *Id.* at 3 (citing 88 Fed. Reg. 47,453). The district court ignored these explanations. Ultimately, nothing demonstrates that BOEM violated the APA.

### C. Plaintiffs Face No Irreparable Harm.

The district court also erred by finding that Plaintiffs' limited, monetary losses would cause "irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. For an injury to be "irreparable," the alleged harm "cannot be undone" through later remedies in this case. *Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017). For that reason, "as a general rule, a preliminary injunction is an inappropriate remedy where the potential harm to the movant is strictly financial." *Chambless Enterprises, LLC v. Redfield*, 508 F.Supp.3d 101, 121 (W.D. La. 2020) (citation omitted). Even injuries that are "substantial, in terms of money, time and energy . . . are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

As a threshold matter, the court admittedly focused its analysis and findings of irreparable financial harm largely on allegations about the effects of the vessel restrictions. Exhibit R at 23-24; *see also id.* at 25 (acknowledging that "many of plaintiffs' alleged hardships arise from the vessel restrictions" while dismissing defendants' arguments about lack of harm from acreage exclusion). But the court does not explain how alleged harm from one measure can support

an injunction that requires BOEM to remove *both* measures from the Lease Sale. This failure to connect its ruling with the evidence is clear error.

As to the lease restrictions, the district court fails to account for the fact that the challenged stipulation applies only until the conclusion of the reinitiated consultation with NMFS. A new biological opinion is currently projected for September 2024. Plaintiffs below made no attempt to demonstrate whether or how much, if any, of their sweeping claims of increased costs would accrue over the next year. Whether these—or other stipulations—will be in effect years or decades from now is not the relevant question. The district court was required to limit its consideration of irreparable harm to the temporal confines of the action it enjoined in this case—protections that will last only until they are replaced by more permanent measures in a new biological opinion in 2024.

Irreparable injury "must not be a mere possibility of some remote future injury. The harm must be more than mere speculation." *Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, 617 F.Supp.3d 478, 498–99 (W.D. La. 2022) (cleaned up); *see also Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."). The district court erred by accepting as fact Plaintiffs' speculative and conclusory statements regarding

potential economic harms. *See, e.g.*, Exhibit R at 24, n. 9 (crediting predictions of costs "if" supply disruptions cause drilling to be suspended).

## II.   The Balance of Equities and the Public Interest Overwhelmingly Favor a Stay.

The district court's injunction presents clear and irreparable harm to Intervenors and the public interest. *Nken*, 556 U.S. at 435. *Winter*, 555 U.S. at 20. The U.S. Supreme Court has cautioned that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*. at 24 (citation omitted). Here, the balance of harms and the public interest far outweigh the unsupported economic harms the district court credited in granting the injunction. Although Intervenors presented extensive documentation of the harm likely to result from an injunction, the district court failed even to acknowledge, much less weigh or address any of this contradictory evidence in drawing its conclusions. That alone constitutes clear error sufficient to stay the injunction. *Jiao v. Xu*, 28 F.4th 591, 598 (5th Cir. 2022) (stating factual findings in preliminary injunctions are reviewed for clear error); *United States v. Hasson,* 26 F.4th 610, 626 (4th Cir. 2022) (summarizing clear error occurs when "district court fails to acknowledge, account for, or consider substantial contradictory evidence") (cleaned up).

The Rice's whale is in an extremely perilous condition such that "the loss of even a single reproductive female could lead this species to extinction." Exhibit C at 6. Dr. Aaron Rice, a marine mammal expert with experience in the Gulf of Mexico, explained in unrebutted testimony to the district court that vessels strikes and other harms resulting from increased oil and gas development are among the primary threats to the survival of a species. Exhibit E, ¶¶ 12, 18–21. Even a small number of potentially fatal vessel strikes would push the species closer to extinction. *Id.*, ¶¶ 12, 29, ¶ 31. There has been at least one documented ship strike fatality of a Rice's whale in the past decade. *Id.*, ¶ 19.  It is well-settled that "'[o]nce a member of an endangered species has been injured, the task of preserving that species becomes all the more difficult.'" *Nat'l Wildlife Fed'n v. NMFS*, 886 F.3d 803, 818-19 (9th Cir. 2018) (citation omitted).

Dr. Rice's testimony explains that the challenged measures are "necessary to reduce the likelihood of harm to Rice's whales from the effects of Lease Sale 261." Exhibit E, ¶ 34.  Excluding Rice's whale habitat from the sale reduces not only the potential for vessel strikes, it reduces the potential for oil spills and other harmful noise and activities. *Id.* ¶ 30 (explaining that extending protection measures into the expanded habitat is "essential" to protect whales from oil and gas development); ¶¶ 32–34. Oil and gas vessels constitute an average 40% of

the traffic transiting the whales' habitat. Requiring new lessees to slow vessels as they transit that habitat and restricting travel at night, even for an interim period, is a vital first step to reduce the risk of vessel strikes from this significant source of vessel traffic. *Id.* ¶ 31.

Without these measures in place, Intervenors will likely suffer irreparable harm. "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987); *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002) (environmental harm "is irreparable in the sense that it cannot adequately be remedied by nonequitable forms of relief"). This Circuit has recognized that where, as here, there is an established likelihood of irreparable harm, "the balance of equities will lean more heavily in favor of protecting wildlife." *Aransas Project v. Shaw*, 775 F.3d 64, 663-6641 (5th Cir. 2014); *See also La., ex rel. Guste v. Verity*, 853 F.2d 322, 331 (5th Cir. 1988) ("Although we do not denigrate appellants' concern with the expense and inconvenience the regulations will visit on Louisiana's shrimping industry, Congress has decided that these losses cannot compare to the 'incalculable' value of genetic heritage embodied in any protected living species"). That same principle attaches to staying the district court's injunction.

Unlike the speculative economic harm Plaintiffs allege, there is no legitimate dispute that holding Lease Sale 261 without the protective measures poses an imminent threat of harm to the whales. The oil and gas leases that BOEM will issue from Lease Sale 261 in the Gulf permit the lessee to immediately begin "ancillary" activities, including geological and geophysical activities, that harm Intervenors' interests without any further approvals. *See* 30 C.F.R. § 550.105 (defining "ancillary activities" as "activities on your leases or unit that you . . . can conduct without [Interior's] approval of an application or permit"); 30 C.F.R. §§ 550.207, .105. These ancillary activities together result in increased vessel strike risk as well as chronic and acute noise that can harass and harm the whales. Exhibit E, ¶¶ 28, 33; Exhibit F at 408–13, 463–66.

By harming the whales that Intervenors members' depend on for their recreational and aesthetic enjoyment of activities ranging from fishing to wildlife observation, the district court's ruling will likely cause irreparable harm to Intervenors' members who have cognizable recreational, aesthetic, and research interests in protecting Rice's whales. S*ee* Exhibit V, ¶¶ 6, 16; Exhibit Y, ¶¶ 3, 18; Exhibit W, ¶¶ 4, 11; Exhibit X, ¶¶ 7–12. For instance, members often seek out and enjoy opportunities to observe wildlife in the Gulf of Mexico, including the Rice's whale. Because of their documented interests in Rice's whale conservation, Intervenors' members face "irreparable harm to their own

23

interests stemming from the irreparable harm to the listed species." *See Nat'l Wildlife Fed'n*, 886 F.3d at 822; *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, 539 F.Supp.3d 543, 559 (D.S.C. 2021) (finding that harm to threatened red knot from horseshoe crab harvest would likely cause irreparable harm to plaintiffs' interests in the birds and their habitat). A stay of the Order is necessary to prevent that harm from occurring during the pendency of this appeal.

## CONCLUSION

For these reasons, this Court should stay the district court's mandatory injunction until Defendant-Intervenors' appeal case can be resolved.

Respectfully submitted,

Date: September 22, 2023          /s/ Christopher D. Eaton

Christopher D. Eaton
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-1526
ceaton@earthjustice.org
*Counsel for Intervenor-Defendant-Appellants*

24

# CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on September 22, 2023. I certify that this motion was served on counsel for all parties via email and the Court's CM/ECF system.

September 22, 2023                     /s/ Christopher D. Eaton

Christopher D. Eaton
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-1526
ceaton@earthjustice.org

*Counsel for Intervenor-Defendant-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 27(d)(1), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Calisto MT 14-point font. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,197 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.1.

I further certify that this emergency motion complies with the requirements of Fifth Circuit Rule 27.3 because it was preceded by telephone calls to the Clerk's Office on September 22, 2023, and to the offices of opposing counsel on September 22, 2023, advising of the intent to file this emergency motion. I further certify that the facts supporting emergency consideration of this motion are true and complete.

Date: September 22, 2023          /s/ Christopher D. Eaton

Christopher D. Eaton
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-1526
ceaton@earthjustice.org

*Counsel for Intervenor-Defendant-Appellants*