No. 23-30666

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

STATE OF LOUISIANA; AMERICAN PETROLEUM INSTITUTE; CHEVRON USA INCORPORATED,

Plaintiffs-Appellees,

v.

DEB HAALAND, in her official capacity as Secretary of the Interior; LAURA DANIEL-DAVIS, in her official capacity as Principal Deputy Assistant Secretary of the Interior for Lands & Minerals Management, ELIZABETH KLEIN, in her official capacity as Director of Bureau of Ocean Energy Management; JAMES KENDALL, in his official capacity as Regional Director of Bureau of Ocean Energy Management Gulf of Mexico Office; U.S. DEPARTMENT OF THE INTERIOR; and BUREAU OF OCEAN ENERGY MANAGEMENT,

Defendants-Appellants,

SIERRA CLUB; CENTER FOR BIOLOGICAL DIVERSITY; FRIENDS OF THE EARTH; TURTLE ISLAND RESTORATION NETWORK,

Intervenors-Appellants.

---

SHELL OFFSHORE, INCORPORATED,

Plaintiff-Appellee,

v.

U.S. DEPARTMENT OF THE INTERIOR; BUREAU OF OCEAN ENERGY MANAGEMENT; DEB HAALAND, in her official capacity as Secretary of the Interior; LAURA DANIEL-DAVIS, in her official capacity as Principal Deputy Assistant Secretary of the Interior for Lands and Minerals Management, ELIZABETH KLEIN, in her official capacity as Director of the Bureau of Ocean Energy Management; JAMES KENDALL, in his official capacity as Director of the Gulf of Mexico Regional Office of the Bureau of Ocean Energy Management,

Defendants-Appellants,

SIERRA CLUB; CENTER FOR BIOLOGICAL DIVERSITY; FRIENDS OF THE EARTH; TURTLE ISLAND RESTORATION NETWORK,

Intervenors-Appellants.

---

Appeal from the United States District Court for the Western District of Louisiana,
Nos. 2:23-cv-1157 (lead); 2:23-cv-1167 (member), consolidated (Hon. James D. Cain)

## OPENING BRIEF OF FEDERAL DEFENDANTS-APPELLANTS

TODD KIM
*Assistant Attorney General*
ANDREW M. BERNIE
MICHELLE MELTON
 *Attorneys*
Environment & Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
202-532-3251
Michelle.melton@usdoj.gov

MELISSA HEARNE
*Assistant Solicitor*
Department of the Interior

# CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellees, as governmental parties, need not furnish a certificate of interested persons.

s/ *Michelle Melton*
MICHELLE MELTON

Attorney of Record for Federal
Defendants-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants are prepared to present oral argument should the Court find it helpful in resolving this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF AUTHORITIES ................................................................................ v

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION.....................................................................4

STATEMENT OF THE ISSUE.............................................................................4

STATEMENT OF THE CASE..............................................................................5

I.      Legal Background.....................................................................................5

        A.      Outer Continental Shelf Lands Act ...............................................5

        B.      The Endangered Species Act..........................................................8

        C.      The Inflation Reduction Act...........................................................9

II.     Factual Background ................................................................................10

        A.      Rice's Whale ................................................................................10

        B.      Lease Sale 261 .............................................................................11

III.    Procedural History .................................................................................13

SUMMARY OF ARGUMENT ..........................................................................20

STANDARD OF REVIEW ................................................................................21

ARGUMENT ......................................................................................................21

I.      This Court should not disturb the motions panel's order
        affording Interior until November 8 to hold a modified Lease
        Sale 261..................................................................................................21

II.    If the Court vacates, dissolves, or further modifies the
       preliminary injunction, Interior should not be forced to hold a
       last-minute, chaotic sale. ...................................................................................30

CONCLUSION ....................................................................................................32

CERTIFICATE OF SERVICE ...............................................................................33

CERTIFICATE OF COMPLIANCE .......................................................................34

# TABLE OF AUTHORITIES

## Cases

*Abraham v. Alpha Chi Omega,*
  708 F.3d 614 (5th Cir. 2013) ..................................................25

*Barnhart v. Peabody Coal Co.,*
  537 U.S. 149 (2003) ..............................................................22

*Brock v. Pierce Cty.,*
  476 U.S. 253 (1986) ..............................................................22

*Califorano v. Yamaski,*
  442 U.S. 682 (1979) ..............................................................25

*California v. Watt,*
  668 F.2d 1290 (D.C. Cir. 1981) ...............................................5

*California v. Watt,*
  712 F.2d 584 (D.C. Cir. 1983) .................................................5

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior,*
  563 F.3d 466 (D.C. Cir. 2009) .................................................5

*Enterprise Intern., Inc. v. Corparacion Estatal Petrolera Ecuatoriana,*
  762 F.2d 464 (5th Cir. 1985) ..................................................25

*Florida Medical Ass'n v. H.E.W.,*
  601 F.2d 199 (5th Cir. 1979) ..................................................25

*Friends of Animals v. Jewell,*
  824 F.3d 1033 (D.C. Cir. 2016) ...............................................9

*McClure v. Ashcroft,*
  335 F.3d 404 (5th Cir. 2003) ..................................................21

*Oxy USA Inc. v. Babbitt,*
  122 F.3d 251 (5th Cir. 1997) ..................................................26

*Sec'y of the Interior v. California*,
  464 U.S. 312 (1984) ...................................................................5

*Tennessee Valley Authority v. Hill*,
  437 U.S. 153 (1978) ...................................................................8

*U.S. v. Billingsley*,
  615 F.3d 404 (5th Cir. 2010) ...................................................21

## Statutes

16 U.S.C. § 1531(b) ......................................................................8

16 U.S.C. § 1532(6) ......................................................................9

16 U.S.C. § 1533 ..........................................................................8

16 U.S.C. § 1536(a)(2) ..................................................................9

28 U.S.C. § 1292(a)(1) ..................................................................4

28 U.S.C. § 1331 ..........................................................................4

43 U.S.C. § 1332(3) ....................................................................26

43 U.S.C. §§ 1301-1356c ..............................................................5

43 U.S.C. § 1334 ..........................................................................6

43 U.S.C. § 1337(a) ......................................................................6

43 U.S.C. § 1337(*l*) ........................................... 2, 7, 26, 28, 31

43 U.S.C. § 1344 ..........................................................................5

43 U.S.C. § 1344(a)(1) ..................................................................5

43 U.S.C. § 1345(a) ....................................................................15

43 U.S.C. § 1345(a)-(b) ................................................................6

43 U.S.C. § 1345(c) ......................................................................... 6, 12

Pub. L. No. 117-169 ...........................................................................9

**Rules**

Fed. R. App. P. 4(a) ...........................................................................4

**Regulations**

30 C.F.R. § 556.200 ...........................................................................5

30 C.F.R. § 556.304 ...........................................................................6

30 C.F.R. § 556.305(a) ........................................................................6

30 C.F.R. § 556.307 ...........................................................................6

30 C.F.R. § 556.308(a) ........................................................................7

30 C.F.R. § 556.308(a)(2) .....................................................................7

30 C.F.R. § 556.500(a) ........................................................................7

30 C.F.R. § 556.516(a) .......................................................................7, 8

50 C.F.R. § 222.101(a) ........................................................................8

**Other Authorities**

84 Fed. Reg. 15446 ..........................................................................10

88 Fed. Reg. 67800 ..........................................................................19

88 Fed. Reg. 69660 ...................................................................... 3, 20, 31

H.R. 95-1835.................................................................................26

## INTRODUCTION

Prior to the injunction that is the subject of this appeal, the Bureau of Ocean Energy Management ("BOEM"), an agency within the U.S. Department of the Interior ("Interior"), had taken all necessary steps to hold Lease Sale 261, an offshore oil and gas lease sale in the Gulf of Mexico. BOEM was prepared to hold the sale on September 27, 2023, three days prior to the deadline set by Congress in the Inflation Reduction Act ("IRA").

As required by the Outer Continental Shelf Lands Act ("OCSLA"), BOEM issued a Proposed Notice of Sale in March 2023. The Proposed Notice of Sale listed the proposed terms of the sale, including the stipulations that would apply to any leases and the acreage BOEM expected would be available for lease. BOEM noted that it reserved the right to revise the areas offered for bidding and associated terms and conditions set forth in the Proposed Notice of Sale. It also expressly stated that it was considering removing acreage to protect the Rice's whale, an endangered species.

BOEM ultimately decided, after considering comments on the Proposed Notice of Sale and permissible statutory considerations, that it would deviate slightly from the proposal in order to protect the Rice's whale, a critically endangered species, while the agency was engaged in consultation concerning that species under the Endangered Species Act ("ESA"). BOEM issued a Final Notice of Sale setting

forth the revised terms of bidding that differed from the proposal in two respects. First, BOEM reduced the size of the sale from approximately 73 million acres to 67 million acres, removing from leasing those blocks where the Rice's whale might be present. Second, BOEM modified its "Protected Species" stipulation, one of eight stipulations BOEM would include in a lease issued to successful bidders, to include additional protective measures for the Rice's whale. As required by OCSLA, BOEM announced the final terms and conditions of the sale on August 23, 2023, at least 30 days before the September 27 sale date. 43 U.S.C. § 1337(*l*).

Plaintiffs, unhappy about the changes between the Proposed and Final Notices of Sale, sued to prevent BOEM from making these changes and sought a preliminary injunction. In the district court, Interior defended its August Final Notice of Sale as lawful. The agency also set forth in a declaration and in briefing the legal, administrative, and fairness problems that would result from holding a modified Lease Sale 261 just days later, as Plaintiffs requested. Interior explained that holding the modified sale by that deadline would violate OCSLA's requirement that the agency provide 30 days' notice of the sale and its terms. Interior also outlined that a sale on such short notice also risked sowing confusion, creating errors, and rendering the sale unfair to bidders who compiled bids in reliance on the terms of the August Final Notice of Sale. Interior requested that, if the court were to issue an injunction over Interior's protest, the court should afford the agency an additional

six weeks—that is, until November 8—to hold a modified sale.  The additional time would allow Interior to still comply with OCSLA's 30-day notice provision and to carry out the administrative steps necessary to remove the modifications to the "Protected Species" stipulation and include additional acreage.

The district court issued an injunction that required BOEM to (1) remove the modifications to the "Protected Species" stipulation and include additional acreage, and (2) hold a sale on those modified terms by September 30.

Interior immediately sought relief in this Court only from the district court's unworkable and unfair deadline, and a motions panel granted Interior's request for a stay to provide additional time to hold the sale.  Lease Sale 261 is now scheduled for November 8, as set forth in Interior's new Final Notice of Sale published on October 6.  88 Fed. Reg. 69660.

Interior maintains that the August Final Notice of Sale was lawful and thus that no injunction was warranted.  In the current appeal, however—which concerns the preliminary injunction issued by the court—Interior challenges only the deadline imposed by the district court for a modified sale.  At this stage, Interior requests that the merits panel not disturb the modest relief afforded by the motions panel—that is, the relief granting Interior until November 8 to hold the modified sale ordered by the district court.

If the Court vacates, dissolves, or modifies the injunction at Intervenors' request, however, Interior requests that it be relieved of the motions panel's requirement to hold Lease Sale 261 by November 8. In no event should Interior be required to hold the sale until 37 days after the decision from this Court. The reasons are essentially the same as the reasons that Interior requested (and ultimately received, from the motions panel) a modest extension of the sale date: an orderly sale, compliant with OCSLA's 30-day notice requirement, is both administratively feasible and puts all prospective bidders on equal footing.

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). Interior noticed its appeal one day after the district court's order, and accordingly, its appeal was timely. Fed. R. App. P. 4(a).

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion in crafting its remedy by requiring Interior to hold a modified Lease Sale 261 within six business days of its order.

**STATEMENT OF THE CASE**

I.     **Legal Background**

A.     **Outer Continental Shelf Lands Act**

OCSLA, 43 U.S.C. §§ 1301-1356c, establishes a multi-stage process for the development of the nation's offshore oil and gas resources.  *Sec'y of the Interior v. California*, 464 U.S. 312, 337-40 (1984).  "[T]he leasing program's four-stage process is pyramidic in structure, proceeding from broad-based planning to an increasingly narrower focus as actual development grows more imminent."  *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466, 472-73 (D.C. Cir. 2009) (internal quotation marks omitted) (quoting *California v. Watt*, 668 F.2d 1290, 1297 (D.C. Cir. 1981)).

At the first stage, BOEM develops a "five year program."  *See* 43 U.S.C. § 1344.  The five year program is a general, programmatic roadmap of the sales BOEM may conduct in the coming years, but does not commit BOEM to holding each sale, nor does it dictate the precise terms and acreage to be leased at each sale. *See California v. Watt*, 712 F.2d 584, 588 (D.C. Cir. 1983).  In developing this program, BOEM balances "economic, social, and environmental values" including "the potential impact of oil and gas exploration on other resource values of the outer Continental Shelf and the marine, coastal, and human environments."  43 U.S.C. § 1344(a)(1); 30 C.F.R. § 556.200.  Once the program is finalized, it is published

and contains a five-year proposed schedule of Outer Continental Shelf ("OCS") oil and gas lease sales.

The second stage, at issue in this case, encompasses the individual lease sale process. *See generally* 43 U.S.C. §§ 1334, 1337. At this stage, Interior decides whether and when to hold a lease sale, which lease blocks to offer in the sale, and the terms of the sale, such as the royalty and rental rates and any lease stipulations. 43 U.S.C. § 1337(a).

Once Interior has decided to hold an individual sale, BOEM requires a minimum of 90 days to hold that sale to comply with statutory and regulatory deadlines. First, BOEM prepares and publishes a Proposed Notice of Sale in the Federal Register. 43 U.S.C. § 1345(a)-(b); 30 C.F.R. § 556.304. Following the publication of the Proposed Notice of Sale, the governors of neighboring states have 60 days to provide comments on the size, timing, and location of the sale. 43 U.S.C. § 1345(a)-(b); 30 C.F.R. § 556.305(a). BOEM must consider the governors' recommendations, if any, on the size, timing, and location of the sale and provide a written response documenting the acceptance or rejection of the governors' recommendations. 43 U.S.C. § 1345(c), (d); 30 C.F.R. § 556.307.

After considering the comments and recommendations regarding the proposed sale, OCSLA requires BOEM to publish a Final Notice of Sale at least thirty days before the sale. The statute reads: "Notice of sale of leases, and the terms

of bidding, authorized by this section shall be published at least thirty days before the date of sale in accordance with rules and regulations promulgated by the Secretary. 43 U.S.C. § 1337(*l*); *see also* 30 C.F.R. § 556.308(a). The Final Notice of Sale describes "the areas offered for lease, the lease terms and conditions of the sale, and stipulations to mitigate potential adverse impacts on the environment." 30 C.F.R. § 556.308(a)(2). It describes the minimum bid amounts, the lease terms— such as the length of the lease's primary term, the royalty and rental rates, and any stipulations to protect the environment or reduce space-use conflicts on the Outer Continental Shelf (e.g., to deconflict military use with oil and gas activity). The Final Notice of Sale also contains the sale date, bidding instructions, and the bidding rules and restrictions. *See, e.g.*, *id.*; *see also* 30 C.F.R. § 556.500(a), (b), (c). Finally, the Final Notice of Sale contains a link to the lease form that will be used to issue leases to successful bidders. *Id.* § 556.308(d). In short, the Final Notice of Sale contains relevant information for bidders concerning (1) what parcels may be bid on; (2) the relevant minimum bid amounts and terms (such as stipulations) by parcel; and (3) the instructions for bidders concerning how to participate in the sale.

On the sale date specified in BOEM's Final Notice of Sale, BOEM opens all previously submitted sealed bids and announces and records every bid received. *See* 30 C.F.R. § 556.516(a). Following the opening of bids, BOEM has 90 days (which the agency may extend) to analyze the highest valid bids to ensure these bids reflect

fair market value, among other requirements, and to accept or reject the bids. *Id.* §

556.516(b). After BOEM accepts a bid, it issues a lease to the bidder, *id.* § 556.520,

which entitles the lessee to conduct preliminary activities, such as lower-impact

geophysical surveys, *see id.* § 550.207.

The third and fourth stages—involving exploration and production of

commercial quantities of oil and gas, respectively—are not at issue here.

## B.    The Endangered Species Act

The ESA is "the most comprehensive legislation for the preservation of

endangered species ever enacted by any nation." *Tennessee Valley Authority v. Hill*,

437 U.S. 153, 180 (1978). Congress enacted the ESA "to provide a means whereby

the ecosystems upon which endangered species and threatened species depend may

be conserved, [and] to provide a program for the conservation of such endangered

species and threatened species . . . ." 16 U.S.C. § 1531(b).

To accomplish that goal, Congress directed the Secretary of the Interior and

the Secretary of Commerce to list endangered and threatened species and designate

their critical habitat. *See* 16 U.S.C. § 1533.[1] A species is "endangered" if it is "in

danger of extinction throughout all or a significant portion of its range" and

---

[1] The Secretary of Commerce is generally responsible for listed marine species, including the whale at issue here. The Secretary of Commerce has delegated her responsibilities under the ESA to the National Marine Fisheries Service ("NMFS"), which is an office of the National Oceanic and Atmospheric Administration. *See* 50 C.F.R. § 222.101(a).

"threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(6), (20).

If a species is listed as threatened or endangered, "it is then subject to a host of protective measures designed to conserve the species." *Friends of Animals v. Jewell*, 824 F.3d 1033, 1037 (D.C. Cir. 2016) (citation omitted). Of relevance here, Section 7 of the ESA requires federal agencies, in consultation with the Secretary of Commerce, to "insure that any action authorized, funded, or carried out by such agency" is "not likely to jeopardize" the existence of the species. 16 U.S.C. § 1536(a)(2). Following a consultation, the Secretary of Commerce issues a "Biological Opinion" that determines whether the authorized activity will jeopardize the continued existence of the listed species.

### C.     The Inflation Reduction Act

Congress enacted the Inflation Reduction Act ("IRA") on August 16, 2022. *See* Inflation Reduction Act of 2022, Pub. L. No. 117-169, 136 Stat. 1818. As relevant here, the IRA requires BOEM to hold Lease Sale 261 by September 30, 2023, "[n]otwithstanding the expiration of [BOEM's] 2017-2022" Five Year Program. IRA § 50264(e), 136 Stat. at 2060; *see also* IRA §§ 50264(c), (d) (similarly directing BOEM to hold Lease Sales 258 and 259 by certain dates).

## II.    Factual Background

### A.    Rice's Whale

In 2019, NMFS, the agency responsible for implementing the Endangered Species Act for marine mammals, listed the Rice's whale as an endangered subspecies.  84 Fed. Reg. 15446 (Apr. 15, 2019).  As part of the final listing rule, NMFS identified a number of discrete threats that have contributed to the precipitous decline in the whale's population, including energy exploration, development, and production; oil spills and oil spill responses; vessel collision; fishing gear entanglement; and anthropogenic noise. *See id.* at 15,474-84.

The Rice's whale is one of a number of endangered species in the Gulf of Mexico that are covered by a biological opinion issued by NMFS in 2020.  That biological opinion evaluates the effects of federally regulated oil and gas activities expected over the next 50 years in the Gulf of Mexico.  On October 21, 2020, a group of plaintiffs filed suit in the District of Maryland challenging NMFS's 2020 biological opinion.  *Sierra Club v. Nat'l Marine Fisheries Serv.*, No. 8:20-cv-03060-DLB (D. Md.).  While the litigation was pending, BOEM and Interior's Bureau of Safety and Environmental Enforcement transmitted a letter to NMFS requesting the re-initiation of ESA consultation to reconsider the 2020 biological opinion.  BOEM has sent a biological assessment to NMFS, and the consultation process between the agencies is ongoing.

### B.    Lease Sale 261

In March 2023, BOEM issued a Proposed Notice of Sale for Lease Sale 261 ("Proposed NOS").  ROA.2487-2506.  The Proposed NOS indicated that the sale would take place on September 27, and listed the areas BOEM expected to be available for leasing.  ROA.2487-93.  The Proposed NOS expressly "reserve[d] the right to modify the sale area in the Final Notice of Sale, including removing additional areas from Lease Sale 261" and explained that BOEM was "considering removing the area comprising the northeastern Gulf of Mexico and continental shelf break between the 100 meters and 400 meters in depth isobaths to protect Rice's whales that may transit through the area."  ROA.2493; *accord* ROA.2506.  BOEM also listed the stipulations that it proposed to include in the sale.  ROA.2496-97. BOEM stated that it would "announce a final decision on the sale, including the sale area and applicable stipulations, in the Final Notice of Sale."  ROA.2496; *accord* ROA.2506 ("The Department of the Interior reserves the right to revise the areas offered for bidding and associated terms and conditions described in this Proposed NOS.").  The Proposed NOS was published in the Federal Register and subject to comment, including from affected governors.

In the meantime, and pursuant to court-ordered mediation, plaintiffs and federal defendants in the Maryland case agreed to a stay of further proceedings pending the outcome of the agencies' reinitiated ESA consultation.  In the preamble

to the stipulation staying the case, federal defendants recited BOEM's intention to exclude the expanded Rice's whale area and to require additional stipulations to protect the Rice's whale in Lease Sale 261. *See* Stipulated Agreement to Stay Proceedings, *Sierra Club v. NMFS*, No. 8:20-cv-03060-DLB (D. Md. July 21, 2023), ECF No. 147. That stipulation reflected BOEM's intention, consistent with the discretion granted by to the agency pursuant to OCSLA, to take action to protect the Rice's whale while consultation was ongoing. The stipulation's operative language, however, did not (and could not) commit BOEM, a non-party to that case, to taking any particular course of action.

In August, to inform and document the final decision regarding Lease Sale 261, BOEM prepared a recommendation memorandum. ROA.6997-7026. The memorandum documented the objections of the Governors of Alabama, Mississippi, and Texas to the exclusion of acreage intended to protect the Rice's whale and stated that removal of that area would provide "a reasonable balance between protecting the endangered Rice's whale . . . and offering a sizeable area for leasing that will continue to meet national energy needs . . . ." ROA.7020; *see also* 43 U.S.C. § 1345(c), (d).

Interior issued its decision authorizing the sale ("Lease Sale 261 ROD") on August 22, ROA.7033-46, and BOEM issued a Final Notice of Sale ("Final NOS") as required by OCSLA soon thereafter, ROA.2386-2421. Consistent with BOEM's

internal recommendation memorandum, the acreage within the 100-meter to 400-meter isobath was excluded from the Final NOS. ROA.2395-97. In one of the sale's eight lease stipulations, Interior also included additional conditions in one of the sale's lease stipulations that were not included with the draft stipulations attached to the Proposed NOS. *See* ROA.2436-40. Specifically, Stipulation No. 4 ("Protected Species"), at (B)(4), would have required lessees "[d]uring the reinitiated consultation with NMFS . . . and until a new or amended [Biological Opinion] is issued" to comply with vessel speed limits and other restrictions within the 100-meter to 400-meter isobath (west of the existing Core Area identified in the 2020 Biological Opinion) to avoid impacts to the Rice's whale. ROA.2437. The Final NOS listed the sale date as September 27, and directed bidders that BOEM must receive all bids by mail by 10:00 a.m. on September 26. ROA.2386.

## III.   Procedural History

Plaintiffs are the State of Louisiana and members of the oil and gas industry. They sued shortly after BOEM issued its August Final Notice of Sale, alleging three violations of § 706(2) of the Administrative Procedure Act: (1) the Final Notice of Sale did not comport with the IRA's requirement to hold the sale "in accordance with" the 2017 Record of Decision for the 2017-2022 Five Year Program; (2) Interior did not provide affected governors or the public appropriate notice, in BOEM's Proposed Notice of Sale, of the acreage restrictions related to the Rice's

whale, or a stipulation related to that whale, in violation of OCSLA; and (3) Interior failed to adequately explain its reasoning for excluding the Rice's whale acreage and imposing the new stipulation.

The relief Plaintiffs requested, however, was not the typical remedy for violations of § 706(2) of the Administrative Procedure Act. Rather than asking the court to hold unlawful and set aside Interior's Final Notice of Sale, Plaintiffs sought to compel Interior to hold Lease Sale 261 on terms *other than* those published in Interior's Final Notice of Sale. *See* ROA.63-64; ROA.7682-83.

On August 29, Plaintiffs filed materially indistinguishable motions seeking an injunction. ROA.2340; ROA.7693. Rather than seeking to enjoin Interior from holding the sale until Interior fixed any error identified by the district court, Plaintiffs sought a court order compelling Interior to hold Lease Sale 261 on amended terms, by requiring Interior to include in Lease Sale 261 the acreage within the isobath range that was excluded to protect the Rice's whale and without the new provisions of the Protected Species Stipulation at 4(B)(4). This was the same relief that they ultimately sought in the case.

On September 5, the district court scheduled a hearing on the motions for September 21. ROA.17. Shortly thereafter, Interior filed a response opposing the motions on all grounds. ROA.6924. Interior's opposition explained that Plaintiffs were not likely to succeed on the merits of their claims because the Final Notice of

Sale was consistent with Interior's statutory obligations and a reasonable exercise of agency decisionmaking.  As to the IRA, Interior argued that that statute did not disturb BOEM's ordinary discretion to exclude particular blocks from a sale or to make changes to the stipulations for a sale.  To the contrary, Interior maintained that the IRA only amended OCSLA to allow BOEM to hold Lease Sale 261 notwithstanding the absence of an operative five-year program.  Interior also contended that it had not violated any procedural aspect of OCSLA because it had afforded governors and the general public meaningful notice of the sale, including express provisions that it might remove additional acreage to protect the Rice's whale.  Interior noted that several governors provided comments to BOEM on the very issue on which they claimed not to have sufficient notice.  Furthermore, Interior argued that BOEM is only required to provide notice of the "size, timing, or location" of proposed sales, 43 U.S.C. § 1345(a), and accordingly was not required to provide governors with notice of lease stipulations.  Interior also argued that its decisions to exclude acreage and include additional stipulation terms for the Rice's whale were adequately explained in the record.

Apart from its arguments about the merits, Interior also outlined for the court why the balance of the equities did not favor an injunction, explained that Plaintiffs

would not suffer irreparable harm from the sale, and detailed its view that  Plaintiffs' proposed remedy was improper.

Finally, Interior also expressed its objections to holding any modified Lease Sale 261 on the sale's original timeline.  Pointing to OCSLA's 30-day notice provision, Interior explained that it would need 37 days to effectuate that provision for a modified sale (including seven days to get the notice published in the Federal Register and 30 days to fulfill the notice requirement).  ROA.6976-77.  Interior also expressed its concern that not providing this notice would raise fairness concerns. In addition, Interior stated that it would need a minimum of 10 business days to prepare its internal systems for a revised sale with an additional 1,200 blocks and to update the sale maps available to bidders.  ROA.6977.  For support on both points, BOEM filed a declaration from BOEM Deputy Director Walter Cruickshank explaining why the relief that Plaintiffs sought would be wholly unworkable as a practical matter.  ROA.7047-53.

On September 15, Plaintiffs filed a motion to waive the hearing on their injunction motion.  ROA.7240-43.  Plaintiffs informed the court that, if the Court ruled on their motion *after* September 20, they would be prejudiced by any relief, because they would need to submit bids for Lease Sale 261 by September 20 in order to ensure that BOEM received any bids in time for the sale.  In Plaintiffs' words, "the effective deadline for submitting *bids* is actually September 21 or 22."

ROA.7241.  To ensure they could comply with the deadline to submit bids, they stated that "Plaintiffs would ideally mail their bids as early as Wednesday, September 20."  ROA.7241.  As Plaintiffs stated, "if the September 21 hearing remains in place, Plaintiffs will have to submit bids based on their assessment of the outcome of the litigation."  ROA.7242.

The district court denied the motion on the ground that Plaintiffs had long known of the September 21 hearing deadline but only belatedly raised this concern. ROA.20.

On September 21, the district court held a hearing on Plaintiffs' preliminary injunction motion.  At that hearing, Interior again pressed its administrative and fairness concerns about holding a modified sale before November 8.  ROA.7611, ROA.7612, ROA.7622-24.

A few hours after the hearing, the district court issued an order granting Plaintiffs' motions and enjoining Interior from "implementing the acreage withdrawal and Stipulation 4(B)(4) as described in the Final Notice of Sale and Record of Decision for Lease Sale 261."  ROA.7559.  The court ordered BOEM to hold a modified sale by September 30.

The court held that Plaintiffs had demonstrated a likelihood of success on the merits of their claim that BOEM's Final Notice of Sale was procedurally invalid

under OCSLA and arbitrary and capricious for failing to explain its rationale. ROA.7545.  The court did not address the merits of Plaintiffs' IRA-related claim.

In a discussion focused on *whether* a sale should go forward on Plaintiffs' terms rather than *when* a sale should go forward, the court found that Plaintiffs had demonstrated a substantial threat of irreparable injury, ROA.7552-53, and that the balance of the equities favored an injunction, ROA.7554-55.  The court explained that Plaintiffs would suffer economic harm from failure to hold a sale, and further reasoned—despite Federal Defendants' argument to the contrary—that after September 30, BOEM would not be under any mandate to proceed with the sale absent an injunction.  ROA.7555.

On the other side of the ledger, the court noted but discounted the potential harm to the Rice's whale.  ROA.7555.  In the court's view, the government could impose any necessary protective measures for the Rice's whale at later stages of development, such as stages three and four of OCSLA.  ROA.7555.  The court acknowledged the government's argument about its administrative burden, ROA.7555, but, without citing or even acknowledging the Cruickshank declaration, it held that the government had "failed to substantiate" its claimed administrative challenges, ROA.7558.  The court also rejected the notion that the changed terms would disadvantage non-party bidders, faulting the government for failing to produce evidence on behalf of these non-parties to the suit.  ROA.7555.  In one,

conclusory sentence—which failed to acknowledge OCSLA's statutory notice requirement—the court asserted that there was simply no need for additional notice. ROA.7555-56.

On September 22, Federal Defendants noticed this appeal and filed an emergency motion seeking relief only from the deadline imposed by the district court. ROA.7560.

On Monday, September 25, a motions panel of this Court granted Federal Defendants' request for relief, amending the deadline in the district court's order "only in that the sale that was set for September 27, 2023, is ORDERED to take place by November 8, 2023." The Court further stated that its ruling was "subject to review once the appeal of the preliminary injunction is submitted to a merits panel of this court." ECF 58-1 at 3.

Following this Court's order, BOEM took steps to notify bidders of the revised terms of Lease Sale 261 as ordered by the district court, and the new sale date deadline prescribed by the motions panel of this Court. On October 2, BOEM published a notice announcing the delay of Lease Sale 261. 88 Fed. Reg. 67800. On

October 6, the agency published a new Final Notice of Sale in the Federal Register.
88 Fed. Reg. 69660.

## SUMMARY OF ARGUMENT

The district court abused its discretion as to the deadline for the modified sale.
Unless this Court vacates or amends the sale terms ordered by the district court, this
Court should leave intact the November 8 deadline prescribed by the motions panel.

In establishing a September 30 deadline for a sale on new terms imposed by
the district court, the court relied entirely on the IRA's statutory deadline.
ROA.7556, 7558. The district court believed that, unless it enforced the IRA's
deadline, Interior would be under no obligation to hold Lease Sale 261 at all.
ROA.7555. In adopting this position advanced by no party, the district court erred
as a matter of law. As Interior pointed out at the hearing, the deadline's lapse does
not alleviate its obligation to hold the sale.

Moreover, to the extent that the district court prioritized the IRA's statutory
deadline above all other considerations, the court also abused its discretion in
weighing the injunction factors. The IRA's deadline was not the only congressional
mandate at issue; OCSLA also includes a mandatory 30-day notice period for any
Final Notice of Sale. Despite Interior's citation to and reliance on this provision, the
district court declined to cite it at all in the decision, much less explain why it was
not relevant. Further, the court improperly dismissed Interior's unrebutted evidence

that it needed more time to hold the sale. That the court apparently was not willing to acknowledge the complexities of Interior's process does not excuse its failure to credit Interior's evidence. Relatedly, the district court inappropriately discounted the fairness concerns raised by Interior.

For all of these reasons, the motions panel of this Court was correct in allowing Interior until November 8 to hold the sale on terms modified by the district court. This Court should not disturb the motions panel's ruling *unless* the Court, at the behest of Defendant-Intervenors, changes the terms of the sale that the district court prescribed. In that situation, Interior requests that it be relieved of the obligation to hold the sale by November 8.

## STANDARD OF REVIEW

This Court reviews a district court's decision to grant or deny an injunction under an abuse-of-discretion standard. *U.S. v. Billingsley*, 615 F.3d 404, 408 (5th Cir. 2010).

## ARGUMENT

**I.    This Court should not disturb the motions panel's order affording Interior until November 8 to hold a modified Lease Sale 261.**

A district court abuses that discretion if it relies on clearly erroneous factual findings; relies on erroneous conclusions of law; or misapplies the law to the facts. *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003). The court here did all three.

First, the district court erred when it concluded, a matter of law, that Interior

lacked the authority to hold the sale after September 30.[2]  ROA.7555.  To the

contrary, Interior offered the court controlling precedent indicating that it could still

hold the sale after that date.  ROA.7610 (citing *Barnhart v. Peabody Coal Co.*, 537

U.S. 149, 158 (2003) (agency has authority to act even after passage of a statutory

deadline) and *Brock v. Pierce Cty.*, 476 U.S. 253, 259 (1986) (same)).  Interior

recognizes its continuing obligation to hold the sale and has never asserted

otherwise.  Notwithstanding the deadline's passage, if this Court upholds the limited

relief that Interior received from the motions panel and does not otherwise modify

the district court's order, BOEM fully intends to hold the sale by November 8 and

recognizes it must do so by the terms of the motions panel's order.

The district court further abused its discretion by relying on clearly erroneous

factual findings.  The court rejected as unsubstantiated the harms to the government.

ROA.7558.  But Interior put forward unrebutted evidence of its administrative

difficulty in complying with a September 30 deadline.  ROA.7047-49.  The court's

implicit finding—that Interior would not have trouble holding a sale on September

30—was clearly erroneous in light of the Cruickshank declaration, which plainly

---

[2] Plaintiffs' opposition to the government's motion to partially stay the injunction suggested that the district court's comment merely reflected its view that the deadline was a critical matter.  ECF 49-1 at 22-23.  But the order speaks for itself, and this Court should reject their attempt to rehabilitate the district court's legal error.

laid out why BOEM could not make the necessary changes to the sale by September 30. The Cruickshank declaration established that BOEM's administrative difficulties are real. As BOEM explained, adding the excluded acreage is not as simple as just accepting bids on the previously excluded parcels. ROA.7049. Some of the newly reinstated blocks are affected by different stipulations than the one enjoined by the court. For instance, some blocks that the district court ordered to be reinstated have stipulations related to military warning areas. Other blocks must be excluded even applying the court's order, because they also fall under other (non-challenged) exclusions; for example, some blocks that were in the excluded Rice's whale area were *also* in the excluded Flower Garden Banks area. BOEM declared that it would need at least 10 business days to figure out which blocks to include, on what terms, to verify that information, and to put that information into its internal electronic bidding administration system. ROA.7049. The court improperly ignored this evidence, thus fashioned it remedy based on a factual finding that is clearly erroneous in light of the record evidence. This was an abuse of discretion.

For a similar reason, the district court also clearly erred in implicitly finding that Plaintiffs would be harmed by a delayed sale. The evidence does not bear this supposition out. Plaintiffs' irreparable harm was premised on Interior holding a purportedly unlawful sale on September 27. They claimed that placing bids in that unlawful sale would alter the sale's outcome in ways that could not be undone and

would permanently deprive Louisiana of potential revenue.  ROA.2354, ROA.2379-81.  But these harms will not accrue if Interior holds a sale modified to address Plaintiffs' objections on November 8.  If this Court adheres to the motions panel's ruling and requires Interior to hold the modified sale on November 8, Louisiana will not be deprived of its potential revenue.  And Industry Plaintiffs will have the opportunity to bid on the acreage that they claim they are entitled to bid on, with no harm to the competitive dynamics of the sale or their bidding strategies.

Indeed, any claim of harm was undercut entirely by Plaintiffs' concession in their district-court reply, ROA.7358, and at the hearing, ROA.7633, that they would have been satisfied if the court were to have ordered two sales:  one sale without the excluded acreage on September 27, and a second sale including the formerly excluded acreage on November 8.  ROA.7358.  It is impossible to reconcile any claim by Plaintiffs of harms from a sale on November 8 with their receptivity to a sale with excluded acreage on November 8.  Plainly, Plaintiffs would suffer no irreparable harm from a modestly delayed sale.  The court's reliance on this erroneous factual finding was an abuse of discretion.

Finally, separate and apart from any other errors, the district court abused its discretion by requiring Interior to hold a modified sale by September 30 because the order's deadline was not the product of a reasoned application of the four injunction factors and was more burdensome than necessary to address Plaintiffs' harm.

To be sure, a district court has considerable discretion in fashioning an appropriate injunction to balance the equities. *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627-28 (5th Cir. 2013). But that discretion, while broad, "is not unbridled." *Enterprise Intern., Inc. v. Corparacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985); *id.* at 474 (concluding that the district court abused its discretion in granting an injunction that did not properly weigh the equities). "[A] preliminary injunction 'must be the product of reasoned application of the four factors held to be necessary prerequisites.'" *Id.* (quoting *Florida Medical Ass'n v. H.E.W.*, 601 F.2d 199, 202 (5th Cir. 1979)). And a court issuing an injunction must be careful to tailor that relief so that it is "no more burdensome to the defendant than necessary" to remedy the plaintiff's injury. *Califorano v. Yamaski*, 442 U.S. 682, 702 (1979).

Weighing all relevant considerations—the IRA's deadline, OCSLA's 30-day notice provision, the harms to the Plaintiffs, and the public interest—the district court abused its discretion in concluding that a sale by September 30 was the only option.

Even if that the court's decision to require a September 30 deadline had been the product of its belief that the IRA deadline is merely of critical importance, rather than a belief that Interior lacks authority to hold the sale after that date, the court still would have misapplied the law to the facts. Interior has never disputed that the

IRA's deadline is important; the IRA makes clear that Interior must hold Lease Sale 261. Rather, Interior argued—and the court failed to appreciate—that OCSLA's 30-day notice provision is an equally valid (and equally specific) statutory provision. 43 U.S.C. § 1337(*l*). The district court's order nowhere acknowledges OCSLA's notice provision, much less determines that the IRA's deadline enacts a disfavored implied repeal of OCSLA's notice provision. *See Oxy USA Inc. v. Babbitt*, 122 F.3d 251, 258 (5th Cir. 1997) (implied repeals are disfavored).

The court could not reasonably have come to the latter determination in any event. One of Congress' major goals in amending OCSLA in 1978 was to promote a competitive bidding system that would (1) allow small and independent oil and gas companies greater participation in developing the Outer Continental Shelf; and (2) result in a fair return to the public for the use of its lands. *See* 43 U.S.C. § 1332(3) (purpose of OCSLA is to make Outer Continental Shelf available for development in a manner "consistent with the maintenance of competition"); *see also* H.R. 95-1835, 95th Cong., 2d Sess. at 14-17, 30 (1979) (describing reforms intended to promote competition in leasing). OCSLA's 30-day notice provision helps ensure that both of those goals are met by putting *all* bidders—not just the most sophisticated and well-capitalized companies—on equal footing. The notice provision allows companies adequate (and equal) time to prepare their bids.

As Interior urged below, these fairness concerns are front and center in this suit. Recent experience suggests that many bidders are not represented by the parties to this suit, as Interior indicated at the hearing. ROA.7622. In the most recent lease sale, for instance—Lease Sale 259—more than half of bidders were not listed members of Plaintiff American Petroleum Institute. ROA.7622. Prior to this Court's stay, these unrepresented bidders may not have learned that the district court had ordered new terms for Lease Sale 261 with sufficient time to prepare new bids to reflect the new sale's terms—or, worse, may have submitted bids for a sale under terms that were no longer valid without the ability to withdraw or foregone submitting bids on acreage they was newly available. The result might have been that some bidders—for instance, Plaintiffs—obtained a competitive advantage in bidding on the sale. While major oil companies have geologists, economists, and other experts standing by to quickly develop a new bid, smaller operators likely cannot produce a new bid within hours, as required by the district court's order. Ordering BOEM to hold the lease sale by September 30, on terms *other than* those described in Interior's Final NOS, directly contradicted OCSLA and undermined the important protections that its notice provision affords to other bidders and to the public fisc.

In short, the primary difference between the two equally valid, and equally mandatory, statutes at issue in this case is the *consequence* of violating each one.

The consequence of violating OCSLA's notice provision is a chaotic and unfair sale. By contrast, delaying the sale by six weeks beyond the IRA's September 30 deadline would cause no appreciable detriment to the public, the bidders to the sale, or to Plaintiffs, and would still further Congress' objective of a quick sale.

The only indication that the district court reckoned with any of these issues is a passing footnote observing that Interior had, in 2005, modified the terms of a sale without issuing a new Final Notice of Sale. ROA.7556. The implication is that OCSLA's notice provision is unimportant.[3] Even if that 2005 modification were indistinguishable from the situation here (as discussed below, it is not), Interior's alleged disregard of a statutory notice provision on a single occasion twenty years ago would not justify the court ordering Interior to violate the requirement here.

In any event, the 2005 occasion cited by the district court, ROA.7556, is different than the situation here. Interior's decision on Lease Sale 196 was the result of an intervening change in statute. Congress had passed a new law mandating certain royalty relief provisions in all leases moving forward after Interior's Final

---

[3] Plaintiffs argue elsewhere that OCSLA's 30-day notice provision was not triggered because the district court's order merely modified the original terms of the sale. *See* Dkt. 49-1 at 23. The district court never itself said this. But in any event, the notion that Interior's Final Notice of Sale was still valid defies OCSLA's plain language and common sense. OCSLA's notice provision requires that "the terms of bidding" be published for 30 days prior to a lease sale. A notice that lists materially incorrect or incomplete terms such as available acreage and applicable stipulations is *not* a notice of "the terms of bidding." 43 U.S.C. § 1337(*l*).

NOS for Lease Sale 196.  Here, there was no such intervening change of law (and, notably, the district court did *not* hold that the IRA mandated these changes to the sale).  Additionally, in 2005, Interior had time to provide notice of the change in the Federal Register; that protection was unavailable here, given the timing—and would have meant little in any event, as the district court modified the sale *after* Interior had already begun receiving bids.  Finally, the change to Lease Sale 196 about which Interior had provided notice was not as substantial a change in the sale's terms.  It concerned changes to volumes on which entities could obtain royalty relief, long in the future, *if* lessees produced commercial quantities of oil and gas.  As Interior's notice indicated, however, all other sale terms remained the same.  The small change concerning royalty suspension volumes is not comparable to the significantly changed terms imposed by the district court at the last minute here that necessarily would have affected all bidders.

Although Congress undoubtedly intended Interior to hold Lease Sale 261 by September 30—which Interior prepared for and fully intended to do before the injunction—there is no indication that Congress intended inflexible adherence to that deadline even under circumstances where holding the sale by that date would violate other statutory commands, and result in a chaotic, unworkable, and unfair sale.  In the absence of statutory consequences for failure to meet the deadline—or any other indication from Congress that Interior *must* hold the sale by September 30, even if

doing so meant violating *other* applicable statutory commands that ensure competitive, fair sales—the district court abused its discretion by elevating the IRA above all other considerations.

The district court's September 30 deadline flouts the requirements and purpose of OCSLA in ways that are unfair to both Interior and prospective bidders. And, even taking Plaintiffs' harm at face value, the district court overstated Plaintiffs' harms and underplayed Interior's, in ways unsupported by the evidence before it. Because the district court's deadline an resulted from errors of law, clear errors of fact, and an unreasonable applicable of the injunction factors, it was an abuse of discretion. The motions panel was correct that Interior should not be required to carry out the district court's order before November 8.

## II.    If the Court vacates, dissolves, or further modifies the preliminary injunction, Interior should not be forced to hold a last-minute, chaotic sale.

Finally, if the Court vacates, dissolves, or further modifies the injunction at Intervenors' request, Interior respectfully requests sufficient time to adjust again in light of the legal and practical realities, and thus to be relieved of the motions panel's ruling that the sale be held by November 8.

To be clear, not every problem arising from the district court's deadline would recur if this Court vacates, dissolves, or modifies the injunction. BOEM would not need additional time to adjust its administrative operations. As explained above,

BOEM needed additional time to input the 1,200 formerly excluded blocks into its software system, and verify that those blocks were accurately rendered in that system. BOEM does not need to undertake the same process to *exclude* blocks.

But if this Court were to vacate, dissolve, or modify the district court's order, any change would raise the same fairness, orderliness, and statutory compliance concerns raised by the district court's order. Specifically, BOEM is required by OCSLA to give bidders 30-days' notice of the terms of any sale, as explained above. 43 U.S.C. § 1337(*l*). BOEM's revised Final Notice of Sale requires bids to be submitted by mail and received by 10 a.m. CT on November 7. *See* 88 Fed. Reg. 69660 (Oct. 6, 2023). By the time this Court issues any order, BOEM will likely have already received bids for the sale on the terms ordered by the district court.

Therefore, BOEM would need a minimum of 7 days to revive and republish its original Final Notice of Sale in the Federal Register, and an additional 30 days to comply with OCSLA's notice provision. 43 U.S.C. § 1337(*l*). Interior respectfully requests that, if this Court vacates, dissolves, or further modifies the injunction, the Court relieve Interior from the direction to hold the sale by November 8, 2023. In no event should Interior be required to hold a different sale than the one that is currently in the Federal Register without giving Interior 37 days to re-notice the terms of any new sale.

## CONCLUSION

The Court should give BOEM sufficient time to hold a fair and lawful sale. In the event that this Court upholds that part of the injunction requiring Interior to hold a modified Lease Sale 261, the Court should follow the motions panel in allowing Interior until November 8 to hold that modified sale. In the event that the Court agrees with Intervenors in whole or in part, however, the Court should in no event require Interior to hold Lease Sale 261 prior to 37 days from the Court's order.

Respectfully submitted,

s/ *Michelle Melton*
TODD KIM
*Assistant Attorney General*
ANDREW M. BERNIE
MICHELLE MELTON
*Attorneys*
Environment and Natural Resources
Division
U.S. Department of Justice
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530
(202) 532-3251
Michelle.melton@usdoj.gov

October 6, 2023
DJ# 90-1-18-17251

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2023, I electronically filed the foregoing Appellants' Opening Brief with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

s/ *Michelle Melton*
MICHELLE MELTON

Counsel for Federal Defendants-Appellants

**CERTIFICATE OF COMPLIANCE**

I hereby certify:

1.    This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Rule 32(f), this document contains 7,466 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

s/ *Michelle Melton*
MICHELLE MELTON

Counsel for Federal Defendants-
Appellants