No. 23-30666

# United States Court of Appeals
## for the Fifth Circuit

STATE OF LOUISIANA, AMERICAN PETROLEUM INSTITUTE, CHEVRON USA INCORPORATED,
*Plaintiffs-Appellees,*

v.

DEB HAALAND, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE INTERIOR; LAURA DANIEL-DAVIS, IN HER OFFICIAL CAPACITY AS PRINCIPAL DEPUTY ASSISTANT SECRETARY OF THE INTERIOR FOR LAND & MINERALS MANAGEMENT; ELIZABETH KLEIN, IN HER OFFICIAL CAPACITY AS DIRECTOR OF BUREAU OF OCEAN ENERGY MANAGEMENT; JAMES KENDALL, IN HIS OFFICIAL CAPACITY AS REGIONAL DIRECTOR OF BUREAU OF OCEAN ENERGY MANAGEMENT GULF OF MEXICO OFFICE; UNITED STATES DEPARTMENT OF INTERIOR; BUREAU OF OCEAN ENERGY MANAGEMENT, REGULATION AND ENFORCEMENT,
*Defendants-Appellants,*

v.

SIERRA CLUB; CENTER FOR BIOLOGICAL DIVERSITY; FRIENDS OF THE EARTH; TURTLE ISLAND RESTORATION NETWORK,
*Intervenors- Appellants.*

SHELL OFFSHORE, INCORPORATED,
*Plaintiff-Appellee,*

v.

UNITED STATES DEPARTMENT OF INTERIOR; BUREAU OF OCEAN ENERGY MANAGEMENT, REGULATION AND ENFORCEMENT; DEB HAALAND, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE INTERIOR; LAURA DANIEL-DAVIS, IN HER OFFICIAL CAPACITY AS PRINCIPAL DEPUTY ASSISTANT SECRETARY OF THE INTERIOR FOR LAND AND MINERALS MANAGEMENT; ELIZABETH KLEIN, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE BUREAU OF OCEAN ENERGY MANAGEMENT; JAMES KENDALL, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE GULF OF MEXICO REGIONAL OFFICE OF THE BUREAU OF OCEAN ENERGY MANAGEMENT,
*Defendants-Appellants,*

v.

SIERRA CLUB; CENTER FOR BIOLOGICAL DIVERSITY; FRIENDS OF THE EARTH; TURTLE ISLAND RESTORATION NETWORK,
*Intervenors-Appellants.*

On Appeal from the United States District Court for the Western District of Louisiana, The Honorable James D. Cain, Jr. (Nos. 2:23-cv-01157 (Lead)
No. 2-23-cv-01167 (Member), consolidated)

## INTERVENORS-APPELLANTS' RECORD EXCERPTS

Date: October 6, 2023                    Christopher Eaton

EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-1526
ceaton@earthjustice.org
*Counsel for Intervenors-Appellants*

# TABLE OF CONTENTS

**Tab #**                                                                    **ROA**

1.      Docket Sheet – Case No. 23-1157 .................................... ROA.1

2.      Docket Sheet – Case No. 23-1167 .............................. ROA.7646

3.      Notice of Appeal ........................................................ ROA.7528

4.      Memorandum Order ................................................... ROA.7498

5.      Record of Decision for Lease Sale 261 ........................ ROA.2462

6.      Proposed Notice of Sale for Lease Sale 261 ................ ROA.2487

7.      Record of Decision for 2017-2022 Program ................ ROA.3128

8.      Letter from NOAA (2/9/2022) ................................... ROA.6133

9.      Lease Sale 261 Decision Memo ................................. ROA.6997

10.     Lease Sale 261 7(d) Determination ............................ ROA.7027

11.     Declaration of Aaron Rice, PhD ................................ ROA.7417

12.     Certificate of Service

# TAB 1

Jump to Docket Table

# U.S. District Court
## Western District of Louisiana (Lake Charles)
## CIVIL DOCKET FOR CASE #: 2:23-cv-01157-JDC-KK
## Internal Use Only

State of Louisiana et al v. Haaland et al
Assigned to: Judge James D Cain, Jr
Referred to: Magistrate Judge Kathleen Kay
Related Case:  2:23-cv-01167-JDC-KK
 Case in other court:  5CCA, 23-30666
Cause: 28:1361 Petition for Writ of Mandamus

Date Filed: 08/24/2023
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**State of Louisiana**                                          represented by  **James A Holmes**
Christovich & Kearney (NO)
601 Poydras St Ste 2300
New Orleans, LA 70130
504-561-5700
Fax: 504-561-5743
Email: jaholmes@christovich.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baker Murrill**
LA Atty Generals Office (94005)
P O Box 94005
Baton Rouge, LA 70804-9005
225-326-6766
Email: murrille@ag.louisiana.gov
*ATTORNEY TO BE NOTICED*

**Jordan Bailey Redmon**
LA Dept of Justice (1850)
909 Poydras St Ste 1850
New Orleans, LA 70112
504-556-9918
Email: redmonj@ag.louisiana.gov
*ATTORNEY TO BE NOTICED*

**Joseph Scott St John**
LA Dept of Justice (1850)
909 Poydras St Ste 1850
New Orleans, LA 70112
225-485-2458
Email: stjohnj@ag.louisiana.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **American Petroleum Institute** | represented by | **James A Holmes**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Andrew C Lawrence**
Clement & Murphy
706 Duke St
Alexandria, VA 22314
202-742-8900
Email:
andrew.lawrence@clementmurphy.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**C Harker Rhodes , IV**
Clement & Murphy
706 Duke St
Alexandria, VA 22314
202-742-8900
Email: harker.rhodes@clementmurphy.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Xi**
Clement & Murphy
706 Duke St
Alexandria, VA 22314
202-742-8900
Email: james.xi@clementmurphy.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle Demoine Anderson**
Christovich & Kearney (NO)
601 Poydras St Ste 2300
New Orleans, LA 70130
504-428-6916
Email: kanderson@christovich.com
*ATTORNEY TO BE NOTICED*

**Paul D Clement**
Clement & Murphy
706 Duke St
Alexandria, VA 22314
202-742-8900
Email: paul.clement@clementmurphy.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chevron U S A Inc**                    represented by   **James A Holmes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Catherine E Stetson**
Hogan Lovells (DC)
555 13th St NW
Washington, DC 20004
202-637-5491
Email: cate.stetson@hoganlovells.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claire Elizabeth Juneau**
Kean Miller (NO)
909 Poydras St Ste 3600
New Orleans, LA 70112
504-585-3050
Fax: 504-585-3951
Email: claire.juneau@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Dana A Raphael**
Hogan Lovells (DC)
555 13th St NW
Washington, DC 20004
202-531-0427
Email: dana.raphael@hoganlovells.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey Joseph Gelpi**
Kean Miller (NO)
909 Poydras St Ste 3600
New Orleans, LA 70112
504-620-3365
Fax: 504-585-3051
Email: jeff.gelpi@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Michael R Phillips**
Kean Miller (NO)
909 Poydras St Ste 3600
New Orleans, LA 70112
504-620-3343
Fax: 504-585-3051
Email: mike.phillips@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Nikesh Jindal**
King & Spalding (DC)
1700 Pennsylvania Ave NW Ste 200

Washington, DC 20006
202-737-0500
Fax: 202-626-3737
Email: njindal@kslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert M Kallam**
Kean Miller (LAF)
600 Jefferson St Ste 1101
Lafayette, LA 70501
337-422-3642
Fax: 337-422-3684
Email: robert.kallam@keanmiller.com
*ATTORNEY TO BE NOTICED*

**Sarah C Bordelon**
Holland Hart (NV)
5441 Kietzke Ln 2nd FL
Reno, NV 89511
775-327-3011
Email: scbordelon@hollandhart.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Marotta**
Hogan Lovells (DC)
555 13th St NW
Washington, DC 20004
202-637-4881
Email: sean.marotta@hoganlovells.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Consol Plaintiff**

**Shell Offshore Inc**                    represented by  **Kelly Brechtel Becker**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-581-7979
Fax: 504-556-4108
Email: kbbecker@liskow.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley K Ervin**
Covington & Burling (DC)
850 10th St N W
Washington, DC 20001
202-662-6000

Email: bervin@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cecilia Grace Vazquez**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-556-4125
Email: cvazquez@liskow.com
*ATTORNEY TO BE NOTICED*

**Mark W Mosier**
Covington & Burling (DC)
850 10th St N W
Washington, DC 20001
202-662-6000
Email: mmosier@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael James Mazzone**
Haynes & Boone (HOU)
1221 McKinney St Ste 4000
Houston, TX 77010
713-547-2115
Fax: 713-236-5662
Email: michael.mazzone@haynesboone.com
*ATTORNEY TO BE NOTICED*

**Russell Keith Jarrett**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-556-4133
Fax: 504-556-4108
Email: rkjarrett@liskow.com
*ATTORNEY TO BE NOTICED*

**Samuel Ross Howe**
Covington & Burling (DC)
850 10th St N W
Washington, DC 20001
202-662-5242
Email: showe@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven J Rosenbaum**
Covington & Burling (DC)
850 10th St N W
Washington, DC 20001
202-662-6000

Fax: 202-778-5568
Email: srosenbaum@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Deb Haaland**                              represented by   **Alexis Romero**
*in her official capacity as Secretary of the*                U S Dept of Justice Env & Natural Resources
*Interior*                                                    (M St)
                                                             150 M St N E
                                                             Washington, DC 20002
                                                             202-353-5885
                                                             Email: alexis.romero@usdoj.gov
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Luther L Hajek**
                                                             U S Dept of Justice Env & Natural Resources
                                                             (CO)
                                                             999 18th St S Terrace Ste 370
                                                             Denver, CO 80202
                                                             303-844-1376
                                                             Fax: 303-894-1350
                                                             Email: luke.hajek@usdoj.gov
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Laura Daniel-Davis**                       represented by   **Alexis Romero**
*in her official capacity as Principal Deputy*                (See above for address)
*Assistant Secretary of the Interior for Land*                *LEAD ATTORNEY*
*& Minerals Management*                                       *ATTORNEY TO BE NOTICED*

                                                             **Luther L Hajek**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Elizabeth Klein**                          represented by   **Alexis Romero**
*in her official capacity as Director of*                     (See above for address)
*BOEM*                                                        *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Luther L Hajek**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **James Kendall** | represented by | **Alexis Romero** |
| *in his official capacity as Regional Director of BOEM Gulf of Mexico Office* | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Luther L Hajek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **U S Dept of Interior** | represented by | **Alexis Romero** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Luther L Hajek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Bureau of Ocean Energy Management Regulation & Enforcement** | represented by | **Alexis Romero** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Luther L Hajek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

| | | |
|---|---|---|
| **Sierra Club** | represented by | **Elizabeth Livingston de Calderon** |
| | | Tulane Environmental Law Clinic |
| | | 6329 Freret St Ste 130 |
| | | New Orleans, LA 70118 |
| | | 504-862-8819 |
| | | Fax: 504-862-8721 |
| | | Email: ecalderon@earthjustice.org |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Brettny E Hardy**
Earthjustice (CA)
50 California St Ste 500
San Francisco, CA 94111
415-217-2142

Email: bhardy@earthjustice.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**George Torgun**
Earthjustice (CA)
50 California St Ste 500
San Francisco, CA 94111
415-217-2000
Fax: 415-217-2040
Email: george.torgun@doj.ca.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen D Mashuda**
Earthjustice (WA)
810 Third Ave Ste 610
Seattle, WA 98104
206-343-7340
Fax: 206-343-1526
Email: smashuda@earthjustice.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Center for Biological Diversity**                    represented by  **Elizabeth Livingston de Calderon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brettny E Hardy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**George Torgun**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen D Mashuda**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Friends of the Earth**                    represented by  **Elizabeth Livingston de Calderon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brettny E Hardy**

23-30666.8

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**George Torgun**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen D Mashuda**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Turtle Island Restoration Network**          represented by   **Elizabeth Livingston de Calderon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brettny E Hardy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**George Torgun**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen D Mashuda**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Bruce Westerman**          represented by   **Kenneth H Laborde**
*Representative*                               Gieger Laborde & Laperouse
701 Poydras St Ste 4800
New Orleans, LA 70139
504-561-0400
Fax: 504-561-1011
Email: klaborde@glllaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victoria Elizabeth Emmerling**
Gieger Laborde & Laperouse
701 Poydras St Ste 4800
New Orleans, LA 70139
504-561-0400
Fax: 504-561-1011

Email: temmerling@glllaw.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Garret Graves**                          represented by    **Kenneth H Laborde**
*Representative*                                             (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Victoria Elizabeth Emmerling**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Pete Stauber**                           represented by    **Kenneth H Laborde**
*Representative*                                             (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Victoria Elizabeth Emmerling**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Jerry Carl**                             represented by    **Kenneth H Laborde**
*Representative*                                             (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Victoria Elizabeth Emmerling**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**August Pfluger**                         represented by    **Kenneth H Laborde**
*Representative*                                             (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Victoria Elizabeth Emmerling**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Wesley Hunt**                            represented by    **Kenneth H Laborde**
*Representative*                                             (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Victoria Elizabeth Emmerling**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**John A Barrasso**          represented by   **Kenneth H Laborde**
*Senator*                                     (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Victoria Elizabeth Emmerling**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Ted Cruz**                represented by   **Kenneth H Laborde**
*Senator*                                     (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Victoria Elizabeth Emmerling**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Bill Cassidy**            represented by   **Kenneth H Laborde**
*Senator*                                     (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Victoria Elizabeth Emmerling**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Cindy Hyde-Smith**        represented by   **Kenneth H Laborde**
*Senator*                                     (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Victoria Elizabeth Emmerling**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

Email to Active Attorneys' Primary Addresses
Email to All Attorneys' Primary Addresses
Email to Casewide NEF Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 08/24/2023 | 1 (p.26) | COMPLAINT *for Declaratory and Injunctive Relief* against Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, |

| | | |
|---|---|---|
| | | James Kendall, Elizabeth Klein, U S Depart of the Interior (Filing fee $402, receipt number ALAWDC-5668981) filed by Chevron U S A Inc, American Petroleum Institute, State of Louisiana. (Attachments: # 1 (p.26) Exhibit Declaration, # 2 (p.74) Civil cover sheet)(Attorney James A Holmes added to party American Petroleum Institute(pty:pla), Attorney James A Holmes added to party Chevron U S A Inc.(pty:pla), Attorney James A Holmes added to party State of Louisiana(pty:pla))(aty,Holmes, James) Modified docket text on 8/25/2023 (Bunting, M). (Entered: 08/24/2023), (QC'ed on 08/25/2023, by Bunting , M) |
| 08/24/2023 | | CASE Assigned to Judge James D Cain, Jr and Magistrate Judge Kathleen Kay. (crt,Bunting, M) (Entered: 08/25/2023) |
| 08/25/2023 | 2 (p.74) | SUMMONS ISSUED as to U S Attorney, U S Attorney General, Deb Haaland, Laura Daniel-Davis, Elizabeth Klein, James Kendall, U S Dept of Interior, Bureau of Ocean Energy Management Regulation & Enforcement. (crt,Bunting, M) (Entered: 08/25/2023) |
| 08/25/2023 | 3 (p.90) | NOTICE of Corporate Disclosure Statement Requirement re: 1 (p.26) Complaint, sent to James A Holmes on behalf of Chevron U S A Inc. Corporate Disclosure Statement due by 9/8/2023. (crt,Bunting, M) (Entered: 08/25/2023) |
| 08/28/2023 | 4 (p.91) | CORPORATE DISCLOSURE STATEMENT by Chevron U S A Inc. Corporate Parent - Chevron Corp to Chevron U S A Inc (aty,Juneau, Claire) Modified to add corporate parent on 8/28/2023 (Bunting, M). (Entered: 08/28/2023), (QC'ed on 08/28/2023, by Bunting , M) |
| 08/28/2023 | 5 (p.94) | MOTION for Sean Michael Marotta to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5671552) by Chevron U S A Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 8/28/2023. (Attachments: # 1 (p.26) Proposed order, # 2 (p.74) Certificate of good standing)(aty,Phillips, Michael) (Entered: 08/28/2023), (QC'ed on 08/28/2023, by Bunting , M) |
| 08/28/2023 | 6 (p.99) | MOTION for Dana Allan Raphael to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5671599) by Chevron U S A Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 8/28/2023. (Attachments: # 1 (p.26) Proposed order, # 2 (p.74) Certificate of good standing)(aty,Phillips, Michael) (Entered: 08/28/2023), (QC'ed on 08/28/2023, by Bunting , M) |
| 08/28/2023 | 7 (p.104) | MOTION for Catherine E. Stetson to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5671619) by Chevron U S A Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 8/28/2023. (Attachments: # 1 (p.26) Proposed order, # 2 (p.74) Certificate of good standing)(aty,Phillips, Michael) (Entered: 08/28/2023), (QC'ed on 08/28/2023, by Bunting , M) |
| 08/28/2023 | 8 (p.109) | PROPOSED PLEADING - MOTION for Preliminary Injunction by All Plaintiffs. Motion Ripe Deadline set for 8/28/2023. (aty,Holmes, James) Modified on 8/29/2023 (Bunting, M). See 9 (p.114) . (Entered: 08/28/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/28/2023 | 9 (p.114) | MOTION for Leave to File Excess Pages by All Plaintiffs. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 8/28/2023. (Attachments: # 1 (p.26) Proposed pleading, # 2 (p.74) Exhibit, # 3 (p.90) Exhibit, # 4 (p.91) Exhibit, # 5 (p.94) Exhibit, # 6 (p.99) Exhibit, # 7 (p.104) Exhibit, # 8 (p.109) Exhibit, # 9 (p.114) Exhibit, # 10 (p.2331) Exhibit, # 11 Exhibit, # 12 (p.2338) Exhibit, # 13 Exhibit, # 14 (p.2340) Exhibit, # 15 (p.4558) Exhibit, # 16 (p.4560) Exhibit, # 17 (p.5944) Exhibit, # 18 (p.5946) Exhibit, # 19 (p.5948) Exhibit, # 20 (p.5949) |

| | | |
|---|---|---|
| | | Exhibit, # 21 (p.5950) Exhibit, # 22 (p.5951) Exhibit, # 23 (p.6001) Exhibit, # 24 (p.6006) Exhibit, # 25 (p.6638) Exhibit, # 26 (p.6640) Exhibit, # 27 (p.6642) Exhibit, # 28 (p.6644) Exhibit, # 29 (p.6646) Exhibit, # 30 (p.6653) Exhibit, # 31 (p.6657) Proposed order)(aty,Holmes, James) (Entered: 08/28/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/28/2023 | 10 (p.2331) | MOTION to Expedite consideration of 9 (p.114) MOTION for Leave to File Excess Pages , 8 (p.109) MOTION for Preliminary Injunction by All Plaintiffs. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 8/28/2023. (aty,Holmes, James) (Entered: 08/28/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/28/2023 | | (Court only) ***Corporate Disclosure Deadline for Chevron U S A Inc terminated. See doc. no. 4 (p.91) . (crt,Mitchell, P) (Entered: 09/11/2023) |
| 08/29/2023 | | Motions Transferred regarding 9 (p.114) MOTION for Leave to File Excess Pages , 10 (p.2331) MOTION to Expedite consideration of 9 (p.114) MOTION for Leave to File Excess Pages , 8 (p.109) MOTION for Preliminary Injunction . Motions referred to Judge James D Cain, Jr. (crt,Bunting, M) (Entered: 08/29/2023) |
| 08/29/2023 | 11 | ELECTRONIC ORDER granting 9 (p.114) Motion for Leave to File Excess Pages. The clerk is directed to docket the proposed pleading. Signed by Judge James D Cain, Jr on 8/29/2023. (crt,Higgins, M) (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Stewart , T) |
| 08/29/2023 | 12 (p.2338) | PROPOSED ORDER/JUDGMENT by American Petroleum Institute, Chevron U S A Inc, State of Louisiana re 14 (p.2340) Motion for Preliminary Injunction. (aty,Holmes, James) Modified docket entry relationship on 8/29/2023 (Bunting, M). (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/29/2023 | 13 | ELECTRONIC ORDER granting 10 (p.2331) Motion to Expedite. Plaintiffs are hereby directed to serve defendants within two weeks of this order. Defendants are to file their answers and responses to the Motion for Preliminary Injunction within two weeks of service; plaintiffs will have one week thereafter to file a reply. Signed by Judge James D Cain, Jr on 8/29/2023. (crt,Higgins, M) (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Stewart , T) |
| 08/29/2023 | 14 (p.2340) | MOTION for Preliminary Injunction by American Petroleum Institute, Chevron U S A Inc, State of Louisiana on 8/29/2023. Motion Ripe Deadline set for 8/29/2023. (Attachments: # 1 (p.26) Memorandum / Brief, # 2 (p.74) Exhibit A, # 3 (p.90) Exhibit AA, # 4 (p.91) Exhibit B, # 5 (p.94) Exhibit C, # 6 (p.99) Exhibit CC, # 7 (p.104) Exhibit DD, # 8 (p.109) Exhibit E, # 9 (p.114) Exhibit EE, # 10 (p.2331) Exhibit F, # 11 Exhibit FF, # 12 (p.2338) Exhibit G, # 13 Exhibit GG, # 14 (p.2340) Exhibit H, # 15 (p.4558) Exhibit HH, # 16 (p.4560) Exhibit J, # 17 (p.5944) Exhibit L, # 18 (p.5946) Exhibit M, # 19 (p.5948) Exhibit N, # 20 (p.5949) Exhibit O, # 21 (p.5950) Exhibit P, # 22 (p.5951) Exhibit Q, # 23 (p.6001) Exhibit R, # 24 (p.6006) Exhibit S, # 25 (p.6638) Exhibit T, # 26 (p.6640) Exhibit W, # 27 (p.6642) Exhibit X, # 28 (p.6644) Exhibit Y, # 29 (p.6646) Exhibit Z)(crt,Bunting, M) See 16 (p.4560) for additional exhibits. (Additional attachment(s) added on 9/18/2023: # 30 (p.6653) Exhibit BB) (Crick, S). Modified on 9/18/2023 to add Exhibit [9-5]. (Crick, S). (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/29/2023 | | (Court only) ***Motions terminated: 8 (p.109) MOTION for Preliminary Injunction filed by American Petroleum Institute, State of Louisiana, Chevron U S A Inc. Reason for termination: Document filed in error as a motion (crt,Bunting, M) (Entered: 08/29/2023) |

| | | |
|---|---|---|
| 08/29/2023 | 15 (p.4558) | CERTIFICATE OF SERVICE by American Petroleum Institute, Chevron U S A Inc, State of Louisiana re 8 (p.109) MOTION for Preliminary Injunction (aty,Holmes, James) Modified to add docket entry relationship on 8/29/2023 (Bunting, M). (Entered: 08/29/2023), (QC'ed on 09/15/2023, by Bunting , M) |
| 08/29/2023 | 16 (p.4560) | EXHIBIT D, Exhibit I and Exhibit K to 14 (p.2340) Memorandum in Support of Motion for Preliminary Injunction by American Petroleum Institute, Chevron U S A Inc, State of Louisiana. (Attachments: # 1 (p.26) Exhibit I, # 2 (p.74) Exhibit K)(aty,Holmes, James) Modified to add docket entry relationship on 8/29/2023 (Bunting, M). (Entered: 08/29/2023), (QC'ed on 09/15/2023, by Bunting , M) |
| 08/29/2023 | 17 (p.5944) | NOTICE of Appearance by Alexis Romero on behalf of Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein (Attorney Alexis Romero added to party Bureau of Ocean Energy Management Regulation & Enforcement(pty:dft), Attorney Alexis Romero added to party Laura Daniel-Davis(pty:dft), Attorney Alexis Romero added to party Deb Haaland(pty:dft), Attorney Alexis Romero added to party U S Dept of Interior(pty:dft), Attorney Alexis Romero added to party James Kendall(pty:dft), Attorney Alexis Romero added to party Elizabeth Klein(pty:dft)) (aty,Romero, Alexis) (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/29/2023 | 18 (p.5946) | NOTICE of Appearance by Luther L Hajek on behalf of Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein (Attorney Luther L Hajek added to party Bureau of Ocean Energy Management Regulation & Enforcement(pty:dft), Attorney Luther L Hajek added to party Laura Daniel-Davis(pty:dft), Attorney Luther L Hajek added to party Deb Haaland(pty:dft), Attorney Luther L Hajek added to party U S Dept of Interior(pty:dft), Attorney Luther L Hajek added to party James Kendall(pty:dft), Attorney Luther L Hajek added to party Elizabeth Klein(pty:dft)) (aty,Hajek, Luther) (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/29/2023 | | NOTICE of Corrective Action to American Petroleum Institute, Chevron U S A Inc, State of Louisiana regarding 14 (p.2340) MOTION for Preliminary Injunction. Action taken: Add Exhibit [9-5] to 14 (p.2340) Motion for Preliminary Injunction. (crt,Crick, S) (Entered: 09/18/2023) |
| 08/30/2023 | 19 (p.5948) | ORDER granting 5 (p.94) Motion to Appear Pro Hac Vice for appearance of Sean Marotta for Chevron U S A Inc. Signed by Magistrate Judge Kathleen Kay on 8/30/2023. (crt,Bunting, M) (Entered: 08/30/2023) |
| 08/30/2023 | 20 (p.5949) | ORDER granting 6 (p.99) Motion to Appear Pro Hac Vice for appearance of Dana A Raphael for Chevron U S A Inc. Signed by Magistrate Judge Kathleen Kay on 8/30/2023. (crt,Bunting, M) (Entered: 08/30/2023) |
| 08/30/2023 | 21 (p.5950) | ORDER granting 7 (p.104) Motion to Appear Pro Hac Vice for appearance of Catherine E Stetson for Chevron U S A Inc. Signed by Magistrate Judge Kathleen Kay on 8/30/2023. (crt,Bunting, M) (Entered: 08/30/2023) |
| 09/01/2023 | 22 (p.5951) | AFFIDAVIT of Mailing of Service for Complaint on Deb Haaland, Laura Daniel-Davis, Elizabeth Klein, James Kendall, U.S. Department of Interior, Bureau of Ocean Energy Management, U.S. Attorney General, U.S. Attorney for Western District of LA (Shreveport),and U.S. Attorney Western District of LA (Lafayette) on 8/25/23, filed by American Petroleum Institute, Chevron U S A Inc, State of Louisiana. (Attachments: # 1 (p.26) Exhibit A-Service LA. Western District US Attorney, Lafayette, # 2 (p.74) Exhibit B-Service LA. Western District US Attorney, |

| | | |
|---|---|---|
| | | Shreveport, # 3 (p.90) Exhibit C-Service James Kendall, Director of Gulf of Mexico Regional Office of Bureau of Ocean Energy Management, # 4 (p.91) Exhibit D-Service Laura Daniel-Davis in official capacity as Deputy Assistant Secretary of Interior for Land and Mineral Management, # 5 (p.94) Exhibit E-Service Deb Haaland in official capacity as Secretary of the Interior, # 6 (p.99) Exhibit F-Service Elizabeth Klien in official capacity as Director of Bureau of Ocean Energy Management, # 7 (p.104) Exhibit G-Service US Department of Interior, # 8 (p.109) Exhibit H-Service Bureau of Ocean Energy Management, # 9 (p.114) Exhibit I-US Attorney General)(aty,Holmes, James) Modified docket text on 9/5/2023 (Bunting, M). (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/01/2023 | 23 (p.6001) | MOTION for Extension of Time to File Response/Reply as to 14 (p.2340) MOTION for Preliminary Injunction with opposition *and for an Extension of Time to File a Response to the Complaint* by All Defendants. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/1/2023. (Attachments: # 1 (p.26) Text of proposed order)(aty,Hajek, Luther) (Entered: 09/01/2023), (QC'ed on 09/01/2023, by Bunting , M) |
| 09/01/2023 | | Motions Transferred regarding 23 (p.6001) MOTION for Extension of Time to File Response/Reply as to 14 (p.2340) MOTION for Preliminary Injunction with opposition *and for an Extension of Time to File a Response to the Complaint*. Motions referred to Judge James D Cain, Jr. (crt,Bunting, M) (Entered: 09/01/2023) |
| 09/01/2023 | 24 (p.6006) | MOTION to Intervene with opposition by Sierra Club, Center for Biological Diversity, Friends of the Earth, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/1/2023. (Attachments: # 1 (p.26) Memorandum / Brief in Support of Motion to Intervene, # 2 (p.74) Proposed pleading - Answer to Complaint, # 3 (p.90) Declaration of Brettny Hardy in Support of Motion to Intervene, # 4 (p.91) Exhibit A, # 5 (p.94) Exhibit B, # 6 (p.99) Exhibit C, # 7 (p.104) Exhibit D, # 8 (p.109) Exhibit E, # 9 (p.114) Exhibit F, # 10 (p.2331) Exhibit G, # 11 Exhibit H, # 12 (p.2338) Exhibit I, # 13 Declaration of Athan Manuel, # 14 (p.2340) Declaration of Hallie Templeton, # 15 (p.4558) Declaration of Joanie Steinhaus, # 16 (p.4560) Declaration of Kristen Monsell, # 17 (p.5944) Text of proposed order)(Attorney Elizabeth Livingston de Calderon added to party Sierra Club(pty:mov), Attorney Elizabeth Livingston de Calderon added to party Center for Biological Diversity(pty:mov), Attorney Elizabeth Livingston de Calderon added to party Friends of the Earth(pty:mov), Attorney Elizabeth Livingston de Calderon added to party Turtle Island Restoration Network(pty:mov))(aty,Livingston de Calderon, Elizabeth) (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/01/2023 | 25 (p.6638) | CORPORATE DISCLOSURE STATEMENT by Sierra Club. (aty,Livingston de Calderon, Elizabeth) (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/01/2023 | 26 (p.6640) | CORPORATE DISCLOSURE STATEMENT by Center for Biological Diversity. (aty,Livingston de Calderon, Elizabeth) (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/01/2023 | 27 (p.6642) | CORPORATE DISCLOSURE STATEMENT by Friends of the Earth. (aty,Livingston de Calderon, Elizabeth) (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/01/2023 | 28 (p.6644) | CORPORATE DISCLOSURE STATEMENT by Turtle Island Restoration Network. (aty,Livingston de Calderon, Elizabeth) (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |

| | | |
|---|---|---|
| 09/01/2023 | 29 (p.6646) | MOTION to Expedite consideration of 24 (p.6006) MOTION to Intervene with opposition by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/1/2023. (Attachments: # 1 (p.26) Memorandum / Brief in Support of Motion to Expedite, # 2 (p.74) Text of proposed order)(aty,Livingston de Calderon, Elizabeth) (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/01/2023 | 30 (p.6653) | MOTION for Brettny Hardy to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5678853) by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/1/2023. (Attachments: # 1 (p.26) Certificate of good standing, # 2 (p.74) Text of proposed order)(aty,Livingston de Calderon, Elizabeth) (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/01/2023 | 31 (p.6657) | MOTION for George Torgun to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5678854) by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/1/2023. (Attachments: # 1 (p.26) Certificate of good standing, # 2 (p.74) Text of proposed order)(aty,Livingston de Calderon, Elizabeth) (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/01/2023 | 32 (p.6661) | MOTION for Stephen D. Mashuda to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5678855) by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/1/2023. (Attachments: # 1 (p.26) Certificate of good standing, # 2 (p.74) Text of proposed order)(aty,Livingston de Calderon, Elizabeth) (Entered: 09/01/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/02/2023 | 33 (p.6665) | MOTION for Andrew C. Lawrence to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5678896) by American Petroleum Institute. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/2/2023. (Attachments: # 1 (p.26) Certificate of good standing, # 2 (p.74) Text of proposed order)(aty,Holmes, James) (Entered: 09/02/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/02/2023 | 34 (p.6671) | MOTION for Charles Harker Rhodes IV to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5678900) by American Petroleum Institute. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/2/2023. (Attachments: # 1 (p.26) Certificate of good standing, # 2 (p.74) Text of proposed order)(aty,Holmes, James) See 37 (p.6689) Corrected Order. (Entered: 09/02/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/02/2023 | 35 (p.6677) | MOTION for James Xi to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5678901) by American Petroleum Institute. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/2/2023. (Attachments: # 1 (p.26) Certificate of good standing, # 2 (p.74) Text of proposed order)(aty,Holmes, James) (Entered: 09/02/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/02/2023 | 36 (p.6683) | MOTION for Paul D. Clement to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5678902) by American Petroleum Institute. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/2/2023. (Attachments: # 1 (p.26) Certificate of good standing, # 2 (p.74) Text of proposed order)(aty,Holmes, James) See 38 (p.6690) Corrected Order. (Entered: 09/02/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/05/2023 | | |

| | | |
|---|---|---|
| | | Motions Transferred regarding 24 (p.6006) MOTION to Intervene with opposition , 29 (p.6646) MOTION to Expedite consideration of 24 (p.6006) MOTION to Intervene with opposition . Motions referred to Judge James D Cain, Jr. (crt,Bunting, M) (Entered: 09/05/2023) |
| 09/05/2023 | 37 (p.6689) | CORRECTIVE DOCUMENT entitled Proposed Order for Motion to Appear Pro Hac Vice of C. Harker Rhodes IV (R. 34) filed by American Petroleum Institute regarding 34 (p.6671) MOTION for Charles Harker Rhodes IV to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5678900) . (aty,Holmes, James) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/05/2023 | 38 (p.6690) | CORRECTIVE DOCUMENT entitled Proposed Order for Motion to Appear Pro Hac Vice of Paul D. Clement (R. 36) filed by American Petroleum Institute regarding 36 (p.6683) MOTION for Paul D. Clement to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5678902) . (aty,Holmes, James) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/05/2023 | 39 (p.6691) | CORPORATE DISCLOSURE STATEMENT by American Petroleum Institute. (aty,Holmes, James) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Bunting , M) |
| 09/05/2023 | 40 | ELECTRONIC ORDER granting 29 (p.6646) Motion to Expedite. Responses to the 24 (p.6006) Motion to Intervene are due by 9/12/2023 and replies by 9/15/2023. Signed by Judge James D Cain, Jr on 9/5/2023. (crt,Higgins, M) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Stewart , T) |
| 09/05/2023 | | (Court only) ***Staff notes (non-public entry - for Court Staff only): Set/Reset Deadlines as to 24 (p.6006) MOTION to Intervene with opposition . Responses due by 9/12/2023, Replies due by 9/15/2023. (crt,Higgins, M) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Stewart , T) |
| 09/05/2023 | 41 | ELECTRONIC ORDER granting 23 (p.6001) Motion for Extension of Time to File Response/Reply re 14 (p.2340) MOTION for Preliminary Injunction with opposition *and for an Extension of Time to File a Response to the Complaint*: Responses and Answer due by 9/13/2023. Signed by Judge James D Cain, Jr on 9/5/2023. (crt,Higgins, M) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Stewart , T) |
| 09/05/2023 | 42 | ELECTRONIC ORDER re 14 (p.2340) MOTION for Preliminary Injunction filed by American Petroleum Institute, State of Louisiana, Chevron U S A Inc: A hearing on the Motion is set for 10/12/2023 at 01:30 PM in Lake Charles, Courtroom 4 before Judge Cain. Signed by Judge James D Cain, Jr on 9/5/2023. (crt,Higgins, M) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Stewart , T) |
| 09/05/2023 | 43 | ELECTRONIC ORDER re 14 (p.2340) MOTION for Preliminary Injunction filed by American Petroleum Institute, State of Louisiana, Chevron U S A Inc: The hearing on this matter is hereby reset for 9/21/2023 at 01:30 PM in Lake Charles, Courtroom 4 before Judge Cain in order to allow the court time to rule before the statutory lease sale deadline. Signed by Judge James D Cain, Jr on 9/5/2023. (crt,Higgins, M) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Stewart , T) |
| 09/06/2023 | 44 (p.6693) | MOTION for Sarah C. Bordelon to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5681056) by Chevron U S A Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/6/2023. (Attachments: # 1 (p.26) Proposed order, # 2 (p.74) Certificate of good standing)(aty,Juneau, Claire) (Entered: 09/06/2023), (QC'ed on 09/06/2023, by Bunting , M) |
| 09/08/2023 | | |

| | | |
|---|---|---|
| | 45 (p.6698) | MOTION for Nikesh Jindal to Appear Pro Hac Vice *Nikesh Jindal* (Admission fee: $105, receipt number ALAWDC-5685162) by Chevron U S A Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/8/2023. (Attachments: # 1 (p.26) Certificate of good standing, # 2 (p.74) Proposed order)(aty,Phillips, Michael) (Entered: 09/08/2023), (QC'ed on 09/08/2023, by Bunting , M) |
| 09/08/2023 | 46 (p.6703) | Unopposed MOTION to Consolidate Case with Case Number 23-cv-1167 by All Defendants. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/8/2023. (Attachments: # 1 (p.26) Proposed order)(aty,Hajek, Luther) Modified docket text on 9/11/2023 (Miletello, A). (Entered: 09/08/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/12/2023 | | Motions Transferred regarding 46 (p.6703) Unopposed MOTION to Consolidate Case with Case Number 23-cv-1167. Motions referred to Judge James D Cain, Jr. (crt,Stewart, T) (Entered: 09/12/2023) |
| 09/12/2023 | 47 (p.6709) | MEMORANDUM in Opposition re 24 (p.6006) MOTION to Intervene with opposition filed by American Petroleum Institute, Chevron U S A Inc, State of Louisiana. (Attachments: # 1 (p.26) Exhibit A, # 2 (p.74) Exhibit B, # 3 (p.90) Exhibit C, # 4 (p.91) Exhibit D, # 5 (p.94) Exhibit E)(aty,Phillips, Michael) (Entered: 09/12/2023), (QC'ed on 09/13/2023, by Bunting , M) |
| 09/12/2023 | 48 (p.6767) | Unopposed MOTION for Leave to File Excess Pages by All Defendants. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/12/2023. (Attachments: # 1 (p.26) Proposed order)(aty,Hajek, Luther) Modified to reflect deficient status on 9/13/2023 (Bunting, M). Modified to remove deficient status on 9/13/2023 (Bunting, M). (Entered: 09/12/2023), (QC'ed on 09/13/2023, by Bunting , M) |
| 09/13/2023 | 49 (p.6772) | NOTICE of Deficiency to Luther L Hajek on behalf of Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein regarding 48 (p.6767) Unopposed MOTION for Leave to File Excess Pages . Reason: A motion for leave to file must be accompanied by the proposed pleading. The court will not act on such a motion without reviewing the document sought to be filed. Please refer to LR 7.6 for more information. The motion cannot be referred to chambers until this deficiency is corrected. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | 50 | ELECTRONIC ORDER granting 48 (p.6767) Motion for Leave to File Excess Pages. Defendants are hereby granted permission to file one brief of up to 45 pages in total (excluding the table ofcontents and table of authorities, see W.D. La. LR 7.8) responding to the preliminary injunction motions filed in this matter and related case Shell Offshore Inc. v. U.S. Department of Interior, No. 2:23-cv-1167. Signed by Judge James D Cain, Jr on 9/13/2023. (crt,Higgins, M) (Entered: 09/13/2023), (QC'ed on 09/13/2023, by Stewart , T) |
| 09/13/2023 | | NOTICE of Corrective Action to Luther L Hajek on behalf of Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein regarding 48 (p.6767) Unopposed MOTION for Leave to File Excess Pages , 49 (p.6772) Notice of Deficiency,,. Action taken: Deficiency removed from docket entry. Deadline terminated. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | | (Court only) ***Staff notes (non-public entry - for Court Staff only): Per instruction from Chamber, 49 (p.6772) Deficiency terminated. (crt,Bunting, M) (Entered: 09/13/2023) |

| | | |
|---|---|---|
| 09/13/2023 | | (Court only) ***Party Shell Offshore Inc and Shell Offshore Inc added., ***Attorney added: Kelly Brechtel Becker,Bradley K Ervin,Cecilia Grace Vazquez,Michael James Mazzone,Russell Keith Jarrett,Samuel Ross Howe,Steven J Rosenbaum for Shell Offshore Inc. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | 51 (p.6773) | ORDER granting 46 (p.6703) Motion to Consolidate Cases. Lead Case Number: 2:23-cv-1157. Member Case Number(s): 2:23-cv-1167. All future filings shallbe made in the lead case, State of Louisiana, et al. v. Deb Haaland, et al., No. 2:23-cv-1157.Each party will be permitted to file separate briefs and will be permitted separate time for argument at any hearings. A separate judgment will be entered in each case. Signed by Judge James D Cain, Jr on 9/12/2023. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | 52 (p.6775) | NOTICE of Consolidation by Clerk. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | 53 (p.6776) | MEMORANDUM in Opposition re 14 (p.2340) MOTION for Preliminary Injunction filed by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. (Attachments: # 1 (p.26) Declaration of George Torgun in Support of Opposition, # 2 (p.74) Exhibit 1 to Torgun Decl., # 3 (p.90) Exhibit 2 to Torgun Decl., # 4 (p.91) Declaration of Expert Aaron Rice, Ph.D, # 5 (p.94) Attachment 1 to Rice Decl.)(aty,Livingston de Calderon, Elizabeth) (Entered: 09/13/2023), (QC'ed on 09/14/2023, by Bunting , M) |
| 09/13/2023 | 54 (p.6903) | ANSWER to 1 (p.26) Complaint,, by Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein.(aty,Hajek, Luther) (Entered: 09/13/2023), (QC'ed on 09/14/2023, by Bunting , M) |
| 09/13/2023 | 55 (p.6924) | MEMORANDUM in Opposition re 14 (p.2340) MOTION for Preliminary Injunction *filed by Plaintiffs' Louisiana et al. and Plaintiff Shell Offshore Inc.* filed by Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein. (Attachments: # 1 (p.26) Exhibit ESA Reinitiation Letter, # 2 (p.74) Exhibit LS 259 Record of Decision, # 3 (p.90) Exhibit BOEM Decision Memo, # 4 (p.91) Exhibit Section 7(d) Determination, # 5 (p.94) Exhibit LS 261 Record of Decision, # 6 (p.99) Affidavit Declaration of Walter Cruickshank)(aty,Hajek, Luther) (Entered: 09/13/2023), (QC'ed on 09/14/2023, by Bunting , M) |
| 09/14/2023 | 56 (p.7054) | RESPONSE in Opposition *to Shell's Motion for Preliminary Injunction (23-1167, ECF No. 4)* by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network . (Attachments: # 1 (p.26) Declaration of George Torgun in Support of Opposition, # 2 (p.74) Exhibit 1 to Torgun Decl., # 3 (p.90) Exhibit 2 to Torgun Decl., # 4 (p.91) Declaration of Expert Aaron Rice, Ph.D, # 5 (p.94) Attachment 1 to Rice Decl.)(aty,Livingston de Calderon, Elizabeth) (Entered: 09/14/2023), (QC'ed on 09/14/2023, by Bunting , M) |
| 09/14/2023 | 57 (p.7181) | ANSWER to Complaint *filed by Shell Offshore Inc.* by Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein.(aty,Hajek, Luther) (Entered: 09/14/2023), (QC'ed on 09/14/2023, by Bunting , M) |
| 09/14/2023 | 58 (p.7194) | MEMORANDUM ORDER granting 24 (p.6006) Motion to Intervene. Intervenor-defendants participation in the Motion for Preliminary Injunction [doc. 14] is limited to a single brief of up to 25 pages, excluding table of contents and |

| | | |
|---|---|---|
| | | authorities, which must be filed in the court on or before September 19, 2023. Time at oral argument is reserved only for the original parties to the suit. Signed by Judge James D Cain, Jr on 9/14/2023. (crt,Jones, P) (Main Document 58 replaced on 9/14/2023) (Jones, P). Modified on 9/14/2023 to edit text (Jones, P). (Entered: 09/14/2023) |
| 09/14/2023 | 59 (p.7203) | ANSWER in Intervention to 1 (p.26) Complaint by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network.(crt,Bunting, M) (Entered: 09/14/2023) |
| 09/14/2023 | 60 (p.7225) | ANSWER in Intervention to Complaint (filed in 2:23-cv-1167) by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network.(crt,Bunting, M) (Entered: 09/14/2023) |
| 09/15/2023 | 61 (p.7240) | MOTION to Waive or Set Earlier Hearing on Plaintiffs' Motions for Preliminary Injunction re 43 Order,, Set Motion and R&R Deadlines/Hearings, by All Plaintiffs. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/15/2023. (Attachments: # 1 (p.26) Memorandum / Brief, # 2 (p.74) Proposed order)(aty,Holmes, James). Added MOTION to Expedite on 9/15/2023 (Bunting, M). Modified to add additional relief requested on 9/15/2023 (Bunting, M). (Entered: 09/15/2023), (QC'ed on 09/15/2023, by Bunting , M) |
| 09/15/2023 | 62 | ELECTRONIC ORDER denying 61 (p.7240) Motion to Waive or Reschedule Hearing. The hearing date has been set for over a week without any notice of plaintiffs' opposition to the date. The court will issue a ruling the following day. Signed by Judge James D Cain, Jr on 9/15/2023. (crt,Higgins, M) (Entered: 09/15/2023), (QC'ed on 09/15/2023, by Stewart , T) |
| 09/15/2023 | 63 (p.7255) | Unopposed MOTION for Leave to File Brief of Amici Curiae 10 Members of the United States Congress in Support of Plaintiffs' Motion for Preliminary Injunction with consent by Bruce Westerman, Garret Graves, Pete Stauber, Jerry Carl, August Pfluger, Wesley Hunt, Senator John A. Barrasso, Senator Ted Cruz, Senator Bill Cassidy, Senator Cindy Hyde-Smith. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/15/2023. (Attachments: # 1 (p.26) Brief of Amici Curiae 10 Members of the United States Congress in Support of Plaintiffs' Motion for Preliminary Injunction, # 2 (p.74) Proposed order)(Attorney Kenneth H Laborde added to party Bruce Westerman(pty:am), Attorney Kenneth H Laborde added to party Garret Graves(pty:am), Attorney Kenneth H Laborde added to party Pete Stauber(pty:am), Attorney Kenneth H Laborde added to party Jerry Carl(pty:am), Attorney Kenneth H Laborde added to party August Pfluger(pty:am), Attorney Kenneth H Laborde added to party Wesley Hunt(pty:am), Attorney Kenneth H Laborde added to party Senator John A. Barrasso(pty:am), Attorney Kenneth H Laborde added to party Senator Ted Cruz(pty:am), Attorney Kenneth H Laborde added to party Senator Bill Cassidy(pty:am), Attorney Kenneth H Laborde added to party Senator Cindy Hyde-Smith(pty:am))(aty,Laborde, Kenneth) (Entered: 09/15/2023), (QC'ed on 09/15/2023, by Bunting , M) |
| 09/15/2023 | | (Court only) ***Motions terminated: 61 (p.7240) MOTION to Waive or Set Earlier Hearing on Plaintiffs' Motions for Preliminary Injunction re 43 Order,, Set Motion and R&R Deadlines/Hearings, MOTION to Expedite filed by American Petroleum Institute, State of Louisiana, Chevron U S A Inc. Reason for termination: See 62 . (crt,Bunting, M) (Entered: 09/15/2023) |
| 09/15/2023 | 64 | ELECTRONIC ORDER granting 63 (p.7255) Motion for Leave to File Amicus Brief. The clerk is directed to docket the proposed memorandum. Signed by Judge |

| | | |
|---|---|---|
| | | James D Cain, Jr on 9/15/2023. (crt,Higgins, M) (Entered: 09/15/2023), (QC'ed on 09/18/2023, by Stewart , T) |
| 09/15/2023 | | (Court only) ***Attorney added: Victoria Elizabeth Emmerling for Senator John A. Barrasso,Victoria Elizabeth Emmerling for Jerry Carl,Victoria Elizabeth Emmerling for Senator Bill Cassidy,Victoria Elizabeth Emmerling for Senator Ted Cruz,Victoria Elizabeth Emmerling for Garret Graves,Victoria Elizabeth Emmerling for Wesley Hunt,Victoria Elizabeth Emmerling for Senator Cindy Hyde-Smith,Victoria Elizabeth Emmerling for August Pfluger,Victoria Elizabeth Emmerling for Pete Stauber,Victoria Elizabeth Emmerling for Bruce Westerman. (crt,Bunting, M) (Entered: 09/15/2023) |
| 09/15/2023 | 65 (p.7274) | AMICUS BRIEF in Support re 14 (p.2340) MOTION for Preliminary Injunction filed by John A Barrasso, Jerry Carl, Bill Cassidy, Ted Cruz, Garret Graves, Wesley Hunt, Cindy Hyde-Smith, August Pfluger, Pete Stauber, Bruce Westerman. (crt,Bunting, M) (Entered: 09/15/2023) |
| 09/15/2023 | 66 (p.7287) | CORRECTIVE DOCUMENT entitled Brief of Amici Curiae 10 Members of the United States Congress in Support of Plaintiffs' Motion for Preliminary Injunction filed by John A Barrasso, Jerry Carl, Bill Cassidy, Ted Cruz, Garret Graves, Wesley Hunt, Cindy Hyde-Smith, August Pfluger, Pete Stauber, Bruce Westerman regarding 65 (p.7274) Memorandum in Support of Motion . (aty,Laborde, Kenneth) (Entered: 09/15/2023), (QC'ed on 09/18/2023, by Crick , S) |
| 09/19/2023 | 67 (p.7300) | Ex Parte MOTION for Leave to File Excess Pages for Reply to Response to 14 (p.2340) Motion for Preliminary Injunction by American Petroleum Institute, Chevron U S A Inc, State of Louisiana, Shell Offshore Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/19/2023. (Attachments: # 1 (p.26) Proposed order, # 2 (p.74) Proposed pleading)(aty,Phillips, Michael) Modified on 9/19/2023 to create docket entry relationship. (Crick, S). (Entered: 09/19/2023), (QC'ed on 09/19/2023, by Crick , S) |
| 09/19/2023 | | Motions Transferred regarding 67 (p.7300) Ex Parte MOTION for Leave to File Excess Pages for Reply to Response to 14 (p.2340) Motion for Preliminary Injunction. Motions referred to Judge James D Cain, Jr. (crt,Crick, S) (Entered: 09/19/2023) |
| 09/19/2023 | 68 | ELECTRONIC ORDER granting 67 (p.7300) Motion for Leave to File Excess Pages. The clerk is directed to docket the proposed reply. Signed by Judge James D Cain, Jr on 9/19/2023. (crt,Higgins, M) (Entered: 09/19/2023), (QC'ed on 09/19/2023, by Stewart , T) |
| 09/19/2023 | 69 (p.7333) | REPLY to Response to Motion re 14 (p.2340) MOTION for Preliminary Injunction filed by American Petroleum Institute, Chevron U S A Inc, State of Louisiana, Shell Offshore Inc. (crt,Crick, S) (Entered: 09/19/2023) |
| 09/19/2023 | 70 (p.7361) | MEMORANDUM in Opposition re 14 (p.2340) MOTION for Preliminary Injunction *filed by Plaintiffs Louisiana et al. and Plaintiff Shell Offshore Inc.* filed by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. (Attachments: # 1 (p.26) Declaration of George Torgun in Support of Opposition, # 2 (p.74) Exhibit 1 to Torgun Decl. - Scientist Letter, # 3 (p.90) Exhibit 2 to Torgun Decl. - CBD Comments, # 4 (p.91) Declaration of Expert Aaron Rice, Ph.D, # 5 (p.94) Attachment 1 to Rice Decl. - Best (2023))(aty,Livingston de Calderon, Elizabeth) (Entered: 09/19/2023), (QC'ed on 09/19/2023, by Crick , S) |

| 09/20/2023 | 71 (p.7488) | ORDER granting 30 (p.6653) Motion to Appear Pro Hac Vice for appearance of Brettny Hardy for Center for Biological Diversity,Brettny Hardy for Friends of the Earth,Brettny Hardy for Sierra Club,Brettny Hardy for Turtle Island Restoration Network. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
|---|---|---|
| 09/20/2023 | 72 (p.7489) | ORDER granting 31 (p.6657) Motion to Appear Pro Hac Vice for appearance of George Torgun for Center for Biological Diversity,George Torgun for Friends of the Earth,George Torgun for Sierra Club,George Torgun for Turtle Island Restoration Network. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 73 (p.7490) | ORDER granting 32 (p.6661) Motion to Appear Pro Hac Vice for appearance of Stephen D Mashuda for Center for Biological Diversity,Stephen D Mashuda for Friends of the Earth,Stephen D Mashuda for Sierra Club,Stephen D Mashuda for Turtle Island Restoration Network. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 74 (p.7491) | ORDER granting 33 (p.6665) Motion to Appear Pro Hac Vice for appearance of Andrew C Lawrence for American Petroleum Institute. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 75 (p.7492) | ORDER granting 34 (p.6671) Motion to Appear Pro Hac Vice for appearance of C Harker Rhodes, IV for American Petroleum Institute. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 76 (p.7493) | ORDER granting 35 (p.6677) Motion to Appear Pro Hac Vice for appearance of James Xi for American Petroleum Institute. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 77 (p.7494) | ORDER granting 36 (p.6683) Motion to Appear Pro Hac Vice for appearance of Paul D Clement for American Petroleum Institute. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 78 (p.7495) | ORDER granting 44 (p.6693) Motion to Appear Pro Hac Vice for appearance of Sarah C Bordelon for Chevron U S A Inc. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 79 (p.7496) | ORDER granting 45 (p.6698) Motion to Appear Pro Hac Vice for appearance of Nikesh Jindal for Chevron U S A Inc. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | | ORDER granting Motion for Pro Hac Vice filed in member case 2:23-cv-1167, allowing Brettny Hardy to be admitted to the bar of this Court pro hac vice on behalf of Intervenor-Defendants Sierra Club, Center for Biological Diversity, Friends of the Earth, and Turtle Island Restoration Network. ADMINISTRATIVE ENTRY NO PDF ATTACHED. (See member case 23:23-cv-1167, document #39). Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | | ORDER granting Motion for Pro Hac Vice filed in member case 2:23-cv-1167, allowing George Torgun to be admitted to the bar of this Court pro hac vice on behalf of Intervenor-Defendants Sierra Club, Center for Biological Diversity, Friends of the Earth, and Turtle Island Restoration Network. ADMINISTRATIVE ENTRY NO PDF ATTACHED. (See member case 23:23-cv-1167, document #40). Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |

| | | |
|---|---|---|
| 09/20/2023 | | ORDER granting Motion for Pro Hac Vice filed in member case 2:23-cv-1167, allowing Stephen D Mushuda to be admitted to the bar of this Court pro hac vice on behalf of Intervenor-Defendants Sierra Club, Center for Biological Diversity, Friends of the Earth, and Turtle Island Restoration Network. ADMINISTRATIVE ENTRY NO PDF ATTACHED. (See member case 23:23-cv-1167, document #41). Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | | (Court only) ***Attorney added: Mark W Mosier for Shell Offshore Inc. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | | ORDER granting Motion for Pro Hac Vice filed in member case 2:23-cv-1167, allowing Mark W Mosier to be admitted to the bar of this Court pro hac vice on behalf of Consolidated-Plaintiff Shell Offshore Inc. ADMINISTRATIVE ENTRY NO PDF ATTACHED. See member case 23:23-cv-1167, document #42. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/21/2023 | 80 (p.7497) | MINUTES for proceedings held before Judge James D Cain, Jr: MOTION HEARING held on 9/21/2023 re 14 (p.2340) MOTION for Preliminary Injunction filed by American Petroleum Institute, State of Louisiana, Chevron U S A Inc. filed in this matter, and 4 (p.91) MOTION for Preliminary Injunction by Shell Offshore Inc. filed in docket # 2:23-cv-1167. The Motions were taken under advisement, with a written ruling to follow. (Court Reporter: DD Juranka) (crt,Stewart, T) (Entered: 09/21/2023) |
| 09/21/2023 | 81 (p.7588) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings for Preliminary Injunction Hearing held on 9/21/2023 before Judge James D Cain Jr. Court Reporter/Transcriber DD Juranka, Telephone number (337)214-6669. Total pages: 58. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter. Redaction Request due 10/16/2023. Redacted Transcript Deadline set for 10/26/2023. Release of Transcript Restriction set for 12/26/2023. (crt,Juranka, D) (Entered: 09/21/2023) |
| 09/21/2023 | 82 (p.7498) | MEMORANDUM ORDER granting 14 (p.2340) Motion for Preliminary Injunction. Accordingly, the government defendants are enjoined from implementing the acreage withdrawal and Stipulation 4(B)(4) as described in the Final Notice of Sale and Record of Decision for Lease Sale 261. Government defendants are ordered to proceed with Lease Sale 261, absent the challenged terms, by September 30, 2023. Signed by Judge James D Cain, Jr on 9/21/2023. (crt,Stewart, T) Modified to correct document type on 9/28/2023 (Stewart, T). (Entered: 09/21/2023) |
| 09/22/2023 | 83 (p.7528) | NOTICE OF APPEAL as to 82 (p.7498) Order on Motion for Preliminary Injunction, by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. (Filing fee $505, receipt number ALAWDC-5700777) (Attachments: # 1 (p.26) Exhibit A - ECF No. 82 Memorandum Order)(aty,Mushuda, Stephen) (Entered: 09/22/2023), (QC'ed on 09/22/2023, by WalkerSld , B) |
| 09/22/2023 | | NOTICE of Appeal Transcript Order Requirement regarding 83 (p.7528) Notice of Appeal. Pursuant to FRAP 10(b), the Appellant must file the transcript order form regardless of whether transcripts are necessary. Access the 5th Circuit site by clicking here. Hover over the Forms Fees & Guides tab, Forms, Court Reporter Forms, Transcript Order Form. |

| | | |
|---|---|---|
| | | In following the instructions on the form, please note manual notification to the court reporter and the 5th Circuit Court of Appeals is STILL REQUIRED. (crt,WalkerSld, B) (Entered: 09/22/2023) |
| 09/22/2023 | 84 (p.7560) | NOTICE OF APPEAL as to 82 (p.7498) Order on Motion for Preliminary Injunction, by Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein. (Filed on behalf of USA - Filing Fee not required) (aty,Hajek, Luther) (Entered: 09/22/2023), (QC'ed on 09/22/2023, by WalkerSld , B) |
| 09/22/2023 | | NOTICE of Appeal Transcript Order Requirement regarding 84 (p.7560) Notice of Appeal. Pursuant to FRAP 10(b), the Appellant must file the transcript order form regardless of whether transcripts are necessary. Access the 5th Circuit site by clicking here. Hover over the Forms Fees & Guides tab, Forms, Court Reporter Forms, Transcript Order Form.<br><br>In following the instructions on the form, please note manual notification to the court reporter and the 5th Circuit Court of Appeals is STILL REQUIRED. (crt,WalkerSld, B) (Entered: 09/22/2023) |
| 09/22/2023 | | USCA Case Number 23-30666 for 83 (p.7528) Notice of Appeal, filed by Turtle Island Restoration Network, Center for Biological Diversity, Friends of the Earth, Sierra Club and 84 (p.7560) Notice of Appeal, filed by Bureau of Ocean Energy Management Regulation & Enforcement, Deb Haaland, U S Dept of Interior, James Kendall, Laura Daniel-Davis, Elizabeth Klein. (crt,WalkerSld, B) (Entered: 09/22/2023) |
| 09/22/2023 | | Set Deadline for Clerk re 83 (p.7528) Notice of Appeal and 84 (p.7560) Notice of Appeal: Certify Appeal Record (23-30666) by Clerk to COA 10/10/2023. (crt,WalkerSld, B) (Entered: 09/22/2023) |
| 09/25/2023 | 85 (p.7562) | ORDER of USCA as to 84 (p.7560) Notice of Appeal, filed by Bureau of Ocean Energy Management Regulation & Enforcement, Deb Haaland, U S Dept of Interior, James Kendall, Laura Daniel-Davis, Elizabeth Klein, 83 (p.7528) Notice of Appeal, filed by Turtle Island Restoration Network, Center for Biological Diversity, Friends of the Earth, Sierra Club granting in part Motion for stay pending appeal filed by Appellants Mr. James Kendall, DOI, Bureau of Ocean Energy Management, Regulation and Enforcement, Ms. Deb Haaland, Ms. Laura Daniel-Davis and Ms. Elizabeth Klein; denying Motion to stay order filed by Appellants Mr. James Kendall, DOI, Bureau of Ocean Energy Management, Regulation and Enforcement, Ms. Deb Haaland, Ms. Laura Daniel-Davis and Ms. Elizabeth Klein; denying Motion for stay pending appeal filed by Appellants Sierra Club, Center for Biological Diversity, Friends of the Earth and Turtle Island Restoration Network; granting Motion to file motion in excess of the word count limitations filed by Appellants Mr. James Kendall, DOI, Bureau of Ocean Energy Management, Regulation and Enforcement, Ms. Deb Haaland, Ms. Laura Daniel-Davis and Ms. Elizabeth Klein. (crt,WalkerSld, B) (Entered: 09/26/2023) |
| 09/25/2023 | 86 (p.7566) | MEMORANDUM ORDER of USCA as to 84 (p.7560) Notice of Appeal, filed by Bureau of Ocean Energy Management Regulation & Enforcement, Deb Haaland, U S Dept of Interior, James Kendall, Laura Daniel-Davis, Elizabeth Klein, 83 (p.7528) Notice of Appeal, filed by Turtle Island Restoration Network, Center for Biological Diversity, Friends of the Earth, Sierra Club that Appellees unopposed motion for leave to file response/opposition in excess of word count but not to exceed 7,500 words is GRANTED. (crt,WalkerSld, B) (Entered: 09/26/2023) |

| | | |
|---|---|---|
| 09/27/2023 | 87 (p.7569) | CERTIFICATE OF SERVICE by Shell Offshore Inc re 1 (p.26) Complaint,, *Served on US Attorney, Western District of Louisiana on August 30, 2023* (aty,Becker, Kelly) (Entered: 09/27/2023), (QC'ed on 09/28/2023, by Bunting , M) |
| 09/27/2023 | 88 (p.7570) | CERTIFICATE OF SERVICE by Shell Offshore Inc re 1 (p.26) Complaint,, *Served on Bureau of Ocean Energy Management Headquarters on September 11, 2023* (aty,Becker, Kelly) (Entered: 09/27/2023), (QC'ed on 09/28/2023, by Bunting , M) |
| 09/27/2023 | 89 (p.7572) | CERTIFICATE OF SERVICE by Shell Offshore Inc re 1 (p.26) Complaint,, *Served on US Attorney General on September 13, 2023* (aty,Becker, Kelly) (Entered: 09/27/2023), (QC'ed on 09/28/2023, by Bunting , M) |
| 09/27/2023 | 90 (p.7574) | CERTIFICATE OF SERVICE by Shell Offshore Inc re 1 (p.26) Complaint,, *Served on Deb Haaland on September 12, 2023* (aty,Becker, Kelly) (Entered: 09/27/2023), (QC'ed on 09/28/2023, by Bunting , M) |
| 09/27/2023 | 91 (p.7576) | CERTIFICATE OF SERVICE by Shell Offshore Inc re 1 (p.26) Complaint,, *Served on Elizabeth Klein on September 11, 2023* (aty,Becker, Kelly) (Entered: 09/27/2023), (QC'ed on 09/28/2023, by Bunting , M) |
| 09/27/2023 | 92 (p.7578) | CERTIFICATE OF SERVICE by Shell Offshore Inc re 1 (p.26) Complaint,, *Served on the US Department of the Interior on September 11, 2023* (aty,Becker, Kelly) (Entered: 09/27/2023), (QC'ed on 09/28/2023, by Bunting , M) |
| 09/27/2023 | 93 (p.7580) | CERTIFICATE OF SERVICE by Shell Offshore Inc re 1 (p.26) Complaint,, *Served on James Kendall on September 11, 2023* (aty,Becker, Kelly) (Entered: 09/27/2023), (QC'ed on 09/28/2023, by Bunting , M) |
| 09/27/2023 | 94 (p.7582) | APPEAL TRANSCRIPT REQUEST by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network for Hearing on Motions for Preliminary Injunction held on 9/21/23 before Judge James D Cain Jr. Court Reporter Deidre Juranka (aty,Mashuda, Stephen) Transcript is already on file in the Clerk's Office. Modified text on 9/27/2023 (WalkerSld, B). (Entered: 09/27/2023), (QC'ed on 09/27/2023, by WalkerSld , B) |
| 09/27/2023 | 95 (p.7584) | CERTIFICATE OF SERVICE by Shell Offshore Inc re 1 (p.26) Complaint,, *Served on Laura Daniel-Davis on September 8, 2023* (aty,Becker, Kelly) (Entered: 09/27/2023), (QC'ed on 09/28/2023, by Bunting , M) |
| 09/28/2023 | 96 (p.7586) | APPEAL TRANSCRIPT REQUEST by Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein for Preliminary Injunction Hearing held on September 21, 2023 before Judge James D Cain Jr. Court Reporter Deidre Juranka (aty,Hajek, Luther) (Entered: 09/28/2023) |

State of Louisiana et al v. Haaland et al (2:23-cv-01157-JDC-KK)

# TAB 2

Jump to Docket Table

# U.S. District Court
## Western District of Louisiana (Lake Charles)
## CIVIL DOCKET FOR CASE #: 2:23-cv-01167-JDC-KK
## Internal Use Only

Shell Offshore Inc v. U S Dept of Interior et al
Assigned to: Judge James D Cain, Jr
Referred to: Magistrate Judge Kathleen Kay
Lead case: 2:23-cv-01157-JDC-KK
Member case: (View Member Case)
 Related Case:  2:23-cv-01157-JDC-KK
 Case in other court:  5CCA, 23-30666
Cause: 28:1361 Petition for Writ of Mandamus

Date Filed: 08/28/2023
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: Federal Question

**Plaintiff**

**Shell Offshore Inc**

represented by **Kelly Brechtel Becker**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-581-7979
Fax: 504-556-4108
Email: kbbecker@liskow.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley K Ervin**
Covington & Burling (DC)
850 10th St N W
Washington, DC 20001
202-662-6000
Email: bervin@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cecilia Grace Vazquez**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-556-4125
Email: cvazquez@liskow.com
*ATTORNEY TO BE NOTICED*

**Mark W Mosier**
Covington & Burling (DC)
850 10th St N W
Washington, DC 20001
202-662-6000

Email: mmosier@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael James Mazzone**
Haynes & Boone (HOU)
1221 McKinney St Ste 4000
Houston, TX 77010
713-547-2115
Fax: 713-236-5662
Email: michael.mazzone@haynesboone.com
*ATTORNEY TO BE NOTICED*

**Russell Keith Jarrett**
Liskow & Lewis (NO)
701 Poydras St Ste 5000
New Orleans, LA 70139
504-556-4133
Fax: 504-556-4108
Email: rkjarrett@liskow.com
*ATTORNEY TO BE NOTICED*

**Samuel Ross Howe**
Covington & Burling (DC)
850 10th St N W
Washington, DC 20001
202-662-5242
Email: showe@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven J Rosenbaum**
Covington & Burling (DC)
850 10th St N W
Washington, DC 20001
202-662-6000
Fax: 202-778-5568
Email: srosenbaum@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**U S Dept of Interior**                          represented by   **Luther L Hajek**
U S Dept of Justice Env & Natural Resources
(CO)
999 18th S Terrace Ste 370
Denver, CO 80202
303-844-1376
Fax: 303-894-1350
Email: luke.hajek@usdoj.gov

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexis Romero**
U S Dept of Justice Env & Natural Resources
(M St)
150 M St N E
Washington, DC 20002
202-353-5885
Email: alexis.romero@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bureau of Ocean Energy Management
Regulation & Enforcement**

represented by **Luther L Hajek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexis Romero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Deb Haaland**
*in her official capacity as Secretary of the
Interior*

represented by **Luther L Hajek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexis Romero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Laura Daniel-Davis**
*in her official capacity as Principal Deputy
Assistant Secretary of the Interior for Land
and Minerals Management*

represented by **Luther L Hajek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexis Romero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Elizabeth Klein**
*in her official capacity as Director of the
Bureau of Ocean Energy Management*

represented by **Luther L Hajek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexis Romero**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**James Kendall**                                          represented by   **Luther L Hajek**
*in his official capacity as Director of the*                              (See above for address)
*Gulf of Mexico Regional Office of the*                                    *LEAD ATTORNEY*
*Bureau of Ocean Energy Management*                                        *ATTORNEY TO BE NOTICED*

                                                                           **Alexis Romero**
                                                                           (See above for address)
                                                                           *ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

**Sierra Club**                                           represented by   **Elizabeth Livingston de Calderon**
                                                                           Tulane Environmental Law Clinic
                                                                           6329 Freret St Ste 130
                                                                           New Orleans, LA 70118
                                                                           504-862-8819
                                                                           Fax: 504-862-8721
                                                                           Email: ecalderon@earthjustice.org
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Brettny E Hardy**
                                                                           Earthjustice (CA)
                                                                           50 California St Ste 500
                                                                           San Francisco, CA 94111
                                                                           415-217-2142
                                                                           Email: bhardy@earthjustice.org
                                                                           *PRO HAC VICE*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **George Torgun**
                                                                           Earthjustice (CA)
                                                                           50 California St Ste 500
                                                                           San Francisco, CA 94111
                                                                           415-217-2000
                                                                           Fax: 415-217-2040
                                                                           Email: george.torgun@doj.ca.gov
                                                                           *PRO HAC VICE*
                                                                           *ATTORNEY TO BE NOTICED*

                                                                           **Stephen D Mashuda**
                                                                           Earthjustice (WA)
                                                                           810 Third Ave Ste 610
                                                                           Seattle, WA 98104
                                                                           206-343-7340
                                                                           Fax: 206-343-1526
                                                                           Email: smashuda@earthjustice.org
                                                                           *PRO HAC VICE*
                                                                           *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Center for Biological Diversity**                    represented by    **Elizabeth Livingston de Calderon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brettny E Hardy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**George Torgun**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen D Mashuda**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Friends of the Earth**                    represented by    **Elizabeth Livingston de Calderon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brettny E Hardy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**George Torgun**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen D Mashuda**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Turtle Island Restoration Network**                    represented by    **Elizabeth Livingston de Calderon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brettny E Hardy**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**George Torgun**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen D Mashuda**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

Email to Active Attorneys' Primary Addresses
Email to All Attorneys' Primary Addresses
Email to Casewide NEF Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 08/28/2023 | 1 (p.7659) | COMPLAINT *For Declaratory and Injunctive Relief* against U S Dept of Interior, Bureau of Ocean Energy Management Regulation & Enforcement, Deb Haaland, Laura Daniel-Davis, Elizabeth Klein and James Kendall. (Filing fee $402, receipt number ALAWDC-5672110) filed by Shell Offshore Inc. (Attachments: # 1 (p.7659) Civil cover sheet, # 2 (p.7688) Civil cover sheet Attachment)(Attorney Kelly Brechtel Becker added to party Shell Offshore Inc(pty:pla))(aty,Becker, Kelly) Modified docket text on 8/29/2023 (Bunting, M). (Entered: 08/28/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/28/2023 | 2 (p.7688) | NOTICE of Related Cases by Shell Offshore Inc (aty,Becker, Kelly) (Entered: 08/28/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/28/2023 | 3 (p.7691) | CORPORATE DISCLOSURE STATEMENT by Shell Offshore Inc identifying Corporate Parent Shell U S E & P Investments L L C, Corporate Parent Shell U S A Inc, Corporate Parent SOI Finance Inc for Shell Offshore Inc. (aty,Becker, Kelly) (Entered: 08/28/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/28/2023 | 4 (p.7693) | MOTION for Preliminary Injunction by Shell Offshore Inc. Motion Ripe Deadline set for 8/28/2023. (Attachments: # 1 (p.7659) Memorandum / Brief, # 2 (p.7688) Affidavit of Christopher J. Gonsalves, # 3 (p.7691) Affidavit of Kelly B. Becker, # 4 (p.7693) Exhibit 1, # 5 Exhibit 2, # 6 (p.7823) Exhibit 3, # 7 (p.7839) Exhibit 4, # 8 (p.7842) Exhibit 5, # 9 (p.7844) Exhibit 6, # 10 (p.7846) Exhibit 7, # 11 (p.7851) Exhibit 8, # 12 (p.7856) Exhibit 9, # 13 (p.7861) Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13, # 17 (p.7864) Exhibit 14, # 18 (p.7865) Exhibit 15)(aty,Becker, Kelly) (Entered: 08/28/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/28/2023 | | CASE Assigned to Judge James D Cain, Jr and Magistrate Judge Kathleen Kay. (crt,Bunting, M) (Entered: 08/29/2023) |
| 08/29/2023 | 5 | ELECTRONIC ORDER, Set Deadlines/Hearing as to 4 (p.7693) Motion for Preliminary Injunction: Considering the expedited relief granted in No. 2:23-cv-1157, Louisiana v. Haaland, and the related nature of this suit, the court hereby sets abbreviated deadlines as to the plaintiff's motion. Accordingly, IT IS ORDERED that plaintiff serve the defendants within two weeks of this order. Defendants' answer and response to the 4 (p.7693) Motion for Preliminary Injunction will be due within two weeks of service. Plaintiff will then have one week |

| | | |
|---|---|---|
| | | to file a reply. Signed by Judge James D Cain, Jr on 8/29/2023. (crt,Higgins, M) (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Stewart , T) |
| 08/29/2023 | 6 (p.7823) | SUMMONS ISSUED as to U S Attorney, U S Attorney General, U S Dept of Interior, Bureau of Ocean Energy Management Regulation & Enforcement, Deb Haaland, Laura Daniel-Davis, Elizabeth Klein, James Kendall. (crt,Bunting, M) (Entered: 08/29/2023) |
| 08/29/2023 | 7 (p.7839) | MOTION for Cecilia G. Vazquez to Enroll as Counsel by Shell Offshore Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 8/29/2023. (Attachments: # 1 (p.7659) Proposed order)(aty,Becker, Kelly) (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/29/2023 | 8 (p.7842) | NOTICE of Appearance by Luther L Hajek on behalf of Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein (Attorney Luther L Hajek added to party Bureau of Ocean Energy Management Regulation & Enforcement(pty:dft), Attorney Luther L Hajek added to party Laura Daniel-Davis(pty:dft), Attorney Luther L Hajek added to party Deb Haaland(pty:dft), Attorney Luther L Hajek added to party U S Dept of Interior(pty:dft), Attorney Luther L Hajek added to party James Kendall(pty:dft), Attorney Luther L Hajek added to party Elizabeth Klein(pty:dft)) (aty,Hajek, Luther) (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/29/2023 | 9 (p.7844) | NOTICE of Appearance by Alexis Romero on behalf of Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein (Attorney Alexis Romero added to party Bureau of Ocean Energy Management Regulation & Enforcement(pty:dft), Attorney Alexis Romero added to party Laura Daniel-Davis(pty:dft), Attorney Alexis Romero added to party Deb Haaland(pty:dft), Attorney Alexis Romero added to party U S Dept of Interior(pty:dft), Attorney Alexis Romero added to party James Kendall(pty:dft), Attorney Alexis Romero added to party Elizabeth Klein(pty:dft)) (aty,Romero, Alexis) (Entered: 08/29/2023), (QC'ed on 08/29/2023, by Bunting , M) |
| 08/30/2023 | 10 (p.7846) | MOTION for Bradley K Ervin to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5674825) by Shell Offshore Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 8/30/2023. (Attachments: # 1 (p.7659) Proposed order, # 2 (p.7688) Certificate of good standing(aty,Jarrett, Russell) (Entered: 08/30/2023), (QC'ed on 08/30/2023, by Bunting , M) |
| 08/30/2023 | 11 (p.7851) | MOTION for Samuel Ross Howe to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5674897) by Shell Offshore Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 8/30/2023. (Attachments: # 1 (p.7659) Proposed order, # 2 (p.7688) Certificate of good standing)(aty,Jarrett, Russell) (Entered: 08/30/2023), (QC'ed on 08/30/2023, by Bunting , M) |
| 08/30/2023 | 12 (p.7856) | MOTION for Steven J Rosenbaum to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5674907) by Shell Offshore Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 8/30/2023. (Attachments: # 1 (p.7659) Proposed order, # 2 (p.7688) Certificate of good standing)(aty,Jarrett, Russell) (Entered: 08/30/2023), (QC'ed on 08/30/2023, by Bunting , M) |
| 08/30/2023 | 13 (p.7861) | CERTIFICATE OF SERVICE by Shell Offshore Inc re 4 (p.7693) MOTION for Preliminary Injunction (aty,Becker, Kelly) (Entered: 08/30/2023), (QC'ed on 08/30/2023, by Bunting , M) |
| 09/01/2023 | 14 | |

| | | |
|---|---|---|
| | | ELECTRONIC ORDER granting 7 (p.7839) Motion to Enroll as Counsel. Added as counsel Cecilia Grace Vazquez for Shell Offshore Inc. Signed by Magistrate Judge Kathleen Kay on 9/1/2023. (jud,Kay, Kathleen) (Entered: 09/01/2023), (QC'ed on 09/01/2023, by Stewart , T) |
| 09/05/2023 | 15 | ELECTRONIC ORDER re 4 (p.7693) MOTION for Preliminary Injunction filed by Shell Offshore Inc: A hearing on the motion is set for 10/12/2023 at 01:30 PM in Lake Charles, Courtroom 4 before Judge Cain. Signed by Judge James D Cain, Jr on 9/5/2023. (crt,Higgins, M) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Stewart , T) |
| 09/05/2023 | 16 | ELECTRONIC ORDER re 4 (p.7693) MOTION for Preliminary Injunction filed by Shell Offshore Inc: The hearing on this matter is hereby reset for 9/21/2023 at 01:30 PM in Lake Charles, Courtroom 4 before Judge Cain in order to allow the court sufficient time to rule before the statutory lease sale deadline. Signed by Judge James D Cain, Jr on 9/5/2023. (crt,Higgins, M) (Entered: 09/05/2023), (QC'ed on 09/05/2023, by Stewart , T) |
| 09/07/2023 | 17 (p.7864) | ORDER granting 10 (p.7846) Motion to Appear Pro Hac Vice for appearance of Bradley Ervin for Shell Offshore Inc. Signed by Magistrate Judge Kathleen Kay on 9/6/2023. (crt,Enkey, R) (Entered: 09/07/2023) |
| 09/07/2023 | 18 (p.7865) | ORDER granting 11 (p.7851) Motion to Appear Pro Hac Vice for appearance of Samuel Howe for Shell Offshore Inc. Signed by Magistrate Judge Kathleen Kay on 9/6/2023. (crt,Enkey, R) (Entered: 09/07/2023) |
| 09/07/2023 | 19 (p.7866) | ORDER granting 12 (p.7856) Motion to Appear Pro Hac Vice for appearance of Steven J Rosenbaum for Shell Offshore Inc. Signed by Magistrate Judge Kathleen Kay on 9/6/2023. (crt,Enkey, R) (Entered: 09/07/2023) |
| 09/08/2023 | 20 (p.7867) | MOTION to Intervene with opposition by Sierra Club, Center for Biological Diversity, Friends of the Earth, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/8/2023. (Attachments: # 1 (p.7659) Memorandum / Brief, # 2 (p.7688) Proposed pleading Answer to Complaint, # 3 (p.7691) Declaration of Brettny Hardy in Support of Motion to Intervene, # 4 (p.7693) Exhibit A, # 5 Exhibit B, # 6 (p.7823) Exhibit C, # 7 (p.7839) Exhibit D, # 8 (p.7842) Exhibit E, # 9 (p.7844) Exhibit F, # 10 (p.7846) Exhibit G, # 11 (p.7851) Exhibit H, # 12 (p.7856) Exhibit I, # 13 (p.7861) Exhibit J, # 14 Declaration of Athan Manuel, # 15 Declaration of Hallie Templeton, # 16 Declaration of Joanie Steinhaus, # 17 (p.7864) Declaration of Kristen Monsell, # 18 (p.7865) Text of proposed order)(Attorney Elizabeth Livingston de Calderon added to party Sierra Club(pty:mov), Center for Biological Diversity(pty:mov), Friends of the Earth(pty:mov), Turtle Island Restoration Network(pty:mov))(aty,Livingston de Calderon, Elizabeth) Modified docket text on 9/11/2023 (Miletello, A). (Entered: 09/08/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/08/2023 | 21 (p.8657) | CORPORATE DISCLOSURE STATEMENT by Sierra Club. (aty,Livingston de Calderon, Elizabeth) (Entered: 09/08/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/08/2023 | 22 (p.8659) | CORPORATE DISCLOSURE STATEMENT by Center for Biological Diversity. (aty,Livingston de Calderon, Elizabeth) (Entered: 09/08/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/08/2023 | 23 (p.8661) | CORPORATE DISCLOSURE STATEMENT by Friends of the Earth. (aty,Livingston de Calderon, Elizabeth) (Entered: 09/08/2023), (QC'ed on 09/11/2023, by Miletello , A) |

| | | |
|---|---|---|
| 09/08/2023 | 24 (p.8663) | CORPORATE DISCLOSURE STATEMENT by Turtle Island Restoration Network. (aty,Livingston de Calderon, Elizabeth) (Entered: 09/08/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/09/2023 | 25 (p.8665) | MOTION to Expedite consideration of 20 (p.7867) MOTION to Intervene with opposition by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/9/2023. (Attachments: # 1 (p.7659) Memorandum / Brief in Support of Motion to Expedite, # 2 (p.7688) Text of proposed order(aty,Livingston de Calderon, Elizabeth) (Entered: 09/09/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/09/2023 | 26 (p.8672) | MOTION for Brettny Hardy to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5685888) by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/9/2023. (Attachments: # 1 (p.7659) Certificate of good standing, # 2 (p.7688) Text of proposed order)(aty,Livingston de Calderon, Elizabeth) (Entered: 09/09/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/09/2023 | 27 (p.8676) | MOTION for George Torgun to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5685889) by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/9/2023. (Attachments: # 1 (p.7659) Certificate of good standing, # 2 (p.7688) Text of proposed order)(aty,Livingston de Calderon, Elizabeth) (Entered: 09/09/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/09/2023 | 28 (p.8680) | MOTION for Stephen D. Mashuda to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5685890) by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/9/2023. (Attachments: # 1 (p.7659) Certificate of good standing, # 2 (p.7688) Text of proposed order)(aty,Livingston de Calderon, Elizabeth) (Entered: 09/09/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/09/2023 | | Motions Transferred regarding 20 (p.7867) MOTION to Intervene, 25 (p.8665) MOTION to Expedite consideration of 20 (p.7867) MOTION to Intervene. Motions referred to Judge James D Cain, Jr. (crt,Miletello, A) (Entered: 09/11/2023) |
| 09/11/2023 | 29 | ELECTRONIC ORDER granting 25 (p.8665) Motion to Expedite. The court will adopt the proposed expedited briefing schedule. Signed by Judge James D Cain, Jr on 9/11/2023. (crt,Higgins, M) (Entered: 09/11/2023), (QC'ed on 09/11/2023, by Stewart , T) |
| 09/11/2023 | 30 | ELECTRONIC ORDER re 20 (p.7867) MOTION to Intervene filed by Turtle Island Restoration Network, Center for Biological Diversity, Friends of the Earth, Sierra Club: Responses due by 9/15/2023, Replies due by 9/19/2023. Signed by Judge James D Cain, Jr on 9/11/2023. (crt,Higgins, M) (Entered: 09/11/2023), (QC'ed on 09/11/2023, by Stewart , T) |
| 09/11/2023 | 31 (p.8684) | MOTION for Mark W. Mosier to Appear Pro Hac Vice (Admission fee: $105, receipt number ALAWDC-5686466) by Shell Offshore Inc. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/11/2023. (Attachments: # 1 (p.7659) Certificate of good standing for Mark W. Mosier, # 2 (p.7688) Proposed order)(aty, Jarrett, Russell) (Entered: 09/11/2023), (QC'ed on 09/11/2023, by Miletello , A) |
| 09/12/2023 | | |

| | 32 (p.8689) | Unopposed MOTION for Leave to File Excess Pages by All Defendants. Motions referred to Kathleen Kay. Motion Ripe Deadline set for 9/12/2023. (Attachments: # 1 (p.7659) Proposed order)(aty,Hajek, Luther) Modified to reflect deficient status on 9/13/2023 (Bunting, M). Modified to remove deficient status on 9/13/2023 (Bunting, M). (Entered: 09/12/2023), (QC'ed on 09/13/2023, by Bunting , M) |
|---|---|---|
| 09/13/2023 | 33 (p.8694) | NOTICE of Deficiency to Luther L Hajek on behalf of Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein regarding 32 (p.8689) Unopposed MOTION for Leave to File Excess Pages . Reason: A motion for leave to file must be accompanied by the proposed pleading. The court will not act on such a motion without reviewing the document sought to be filed. Please refer to LR 7.6 for more information. The motion cannot be referred to chambers until this deficiency is corrected. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | | NOTICE of Corrective Action to Luther L Hajek on behalf of Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein regarding 33 (p.8694) Notice of Deficiency,, 32 (p.8689) Unopposed MOTION for Leave to File Excess Pages . Action taken: Deficiency removed from docket entry. Deadline terminated. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | | (Court only) ***Staff notes (non-public entry - for Court Staff only): Per instruction from chambers, 33 (p.8694) Deficiency terminated. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | 34 | ELECTRONIC ORDER granting 32 (p.8689) Motion for Leave to File Excess Pages. Defendants are hereby granted permission to file one brief of up to 45 pages in total (excluding the table ofcontents and table of authorities, see W.D. LA. LR 7.8) responding to the preliminary injunction motions filed in this matter and related case Louisiana v. Haaland, No. 2:23-cv-1157. Signed by Judge James D Cain, Jr on 9/13/2023. (crt,Higgins, M) (Entered: 09/13/2023), (QC'ed on 09/13/2023, by Stewart , T) |
| 09/13/2023 | 35 (p.8695) | ORDER consolidating Lead Case 2:23-cv-1157 with case 2:23-cv-1167, (This Order is filed as document 51 in lead case 2:23-cv-157.) Signed by Judge James D Cain, Jr on 9/12/2023. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | | Cases associated. Create association to 2:23-cv-01157-JDC-KK. (crt,Bunting, M) (Entered: 09/13/2023) |
| 09/13/2023 | 36 | FILED IN ERROR - COUNSEL REQUESTED TO RE-FILE IN LEAD CASE - MEMORANDUM in Opposition - MOTION for Preliminary Injunction filed by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. (Attachments: # 1 (p.7659) Declaration of George Torgun in Support of Opposition, # 2 (p.7688) Exhibit 1 to Torgun Decl., # 3 (p.7691) Exhibit 2 to Torgun Decl., # 4 (p.7693) Declaration of Expert Aaron Rice, Ph.D, # 5 Attachment 1 to Rice Decl.)(aty,Livingston de Calderon, Elizabeth) Modified to reflect filed in wrong case on 9/14/2023 (Bunting, M). (Entered: 09/13/2023), (QC'ed on 09/14/2023, by Bunting , M) |
| 09/13/2023 | 37 | FILED IN ERROR - COUNSEL REQUESTED TO RE-FILE IN LEAD CASE - ANSWER to Complaint by Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein.(aty,Hajek, Luther) Modified to reflect filed in wrong case |

| | | |
|---|---|---|
| | | on 9/14/2023 (Bunting, M). (Entered: 09/13/2023), (QC'ed on 09/14/2023, by Bunting , M) |
| 09/14/2023 | | NOTICE of Corrective Action to Elizabeth Livingston de Calderon on behalf of Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network regarding 36 Memorandum in Opposition to Motion. Action taken: Edited text of entry to reflect Filed in Error - Counsel requested to re-file in LEAD case. Counsel reminded that from the point of consolidation forward, electronic filings should be submitted in the Lead case only, unless ordered otherwise. (crt,Bunting, M) (Entered: 09/14/2023) |
| 09/14/2023 | | NOTICE of Corrective Action to Luther L Hajek on behalf of Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein regarding 37 Answer to Complaint,. Action taken: Edited text of entry to reflect Filed in Error - Counsel requested to re-file in LEAD case. Counsel reminded that from the point of consolidation forward, electronic filings should be submitted in the Lead case only, unless ordered otherwise. (crt,Bunting, M) (Entered: 09/14/2023) |
| 09/14/2023 | 38 (p.8697) | MEMORANDUM ORDER granting 20 (p.7867) Motion to Intervene. Intervenor-defendants participation in the Motion for Preliminary Injunction [doc. 14] is limited to a single brief of up to 25 pages, excluding table of contents and authorities, which must be filed in the court on or before September 19, 2023. Time at oral argument is reserved only for the original parties to the suit. Signed by Judge James D Cain, Jr on 9/14/2023. (crt,Jones, P) (Main Document 38 replaced on 9/14/2023) (Jones, P). Modified on 9/14/2023 to edit text (Jones, P). (Entered: 09/14/2023) |
| 09/14/2023 | | ANSWER in Intervention to 1 (p.7659) Complaint, by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. ADMINISTRATIVE ENTRY - NO PDF ATTACHED (See case 2:22-cv-1157, document #60)(crt,Bunting, M) (Entered: 09/14/2023) |
| 09/20/2023 | 39 (p.8706) | ORDER granting 26 (p.8672) Motion to Appear Pro Hac Vice for appearance of Brettny Hardy for Center for Biological Diversity,Brettny Hardy for Friends of the Earth,Brettny Hardy for Sierra Club,Brettny Hardy for Turtle Island Restoration Network. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 40 (p.8707) | ORDER granting 27 (p.8676) Motion to Appear Pro Hac Vice for appearance of George Torgun for Center for Biological Diversity,George Torgun for Friends of the Earth,George Torgun for Sierra Club,George Torgun for Turtle Island Restoration Network. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 41 (p.8708) | ORDER granting 28 (p.8680) Motion to Appear Pro Hac Vice for appearance of Stephen D Mashuda for Center for Biological Diversity,Stephen D Mashuda for Friends of the Earth,Stephen D Mashuda for Sierra Club,Stephen D Mashuda for Turtle Island Restoration Network. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/20/2023 | 42 (p.8709) | ORDER granting 31 (p.8684) Motion to Appear Pro Hac Vice for appearance of Mark W Mosier for Shell Offshore Inc. Signed by Judge James D Cain, Jr on 9/20/2023. (crt,Bunting, M) (Entered: 09/20/2023) |
| 09/21/2023 | | |

| | 43 (p.8710) | MINUTES for proceedings held before Judge James D Cain, Jr: MOTION HEARING held on 9/21/2023 4 (p.7693) MOTION for Preliminary Injunction by Shell Offshore Inc. in this matter and 14 MOTION for Preliminary Injunction filed by American Petroleum Institute, State of Louisiana, Chevron U S A Inc. filed in docket # 2:23-cv-1157. The Motions were taken under advisement, with a written ruling to follow. (Court Reporter: DD Juranka) (crt,Stewart, T) (Entered: 09/21/2023) |
|---|---|---|
| 09/21/2023 | 44 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings for Preliminary Injunction Hearing held on 9/21/2023 before Judge James D Cain Jr. Court Reporter/Transcriber DD Juranka, Telephone number (337)214-6669. Total pages: 58. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter. Redaction Request due 10/16/2023. Redacted Transcript Deadline set for 10/26/2023. Release of Transcript Restriction set for 12/26/2023. (crt,Juranka, D) (Entered: 09/21/2023) |
| 09/21/2023 | 45 (p.8711) | MEMORANDUM ORDER granting 4 (p.7693) Motion for Preliminary Injunction. Accordingly, the government defendants are enjoined from implementing the acreage withdrawal and Stipulation 4(B)(4) as described in the Final Notice of Sale and Record of Decision for Lease Sale 261. Government defendants are ordered to proceed with Lease Sale 261, absent the challenged terms, by September 30, 2023. Signed by Judge James D Cain, Jr on 9/21/2023. (crt,Stewart, T) (Entered: 09/21/2023) |
| 09/22/2023 | 46 (p.8741) | NOTICE OF APPEAL as to 45 (p.8711) Order on Motion for Preliminary Injunction, by Center for Biological Diversity, Friends of the Earth, Sierra Club, Turtle Island Restoration Network. (Filing fee $505, receipt number ALAWDC-5700879) (Attachments: # 1 (p.7659) Exhibit A - Memorandum Order)(aty,Mashuda, Stephen) (Entered: 09/22/2023), (QC'ed on 09/22/2023, by WalkerSld , B) |
| 09/22/2023 | 47 (p.8773) | NOTICE OF APPEAL as to 45 (p.8711) Order on Motion for Preliminary Injunction, by Bureau of Ocean Energy Management Regulation & Enforcement, Laura Daniel-Davis, Deb Haaland, U S Dept of Interior, James Kendall, Elizabeth Klein. (Filed on behalf of USA - Filing Fee not required) (aty,Hajek, Luther) (Entered: 09/22/2023), (QC'ed on 09/22/2023, by WalkerSld , B) |
| 09/22/2023 | | NOTICE of Appeal Transcript Order Requirement regarding 46 (p.8741) Notice of Appeal and 47 (p.8773) Notice of Appeal. Pursuant to FRAP 10(b), the Appellant must file the transcript order form regardless of whether transcripts are necessary. Access the 5th Circuit site by clicking here. Hover over the Forms Fees & Guides tab, Forms, Court Reporter Forms, Transcript Order Form. In following the instructions on the form, please note manual notification to the court reporter and the 5th Circuit Court of Appeals is STILL REQUIRED. (crt,WalkerSld, B) (Entered: 09/22/2023) |
| 09/22/2023 | | USCA Case Number 23-30666 for 46 (p.8741) Notice of Appeal, filed by Turtle Island Restoration Network, Center for Biological Diversity, Friends of the Earth, Sierra Club and 47 (p.8773) Notice of Appeal, filed by Bureau of Ocean Energy Management Regulation & Enforcement, Deb Haaland, U S Dept of Interior, James Kendall, Laura Daniel-Davis, Elizabeth Klein. (crt,WalkerSld, B) (Entered: 09/22/2023) |

| 09/22/2023 | | Set Deadline for Clerk re 46 (p.8741) Notice of Appeal and 47 (p.8773) Notice of Appeal: Certify Appeal Record (23-30666) by Clerk to COA 10/10/2023. (crt,WalkerSld, B) (Entered: 09/22/2023) |
|---|---|---|
| 09/25/2023 | 48 (p.8775) | ORDER of USCA as to 47 (p.8773) Notice of Appeal, filed by Bureau of Ocean Energy Management Regulation & Enforcement, Deb Haaland, U S Dept of Interior, James Kendall, Laura Daniel-Davis, Elizabeth Klein, 46 (p.8741) Notice of Appeal, filed by Turtle Island Restoration Network, Center for Biological Diversity, Friends of the Earth, Sierra Club granting in part Motion for stay pending appeal filed by Appellants Mr. James Kendall, DOI, Bureau of Ocean Energy Management, Regulation and Enforcement, Ms. Deb Haaland, Ms. Laura Daniel-Davis and Ms. Elizabeth Klein; denying Motion to stay order filed by Appellants Mr. James Kendall, DOI, Bureau of Ocean Energy Management, Regulation and Enforcement, Ms. Deb Haaland, Ms. Laura Daniel-Davis and Ms. Elizabeth Klein; denying Motion for stay pending appeal filed by Appellants Sierra Club, Center for Biological Diversity, Friends of the Earth and Turtle Island Restoration Network; granting Motion to file motion in excess of the word count limitations filed by Appellants Mr. James Kendall, DOI, Bureau of Ocean Energy Management, Regulation and Enforcement, Ms. Deb Haaland, Ms. Laura Daniel-Davis and Ms. Elizabeth Klein. (crt,WalkerSld, B) (Entered: 09/26/2023) |
| 09/25/2023 | 49 (p.8779) | MEMORANDUM ORDER of USCA as to 47 (p.8773) Notice of Appeal, filed by Bureau of Ocean Energy Management Regulation & Enforcement, Deb Haaland, U S Dept of Interior, James Kendall, Laura Daniel-Davis, Elizabeth Klein, 46 (p.8741) Notice of Appeal, filed by Turtle Island Restoration Network, Center for Biological Diversity, Friends of the Earth, Sierra Club that Appellees unopposed motion for leave to file response/opposition in excess of word count but not to exceed 7,500 words is GRANTED. (crt,WalkerSld, B) (Entered: 09/26/2023) |
| 09/28/2023 | 50 | SUMMONS Returned Executed by Shell Offshore Inc Bureau of Ocean Energy Management Regulation & Enforcement served on 9/13/2023, answer due 11/13/2023; Laura Daniel-Davis served on 9/13/2023, answer due 11/13/2023; Deb Haaland served on 9/13/2023, answer due 11/13/2023; U S Dept of Interior served on 9/13/2023, answer due 11/13/2023; James Kendall served on 9/13/2023, answer due 11/13/2023; Elizabeth Klein served on 9/13/2023, answer due 11/13/2023; U S Attorney served on 9/13/23, answer due 11/23/23; U S Attorney General served 9/13/23, answer due 11/3/23. ADMINISTRATAIVE ENTRY - NO PDF ATTACHED, original of documents filed in lead case 2:23-cv-1157, documents #87,88,89,90,91,92,93 & 95. (crt,Bunting, M) (Entered: 09/28/2023) |

Shell Offshore Inc v. U S Dept of Interior et al (2:23-cv-01167-JDC-KK)

# TAB 3

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

STATE OF LOUISIANA, et al.,

*Plaintiffs,*

*v.*

DEB HAALAND, et al.,

*Defendants,*

and

SIERRA CLUB, et al.,

*Intervenor-Defendants.*

No.: 2:23-cv-01157-JDC-KK (LEAD)
No.: 2:23-cv-01167-JDC-KK (MEMBER)

Judge: James D. Cain, Jr.

Mag. Judge: Kathleen Kay

SHELL OFFSHORE INC.,

*Plaintiff,*

*v.*

U.S. DEPARTMENT OF THE INTERIOR, et al.,

*Defendants,*

and

SIERRA CLUB, et al.,

*Intervenor-Defendants.*

## NOTICE OF APPEAL BY INTERVENOR-DEFENDANTS

Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(B), Intervenor-Defendants Sierra Club, Center for Biological Diversity, Friends of the Earth, and Turtle Island Restoration Network give notice that they appeal to the United States Court of Appeals for the Fifth Circuit the Court's September 21, 2023 Memorandum Order in these consolidated cases  [entered as ECF No. 82 in the lead case 2:23-cv-01157 and ECF No. 45 in the member case no. 2:23-cv-01167] granting Plaintiffs' Motions for Preliminary Injunction. The Order is attached as Exhibit A.

Respectfully submitted this 22nd day of September, 2023.

_s/ Stephen D. Mashuda_
Stephen D. Mashuda (*pro hac vice* Bar No. 917783)
Earthjustice
810 Third Ave., Suite 610
Seattle, WA 98104
206-343-7340  Telephone
415-217-2040  Fax
smashuda@earthjustice.org

_s/ Elizabeth Livington de Calderon_
Elizabeth Livingston de Calderon (La. Bar No. 31443)
Earthjustice
900 Camp Street, Suite 303
New Orleans, LA 70130
504-910-1712  Telephone
415-217-2040  Fax
ecalderon@earthjustice.org

George Torgun (*pro hac vice* Bar No. 917782)
Brettny Hardy (*pro hac vice* Bar No. 917781)
Earthjustice
50 California St., Suite 500
San Francisco, CA 94111
415-217-2000  Telephone
415-217-2040  Fax
gtorgun@earthjustice.org
bhardy@earthjustice.org

*Counsel for Intervenor-Defendants Sierra Club, Center for Biological Diversity, Friends of the Earth, and Turtle Island Restoration Network*

# TAB 4

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

STATE OF LOUISIANA ET AL      CASE NO. 2:23-CV-01157

VERSUS      JUDGE JAMES D. CAIN, JR.

DEB HAALAND ET AL      MAGISTRATE JUDGE KAY

## <u>MEMORANDUM ORDER</u>

Before the court are Motions for Preliminary Injunction[1] filed, respectively, by plaintiffs the State of Louisiana, American Petroleum Institute, and Chevron USA Inc., and by plaintiff Shell Offshore Inc. Plaintiffs seek to halt the addition of a term to Lease Sale 261 by the Bureau of Ocean Energy Management and the withdrawal of six million acres from that sale. The motion is opposed by both the government defendants originally named in the suits as well as intervenor-defendants Center for Biological Diversity, Friends of the Earth, Sierra Club, and Turtle Island Restoration Network. Docs. 55, 70. The matter came before the court for hearing on September 21, 2023, and the undersigned now issues this decision.

## I.
### INTRODUCTION

This suit arises from the Bureau of Ocean Energy Management ("BOEM")'s plans regarding "Lease Sale 261," an oil and gas lease on the Outer Continental Shelf in the Gulf

---

[1] The first motion was filed in lead case *Louisiana v. Haaland*, No. 23-cv-1157, at doc. 14. The second was filed in member case *Shell Offshore Inc. v. U.S. Department of the Interior*, No. 23-cv-1167 (W.D. La.), at doc. 4.

of Mexico. Lease Sale 261 is proposed for sale on September 27, 2023, in accordance with
deadlines set under the Inflation Reduction Act ("IRA"). On August 23, 2023, BOEM
issued a Final Notice of Sale that withdrew six million acres from the lease and inserted a
new lease stipulation restricting vessel activity in the lease area. The agency justified both
measures as necessary for the protection of Rice's whale, a species of baleen whale native
to the northeastern Gulf of Mexico that is protected under the Endangered Species Act.

Plaintiffs allege that the last-minute insertion of these provisions violates (1) the
IRA, which directed BOEM to conduct Lease Sale 261 in accordance with the agency's
previously adopted Five-Year Plan for oil and gas leasing, (2) the procedural requirements
of the Outer Continental Shelf Lands Act, and (3) the Administrative Procedure Act
("APA"), insofar as they represent an arbitrary and capricious change in position by
BOEM. Accordingly, plaintiffs have filed suit in this court seeking declaratory and
injunctive relief. They also seek a preliminary injunction, asserting that delaying the sale
or allowing it to proceed with the challenged provisions will result in irreparable harm.
Defendants and intervenor-defendants[2] oppose the motion, arguing that (1) the challenged
measures are well-supported and were properly implemented, (2) plaintiffs have not met
the high bar for showing that preliminary injunctive relief is warranted, and (3) the court
lacks the authority to grant the requested relief. Docs. 55, 70. An amicus brief has also been
filed in support of plaintiffs by ten members of the United States Congress. Doc. 66.

---

[2] The court permitted the intervention of four environmental nonprofit organizations (Sierra Club, Center for
Biological Diversity, Friends of the Earth, and Turtle Island Restoration Network) as defendants, based on their
advocacy on behalf of Rice's whale in a suit in the District of Maryland, described infra, and the relation between that
suit and the measures challenged here. *See* doc. 58.

# II.
## BACKGROUND

### A. Statutory Background

### 1. Outer Continental Shelf Lands Act

The Outer Continental Shelf Lands Act of 1953 ("OCSLA") provides the framework through which the Department of the Interior leases areas of the Outer Continental Shelf for oil and gas exploration and development. *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 472 (D.C. Cir. 2009). This is accomplished through a four-stage process, "proceeding from broad-based planning to an increasingly narrower focus as actual development grows more imminent." *California ex rel. Brown v. Watt*, 668 F.2d 1290, 1297 (D.C. Cir. 1981). The steps are: (1) formulation of a five-year leasing plan, (2) lease sales, (3) exploration by the lessees, and (4) development and production. *Secretary of the Interior v. California*, 464 U.S. 312, 337 (1984). The Secretary's delegated authority in this area is divided between BOEM and the Bureau of Safety and Environmental Enforcement ("BSEE"), with BOEM overseeing lease sales and BSEE bearing primary responsibility for drilling operation safety and environmental protection. *See* 76 Fed. Reg. 64,432 (Oct. 18, 2011).

At the first stage, formulation of the leasing plan, BOEM coordinates with other agencies to evaluate the impacts of the program and to balance the potential for discovery of oil and gas with the potential for environmental damage and adverse impacts to the coast. 43 U.S.C. §§ 1344(a)(1)–(3), (b)(3); 42 U.S.C. § 4332(C). OCSLA also requires that the Secretary consider the impact on affected states and communicate with the governors of

those states regarding their concerns. 43 U.S.C. §§ 1344(a)(2)(F), 1345. This consultation results in the development of a "schedule of proposed lease sales . . . which [the Secretary] determines will best meet national energy needs" for the applicable period, consistent with the balancing of environmental and social factors with economic and energy needs. 43 U.S.C. § 1344(a).

At the second stage Interior solicits bids and issues leases. 43 U.S.C. § 1337. To prepare for an individual lease sale, BOEM issues a "Call for Information and Nominations" on an area proposed in the Five-Year Plan through publication in the Federal Register. 30 C.F.R. § 556.301. To this end it requests comments from industry and the public on the sale area's potential for drilling as well as its "socioeconomic, biological, and environmental information." *Id.* BOEM considers these factors in determining the scope and terms of the lease, which are published in a proposed notice of sale ("PNOS"). *Id.* at §§ 556.302(b), 556.304(a). Upon approval by the Secretary, BOEM also sends the PNOS to the governors of affected states and publishes notice of its availability in the Federal Register. *Id.* at § 556.304(c). Governors of affected states may submit comments and recommendations to BOEM on the size, timing, and location of the proposed sale. *Id.* at § 556.305(a). The Secretary will accept these recommendations if it determines that they "provide a reasonable balance between the national interest and the well-being of the citizens of the State[.]" *Id.* at § 556.307(b). Finally, BOEM considers comments received in response to the proposed notice before publishing a final notice of sale ("FNOS"). *Id.* at §§ 556.307(a); 556.308(a). The sale is then conducted by a sealed-bid auction held at least 30 days after publication of the FNOS. *Id.* at § 556.308(a)–(b).

23-30666.7501

"A lessee does not, however, acquire an immediate or absolute right" to exploration and production in the lease area upon securing the lease; "those activities require separate, subsequent federal authorization." *Interior*, 464 U.S. at 317. At the third stage, Interior reviews and determines whether to approve exploration plans. *Ctr. for Biological Diversity*, 563 F.3d at 473. The Secretary will reject a plan if he determines that it may result in, *inter alia*, serious harm to the environment and "cannot be modified to avoid such condition." 43 U.S.C. § 1340(c)(1) (citing 43 U.S.C. § 1334(a)(2)(A)(i)). Finally, at the fourth stage, more detailed plans are required and reviewed in relation to the construction of platforms, installation of processing equipment, and the laying of pipelines. *See* 43 U.S.C. § 1351. Here, again, the plan and consequently the leasing program may be terminated if Interior finds a risk of serious harm or damage "to the marine, coastal or human environments." *Ctr. for Biological Diversity*, 563 F.3d at 473 (quoting 43 U.S.C. § 1351(h)(1)(D)(i)).

## 2. Endangered Species Act

The Department must also comply with federal environmental laws in its oversight of offshore leasing. Section 7(a)(2) of the Endangered Species Act ("ESA") provides:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary [of the Interior], insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section. In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.

23-30666.7502

16 U.S.C. § 1536(a)(2). If the proposed action may affect a listed species, the agency must formally consult with either the National Marine Fisheries Service ("NMFS") or the Fish and Wildlife Service ("FWS"), depending on whether the species is marine or terrestrial. *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F.Supp.3d 147, 151 (D.D.C. 2014); *see* 50 C.F.R. §§ 402.01(b), 402.14(a).

NMFS, as applies here, then prepares a biological opinion using "the best scientific and commercial data available" to evaluate the proposed action's impact on the species. 16 U.S.C. § 1536(a)–(b); 50 C.F.R. § 402.12. Here it considers whether the proposed action is likely to violate the ESA by jeopardizing the continued existence of a listed species or resulting in the destruction or adverse modification of a critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(h)(1)(iv). If NMFS concludes that such a violation is likely and issues a "jeopardy" opinion, it must provide "reasonable and prudent alternatives" ("RPAs"). 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(1)(iv), (h)(2). RPAs are defined under the regulations as:

> alternative actions identified during formal consultation [1] that can be implemented in a manner consistent with the intended purpose of the action, [2] that can be implemented consistent with the scope of the Federal agency's legal authority and jurisdiction, [3] that is economically and technologically feasible, and [4] that the Director believes would avoid the likelihood of jeopardizing the continued existence of listed species or resulting in the destruction or adverse modification of critical habitat.

50 C.F.R. § 402.02. Following the issuance of a "jeopardy" opinion, Interior must either terminate the action, implement the proposed alternative, or seek an exemption from the Cabinet-level Endangered Species Committee. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 653 (2007).

### B. Factual Background

#### 1. Approval of the 2017-22 Leasing Program

The Secretary approved the 2017-22 Five-Year Plan on January 17, 2017, in a Record of Decision that directed BOEM to proceed with 10 scheduled leases in the Gulf and one in Alaska's Cook Inlet. Doc. 14, att. 22. The ten Gulf of Mexico sales were thereby scheduled to occur over the five years of the program, with one sale in 2017, two each in 2018–2021, and one (Lease Sale 261) in 2022. *Id.* at 4. The Gulf of Mexico sales were to be "region-wide and include unleased acreage not subject to moratorium or otherwise unavailable, in the Western, Central, and Eastern Gulf," with the goal of "provid[ing] greater flexibility to industry, including more frequent opportunities to bid on rejected, relinquished, or expired OCS lease blocks." *Id.* This decision adopted BOEM's Proposed Final Program and Programmatic Environmental Impact Statement ("EIS"), the latter of which evaluated the environmental impact of sales of differing scopes. *Id.* at 2–4. In reference to Rice's whale (then called Bryde's whale), the Programmatic EIS concluded that the "biologically important area" for the whale off the Florida coast did not overlap with the Gulf of Mexico program areas. Doc. 14, att. 24, p. 73. The evaluation assumed the continued implementation "of protective measures required by statute, regulation, or current lease stipulations that would likely continue to be adopted in the future." Doc. 14, att. 24, p. 50. Among these were several measures relating to protection of endangered species. Doc. 14, att. 25, pp. 548–58.

## 2. Additional measures adopted for protection of Rice's whale

Following approval of the Five-Year Plan BOEM and BSEE consulted with NMFS to determine the potential impact of the plan on protected species over the next fifty years. This culminated with NMFS's issuance of a biological opinion in March 2020 ("2020 BiOp"). *See* doc. 16, att. 2, pp. 28–29. NMFS concluded that oil and gas activity posed a risk to Rice's whale in portions of the eastern Gulf, particularly from vessel strikes. *Id.* at 578–81. NMFS determined that the jeopardy could be avoided, however, with an RPA consisting of several vessel operating conditions within the purple area shown below:



*Id.* at 624–26.

BOEM disagreed with NMFS's analysis and maintained that vessel traffic from the leases was unlikely to cross the identified habitat.[3] Doc. 16, att. 1, p. 232. Nevertheless, BOEM and BSEE formally accepted NMFS's RPA for Rice's whale and included it as a stipulation in future lease sales under the Five-Year Plan. *Id.*; *see* doc. 14, att. 20, p. 9 (FNOS for Lease Sale 256); doc. 14, att. 18, p. 9 (FNOS for Lease Sale 257); doc. 14, att. 10, p. 9 (PNOS for Lease Sale 261). Meanwhile, environmental groups filed suit against NMFS in the District of Maryland.[4] They argued that the 2020 BiOp understated the risks of oil and gas activity to various species, including Rice's whale, particularly through the threat of oil spills after the Deepwater Horizon disaster and the failure to consider alleged changes in habitat following that spill. *See Sierra Club v. NMFS*, No. 8:20-cv-3060 (D. Md.), at doc. 1.

### 3. Lease sales paused and then resumed under Inflation Reduction Act

In January 2021, President Biden entered an executive order directing the Department of the Interior to pause new oil and gas lease sales pending a comprehensive review. 86 Fed. Reg. 7,619, 7,624 (Jan. 27, 2021). At this point seven of the 10 Gulf lease sales scheduled under the Five-Year Plan had been conducted, with Lease Sales 257, 259, and 261 still pending. *See Louisiana v. Biden*, 622 F.Supp.3d 267, 287–89 (W.D. La. 2022). Louisiana and several other states sued to enjoin the pause and the district court granted

---

[3] Specifically, it noted (as NMFS had in the 2020 BiOP) that the whale's habitat was largely in the area of the Gulf of Mexico which had been under a congressional moratorium from leasing and was now subject to presidential withdrawal. Doc. 16, att. 1, p. 232. BOEM determined that vessels expected to service the leases were more likely to use ports closer to the Western and Central Planning Areas, and thus "unlikely to transit across greater distances through the withdrawal area to get to the leases." *Id.*

[4] As noted above, the plaintiffs in that matter are the same groups as the defendant-intervenors in this case.

the preliminary injunction. *Louisiana v. Biden*, 543 F.Supp.3d 388 (W.D. La. 2021). BOEM then proceeded with Lease Sale 257 in November 2021. *See* doc. 14, att. 17 (Lease Sale 257 FNOS). Before the leases could be issued to the winning bidders, however, environmental groups challenged the sale through a lawsuit based on Interior's alleged failure to consider foreign oil consumption in its pre-sale EIS. *See Friends of the Earth v. Haaland*, 583 F.Supp.3d 113 (D.D.C. 2022). The court vacated BOEM's Record of Decision to conduct the lease sale and industry parties intervened and appealed. *Friends of the Earth v. Haaland*, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023).

In August 2022, with the appeal of *Friends of the Earth* pending, Congress passed the Inflation Reduction Act ("IRA"), PL 117–169. There it ordered Interior to proceed with Lease Sale 257, in accordance with the terms and conditions in the FNOS. *Id.* at § 50264(b). It also ordered that the remaining lease sales be scheduled by specific dates, notwithstanding the expiration of the previous Five-Year Program, "in accordance with the Record of Decision approved by the Secretary on January 17, 2017": Lease Sale 258 (Cook Inlet) by December 31, 2022, Lease Sale 259 by March 31, 2023, and Lease Sale 261 by September 30, 2023. *Id.* at § 50264(c)–(e).

### 4. BOEM conducts further environmental review and proceeds with Lease Sale 259

In October 2022 BOEM and BSEE sent a letter to NMFS requesting reinitiation of consultation on the 2020 BiOp, based on the issues raised in the District of Maryland suit. Doc. 55, att. 1. BOEM then issued a final supplemental EIS on the two remaining Gulf

lease sales, 259 and 261, in January 2023.[5] Doc. 16, att. 1. In the public comment period on this document, environmental groups urged BOEM to remove blocks in the western and central Gulf from the leasing area for the protection of Rice's whale and to expand the areas where mitigation measures were applied. *Id.* at 469, 626–27. In support they referenced a study published in July 2022 by Melissa Soldevilla and others, positing broader distribution of Rice's whale throughout the Gulf based on passive acoustic data. *Id.* at 560.

Upon review of the study, BOEM determined that "not enough information is available at this time to confirm [the whales'] distribution or any seasonal movements outside of the core area that is already considered in this Supplemental EIS." *Id.* It also stated that its environmental analyses had not identified justifiable reasons to restrict the lease sale area and that it believed its stipulations and mitigations provided adequate environmental protection. *Id.* at 469. It further noted that "any individual lease sale could be scaled back during the prelease sale process to offer a smaller area should circumstances warrant." *Id.* BOEM also advised that "BOEM and BSEE's review of plans, permits, and/or authorizations at the post-lease stage includes review of any planned transits through the Rice's whale core habitat." It noted that "[a]t this time, critical habitat has not been identified for the Rice's whale" and that it consulted with NMFS and FWS to determine the required mitigating measures. *Id.* at 626. Accordingly, BOEM stated in the final supplemental EIS:

---

[5] There it acknowledged that it had no discretion on whether to conduct these sales, but stated that it was preparing the supplemental EIS "to follow its normal leasing process to the fullest extent possible . . . ." *Id.* at 6.

> BOEM believes the potential for vessel strikes to sperm and Rice's whale is extremely unlikely to occur due to the generally slow vessel transiting and surveying speeds, limited vessel routes originating from the eastern GOM, and the additional mitigations on vessels within the Rice's whale core area (as defined by the 2020 GOM Biological Opinion [BiOp]) (Soldevilla et al. 2022). The core area has been changing over the years as baseline information becomes available (Rosel and Garrison 2022). **BOEM will continue to monitor current literature and work with NMFS as it relates to consultations, though the conclusions found in the 2017-2022 GOM Multisale EIS and 2018 GOM Supplemental EIS still remain valid.**

*Id.* at 170 (emphasis added). Lease Sale 259 was then conducted as scheduled in March 2023, as a regionwide sale of "all of the available unleased acreage in the GOM OCS" with unrelated minor adjustments to the lease stipulations.[6] Doc. 14, att. 14 (Lease Sale 259 FNOS). The sale was closed with industry bidding nearly $310 million for 313 tracts covering 1.6 million acres, and BOEM accepting bids and issuing leases for 295 tracts. *See* Oil and Gas Lease Sale 259, Final Bid Recap (Mar. 29, 2023), *available at* bit.ly/3EfOhqQ.

That month, BOEM also issued a PNOS for Lease Sale 261 with the same stipulations. Doc. 14, atts. 8 & 10. BOEM indicated, however, that it was "considering removing the area comprising the northeastern Gulf of Mexico and continental shelf break between the 100 meters and 400 meters in depth isobaths to protect Rice's Whales that may transit through the area." Doc. 14, att. 8, p. 7. It also expressly "reserve[d] the right to modify the sale area in the Final NOS, including removing additional areas from Lease Sale 261." *Id.* As required by statute, the PNOS was published in the Federal Register and subject to comment from the governors of affected states. In response the governors of

---

[6] BOEM converted three stipulations (for Baldwin County, topographic features, and live bottom) into area exclusions and added a stipulation for royalties, as required by § 50263 of the IRA. *See* doc. 14, att. 14, pp. 14–15.

Alabama, Mississippi, and Texas all objected to the proposed withdrawal. Doc. 55, att. 3, p. 23.

### 5. BOEM shifts approach to Rice's whale and adopts challenged provisions for Lease Sale 261's Final Notice of Sale

Despite the conclusions of the supplemental EIS, the government soon appeared to change its mind regarding the protections needed for Rice's whale. In a stipulation filed on July 21, 2023, in the *Sierra Club* suit, NMFS and plaintiffs agreed to stay proceedings while NMFS worked to update the challenged 2020 BiOP. No. 8:20-cv-3060 (D. Md.), at doc. 147. The stipulation indicated that this consultation had been prompted by the letter from BOEM and BSEE to NMFS, requesting to reopen consultation on the 2020 BiOp. *Id.* at doc. 147, p. 2. The stipulation also indicated that NMFS might designate a critical habitat for Rice's whale and that BOEM would issue notice to lessees and operators during the reinitiated consultation. *Id.* at doc. 147, pp. 2–3; *see* 88 Fed. Reg. 47,453, 47,460 (proposed designation). Finally, the parties agreed that a lease stipulation for the protection of Rice's whale would be added to Lease Sale 261 and any subsequent Gulf of Mexico oil and gas leases during the reinitiated consultation. *Sierra Club*, No. 8:20-cv-3060, at doc. 147, pp. 2–3; *see id.* at doc. 147, att. 2 (proposed lease stipulation). The proposed stipulation would add several vessel mitigation conditions between the 100- to 400-m -isobaths across the northern Gulf of Mexico on the OCS, eastward from the Mexican border with Texas and westward of the newly designated Rice's whale area shaded in blue below:

23-30666.7510



*Id.* at doc. 147, att. 2. The new mitigation measures include the presence of visual observers on vessels, speed restrictions, limitations on transit "after dusk and before dawn, and during other times of low visibility," and use of Automatic Identification Systems on vessels. *Id.* The district court granted the motion and stayed proceedings. *Id.* at doc. 154.

The FNOS for Lease Sale 261 was issued on August 23, 2023, incorporating the new measures in Stipulation 4(B)(4) and covering a lease area of approximately 67.3 million acres. Doc. 14, att. 4, pp. 11–13; *see* doc. 16, att. 5, pp. 4–5. BOEM also confirmed that it was withholding six million acres in the expanded Rice's whale area from the sale, as alluded to in the PNOS. Doc. 14, att. 2, pp. 11–13. The Department of the Interior explained the actions as follows in a Record of Decision:

> The existing 2020 Biological Opinion, as amended, remains in effect until the reinitiated consultation is completed and a new or amended Biological Opinion becomes available. During the reinitiation process, BOEM will continue to implement the Reasonable and Prudent Alternative for the Rice's whale, and comply with all Reasonable and Prudent Measures and Terms and Conditions under the existing 2020 Biological Opinion, as amended. This includes continuing to request step-down reviews for the prescribed activities and implementing and adaptively managing the mitigation, monitoring, and reporting requirements (2020 Biological Opinion Appendices and/or Conditions of Approval, as amended) imposed by the Bureaus on plans and permits, and as coordinated with NMFS and industry. **In addition, based on a recent study that the endangered Rice's whale occurs in portions of the**

> **northern Gulf of Mexico between the 100-meter and 400-meter isobaths eastward from the Mexico border with Texas and westward of the Rice's Whale Core Area identified in the 2020 Biological Opinion (as amended in April 2021), removing this area from the lease sale could reduce risks to this species while reinitiated consultation with NMFS is ongoing.** Further, the updated Protected Species Stipulation includes interim measures to require certain speed restrictions and other measures between the 100-meter to 400-meter isobaths. These measures will remain in place while the reinitiated consultation is ongoing and until a new or amended biological opinion is issued by NMFS.

Doc. 14, att. 5, pp. 13–14 (emphasis added).

On August 24, 2023, plaintiffs filed their petition for declaratory and injunctive relief in this court. Doc. 1. Four days later they filed a motion for preliminary injunction. Docs. 9, 14. Plaintiffs ask the court to enjoin BOEM from implementing the changes in the FNOS for Lease Sale 261 and argue that these violate the APA and the IRA. Doc. 14; *Shell Offshore Inc.*, No. 2:23-cv-1167, at doc. 4. The two suits have been consolidated for briefing purposes and the environmental group plaintiffs from the District of Maryland suit have been granted leave to intervene. Docs. 52, 58. Government defendants and intervenor defendants oppose the motion. Docs. 53, 55, 56.

### III.
### LAW & APPLICATION

To obtain a preliminary injunction, the movant must show (1) a substantial likelihood of success on the merits of its claims; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the harm the injunction may do to the nonmovant; and (4) that granting the injunction will not disserve the public interest. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). "The grant of injunctive relief is an extraordinary remedy which requires the movant to

unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). The decision lies within the district court's discretion. *Allied Mktg. Grp., Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

### A. Likelihood of Success on the Merits

Plaintiffs advance three legal grounds for voiding the challenged lease terms: (1) their implementation was procedurally invalid; (2) the decision amounted to arbitrary and capricious agency action; and (3) the implementation of the terms violated the IRA. Finding a sufficient showing of merit under the first two arguments, the court does not consider the third. First, however, the court considers procedural objections lodged by defendants.

### 1. Defendants' procedural objections

Both sets of defendants have asserted that plaintiffs are unlikely to succeed on the merits based on certain procedural objections. Intervenor defendants maintain that this court is an improper venue while government defendants contend that plaintiffs have violated OCSLA's requirement that potential litigants provide Interior with notice at least 60 days before filing suit. 43 U.S.C. § 1349(a)(2).

As to venue, a civil suit against a federal agency or official may only be brought in the judicial district where:

> (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1). Plaintiffs base venue on § 1391(e)(1)(B) and (C) in both the lead case, *Louisiana v. Haaland*, and member case *Shell Offshore Inc. v. U.S. Department of Interior*. Intervenor defendants argue that venue is improper in the latter suit because Shell Offshore is the lone plaintiff and has admitted that it is headquartered in Houston, though it maintains facilities in this district in support of its offshore leasing program. *Shell Offshore Inc.*, No. 2:23-cv-1167, at doc. 1, ¶¶ 5, 13. Intervenor defendants also assert that venue is improper under § 1391(e)(1)(B) because the challenged decision-making occurred in Washington, D.C. and the stipulated agreement was signed in Maryland.

On the venue objection, the issue has not been properly raised through a motion to transfer or dismiss. The court declines to issue an advisory opinion on the issue. On government defendants' procedural objection, the court finds no merit. First, as defendants point out, these provisions apply only to citizen suits under OCSLA. They are irrelevant when plaintiffs seek review under the APA. *Hornbeck Offshore Servs., LLC v. Salazar*, 696 F.Supp.2d 627, 636 (E.D. La. 2010). And even if the notice requirements did apply, they are likely excused under § 1349(a)(3) because "the alleged violation constitutes an imminent threat to the public health or safety or would immediately affect a legal interest of the plaintiff." 43 U.S.C. § 1349(a)(3).[7] Plaintiffs' failure to provide notice therefore has no impact on their ability to proceed with these claims.

---

[7] Defendants maintain that plaintiffs' prospective interest in the parcels does not qualify as a legal interest and so they have no recourse for challenging any changes in the FNOS. This position is based on an unpublished decision from the D.C. Circuit, wherein the court held that a scheduled wind lease auction did not immediately affect plaintiffs' legal interests because the leases themselves did not authorize any activity in the leased area. *Fisheries Survival Fund v. Haaland*, 858 F. App'x 371, 374 (D.C. Cir. 2021). As explained in *Friends of the Earth*, however, a case involving Lease Sale 257, the lease sale stage for oil and gas leases authorizes certain ancillary activities including geological and geophysical exploration. 583 F.Supp.3d at 133. Additionally, the lease sale form grants the lessee exclusive rights to drilling and production and the applicable regulations provide "an irretrievable commitment of resources in the

## 2. Whether the changes were procedurally valid

Plaintiffs contend that the implementation of the challenged provisions and acreage withdrawal were procedurally invalid. Specifically, they assert that BOEM/Interior were obliged under OCSLA to provide notice and an opportunity for comment before altering the terms of Lease Sale 261 in the FNOS. Defendants maintain that the PNOS provided sufficient notice of the changes, and point out that governors of certain affected states already objected to the proposed acreage withdrawal.

As to those violations, the APA requires that the court hold unlawful and set aside any agency action found to be "without observance of procedure required by law." 5 U.S.C. 706(2)(D). OCSLA carves out a significant opportunity for state stakeholders to participate in the leasing process. Within sixty days of a PNOS, state and local governments may submit recommendations on "the size, timing, or location of a proposed lease sale." 43 U.S.C. § 1345(a)–(b). The Secretary must accept these recommendations if they "provide for a reasonable balance between the national interest and the well-being of the citizens of the affected State." *Id.* at § 1345(c). The Secretary must also communicate his or her decision on the recommendation in writing to the governor of the affected state. *Id.*

BOEM's regulations facilitate this input as well comment by the public. Specifically, BOEM is required to publish each proposed notice of sale in the Federal Register to facilitate the state and local governments' input. 30 C.F.R. § 556.304(c). The publication must include "the proposed lease terms and conditions of sale, and proposed

---

sense that once a lease is issued, BOEM cannot unilaterally undo that decision for at least five years and the government must pay a penalty if it does so." *Id.* at 136. Accordingly, the lease sale stage grants the lessee a legal right and this right is immediately impacted by changes to the FNOS.

stipulations to mitigate potential adverse impacts on the environment." *Id*. BOEM must "consider **all** comments and recommendations received in response to the proposed notice of sale." 30 C.F.R. § 556.307(a) (emphasis added).

The PNOS for Lease Sale 261 was issued in March 2023, soon after BOEM had publicly confirmed through its supplemental EIS that it did not believe additional measures were required to protect Rice's whale. The challenged lease term for the expanded Rice's whale area only arose in a July 2023 district court filing and then appeared in the FNOS for Lease Sale 261 on August 25, 2023—one month before the statutory deadline for the sale. BOEM failed to follow its own procedures by making significant changes to the FNOS, thereby depriving both affected states and the public the opportunity for meaningful review and comment. The procedural error is particularly grave here, because of both the compressed timeline and BOEM's inexplicable about-face on the scientific record it had previously developed. As described below, Louisiana has a significant stake in offshore leasing. Because of BOEM's bait and switch tactics, however, it was deprived of its statutorily guaranteed right to address a significant modification to leasing protocols for a long-term lease sale off its coast. As emphasized at oral argument, the last-minute changes and challenged terms may also have sizable impacts on bidding dynamics and operations for the industry parties.[8] Accordingly, the insertion of the challenged provisions into the FNOS for Lease Sale 261 was procedurally invalid. Plaintiffs have carried their burden of showing a likelihood of success on the merits under this claim.

---

[8] *See, e.g.*, doc. 14, atts. 13 & 15.

23-30666.7516

### 3. Whether the challenged provisions are arbitrary and capricious

The APA also requires that a court "hold unlawful and set aside" an agency action if it is found to be "arbitrary, capricious, [or] an abuse of discretion[.]" 5 U.S.C. § 706(2)(A). This standard "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, __ U.S. __, 141 S.Ct. 1150, 1158 (2021). The court "must set aside any action premised on reasoning that fails to account for relevant factors or evinces a clear error of judgment." *Texas v. United States*, 40 F.4th 205, 226 (5th Cir. 2022) (internal quotations omitted). Put another way, the reviewing court must ensure that "the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio Project*, 141 S.Ct. at 1158. In reviewing an agency's action, the court may only consider the reasoning articulated by the agency itself and may not credit post hoc rationalizations. *Wages and White Lion Investments, LLC v. USDA*, 16 F.4th 1130, 1136 (5th Cir. 2021) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 53 (1983)).

Plaintiffs assert that BOEM acted arbitrarily and capriciously by failing to (1) explain its change in position, (2) justify the challenged provisions, and (3) consider other important factors. They show a strong likelihood of success on the merits under all three prongs. Neither the Record of Decision announcing the new provisions nor the FNOS explains BOEM's shift in position from its supplemental EIS issued in January 2023. In the latter document BOEM concluded on review of the Soldevilla study that "not enough information is available at this time to confirm [the whales'] distribution or any seasonal

movements outside of the core area that is already considered in this Supplemental EIS." Doc. 16, att. 1, p. 560. Accordingly, it determined that "the potential for vessel strikes to sperm and Rice's whale is extremely unlikely to occur due to the generally slow vessel transiting and surveying speeds, limited vessel routes originating from the eastern GOM, and the additional mitigations on vessels within the Rice's whale core area" and "the conclusions found in the 2017-2022 GOM Multisale EIS and 2018 GOM Supplemental EIS still remain valid." *Id.* at 170. In the Record of Decision supporting the challenged provisions, however, the Secretary justified the change in position "based on a recent study that the endangered Rice's whale occurs in portions of the northern Gulf of Mexico between the 100-meter and 400-meter isobaths eastward from the Mexico border with Texas and westward of the Rice's Whale Core Area identified in the 2020 Biological Opinion," i.e., the Soldevilla study.

This is the only scientific justification offered for the challenged provisions, representing an unexplained about-face from a position taken by the agency just months before. BOEM offered no explanation for its new stance on the same body of evidence, let alone using this pivot to justify measures pending a final determination by NMFS. This leaves the impression that the 2023 Record of Decision is merely an attempt to provide scientific justification to a political reassessment of offshore drilling. Additionally, the 2023 Record of Decision does not show any reevaluation of the other factors BOEM is required to consider in recommending areas for leasing. *See* 43 U.S.C. § 1344(a)(2); 30 C.F.R. § 556.302(a)(1). Though the relevant paragraph discusses BOEM's obligations under the ESA and its other environmental obligations, it makes no reference to the impact

of the measures on production or the availability of acreage for energy exploration. BOEM devoted only one paragraph to its decision and failed to explain how these alternatives were selected, a stark contrast to the prior environmental reviews conducted with respect to the leases authorized under this Five-Year Plan.

The agreed-upon RPAs for protection of Rice's whale were added after years of deliberation. After the leasing pause, BOEM conducted a supplemental EIS with notice and comment but found no basis for altering its measures with respect to the whale. The challenged provisions inserted into these leases at the eleventh hour, and the acreage withdrawal, are based only on an unexplained change in position by BOEM on a single study a few months after that supplemental EIS. The process followed here looks more like a weaponization of the Endangered Species Act than the collaborative, reasoned approach prescribed by the applicable laws and regulations. Even when an agency's decision is based on political considerations, it is not excused from justifying the position—particularly when the decision is a pivot from a prior policy. Failure to do so leads to "surprise switcheroo" by an agency against regulated entities. *E.g.*, *Wages and White Lion Investments, LLC*, 16 F.4th at 1138 (quoting *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005)). The law requires more, especially where the prior policies have engendered reliance interests. *Id.* at 1139. Here BOEM failed to justify its pivot or account for those reliance interests, reinforcing the arbitrariness of its decision. Accordingly, plaintiffs have shown a sufficient likelihood that they will succeed on this claim.

23-30666.7519

## B. Substantial Threat of Irreparable Injury

Next, plaintiffs must show a substantial threat of irreparable harm. Here plaintiffs rely on their economic harm and lost business opportunities. Specifically, the acreage removal and the addition of burdensome lease stipulations will result in lost revenue from Lease Sale 261. Doc. 14, att. 27, ¶¶ 28–34. This could cause economic injury of up to $2.2 million to Louisiana, which is entitled to a share of offshore royalties. *Id.* The industry plaintiffs will also suffer economic injury and impairment to their business development. According to an affidavit from Shell's commercial manager, the new restrictions on vessel traffic apply to an area of the northern Gulf that separates Shell's existing offshore leases from the onshore infrastructure that supports them. *Shell Offshore Inc.*, No. 2:23-cv-1167, at doc. 4, att. 2, ¶¶ 23–27. Imposition of restrictions in this barrier will undermine long-term planning for and execution of its lease operations by, for example, (1) reducing the available hours for supply and increasing the number of ships necessary to make supply runs, (2) restricting Shell's ability to obtain seismic survey data for areas obtained in other lease sales because a survey cannot be designed to exclude individual blocks that are subject to the new stipulation, and (3) creating "costly and unreasonable complications" for Shell as it loses the ability to consolidate operations across leases because of the new restrictions. *Id.* at ¶¶ 23–27. These complications will increase attendant costs for all leases issued from Lease Sale 261 as well as some issued from non-Lease Sale 261 sales. *Id.* at ¶ 23. The same logistical complications apply to Chevron, whose operations manager posits that vessel delays and inefficiencies caused by the challenged stipulation will likely add to the amount of time needed to complete projects in the Lease Sale 261 and increase drilling

costs on Lease Sale 261 leases "by a significant factor."[9] Doc. 14, att. 15. Finally, the industry plaintiffs show that the last-minute changes impact their ability to bid fairly on leases under Lease Sale 261 and to bid on the six million acres withdrawn from the sale. Doc. 14, att. 11, ¶¶ 12–16; doc. 14, att. 13, ¶¶ 14–16; *Shell Offshore Inc.*, No. 2:23-cv-1167, at doc. 4, att. 2, ¶ 28.

In return defendants point out that there was low interest in the now-excluded area when it was offered during Lease Sale 259, with BOEM receiving bids on only 16 out of the circa 1200 blocks in that area. Doc. 55, att. 6, ¶ 8. They challenge Louisiana's estimate of lost revenues, arguing that the calculations are simplistic and overlook that most revenue is generated from older leases. They also argue that this harm is not irreparable because, if the court were to ultimately vacate Lease Sale 261 in a final adjudication on the merits of this case, Interior would then conduct a sale consistent with the court's orders. Finally, they maintain that the industry defendants' purported compliance costs are too speculative. They also assert that alleged harms based on bidding dynamics are based on the faulty premise that bidders are entitled to know all final conditions of sale at the time of the PNOS.

A harm is irreparable when "there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Economic loss therefore rarely qualifies as an irreparable harm. *Optimus Steel, LLC v. U.S. Army Corps of Eng'rs*, 492 F.Supp.3d 701, 725 (5th Cir. 2020). Because of the government's sovereign immunity, however, it will "be difficult, if not impossible" for plaintiffs to recover their funds.

---

[9] Robichaux estimates that this cost could rise to a million dollars or more per vessel, per day if supply disruptions cause drilling to be suspended. *Id.* at ¶ 14.

*Louisiana v. Biden*, 543 F.Supp.3d at 417. "In determining whether costs are irreparable, the key inquiry is 'not so much the magnitude but the irreparability.'" *Restaurant Law Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 597 (5th Cir. 2023) (quoting *Texas v. EPA*, 829 F.3d 405, 433–34 (5th Cir. 2016)). Accordingly, "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and concurring in the judgment)).

The court observes that plaintiffs have demonstrated substantial potential costs resulting from the challenged provisions. While the government defendants largely focus on the acreage withdrawal and dynamics of the sale itself, many of plaintiffs' alleged hardships arise from the vessel restrictions. Industry plaintiffs have shown a likelihood that these will burden their operations on current and planned leases. The resulting costs would not be undone by the court's entry of a permanent injunction and order of another sale. Plaintiffs also show that no other mechanism exists for recovering the compliance costs because of the government's sovereign immunity. Accordingly, plaintiffs satisfy this step of the inquiry.

### C. Whether Balance of Equities Supports Injunctive Relief

Finally, the party seeking a preliminary injunction must show that (1) the threatened injury to the movant outweighs the harm the injunction may do to the nonmovant and (2) granting the injunction will not disserve the public interest. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). When the government is a party, these factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

23-30666.7522

As described above, the industry plaintiffs and the state of Louisiana face a substantial risk of irreparable economic harm if the injunction is not granted. Additionally, the sale is currently under a statutory deadline. If it does not take place as scheduled, government defendants are no longer under any congressional mandate to proceed with the lease sale. Meanwhile, if the government finds justification for additional measures to protect Rice's whale, it may pursue these through the Department of the Interior's oversight of lessees' exploration and production plans. *See* 43 U.S.C. §§ 1340(c)(1), 1351(c) (describing Interior's ability to require modifications of exploration and production plans or cancel them to avoid environmental harm); *see also Ctr. for Biological Diversity*, 563 F.3d at 473 (same). Given the shaky justification offered by BOEM, the court cannot find that the challenged provisions are so necessary that withholding them even on a preliminary basis will outweigh the risk of irreparable economic harm shown by plaintiffs. Additionally, "there is generally no public interest in the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (internal quotations omitted).

The government defendants contend that last-minute changes to the sale will create administrative chaos for BOEM and potentially disadvantage non-party bidders who have been preparing for the sale on the announced terms. They have produced no evidence on behalf of these non-party bidders, however. Meanwhile, API, as representative of nearly 600 companies in the oil and gas industry, is one of the parties to this suit requesting preliminary injunctive relief. Additionally, the plaintiffs only request that certain terms be stricken from the existing FNOS. Government defendants fail to show that this necessitates

the issuance of a new Notice of Sale.[10] The court must also balance the IRA's mandate that this sale proceed with the regulatory complications created by the unlawful agency action. Accordingly, the weight of equities supports injunctive relief.

### D. Court's Authority to Grant Injunction

Finally, defendants challenge the court's ability to grant the requested injunctive relief. They argue that (1) plaintiffs seek an improper permanent injunction; (2) a mandatory injunction is not available on plaintiffs' claims under § 706(2) of the APA; (3) alternatively, plaintiffs have not met the heightened standard for a mandatory injunction; and (4) the court lacks authority to grant mandamus relief.

#### 1. Whether relief sought is improper permanent injunction

Government defendants assert that plaintiffs' motion for preliminary injunction is *per se* a motion for permanent injunction because it is indistinguishable from the final relief sought under the complaint. But certain factors in this case, namely the eleventh-hour change to the FNOS and the looming statutory deadline for the sale, necessitated that plaintiffs seek injunctive relief before the court could issue a final adjudication on the merits.[11] Additionally, plaintiffs have shown a substantial likelihood of success on the merits of their claims. Given that the statutory deadline for the sale will expire before this matter can be brought to trial, and that plaintiffs have established a legal interest in seeing

---

[10] Indeed, as plaintiffs point out, BOEM has changed actual terms less than a week prior to a sale in order to comply with the law. *See* News Releases, Fact Sheets, and Notices for Sale 196, BOEM, https://www.boem.gov/oil-gas-energy/leasing/news-releases-fact-sheets-and-notices-sale-196 (including "Change to Notice of Sale 196" on August 10, 2005, and sale results on August 16, 2005).

[11] Government defendants point out that the statutory mandate may remain in effect even if the deadline is missed. *E.g.*, *Brock v. Pierce Cnty.*, 476 U.S. 253 (1986). Given the lengthy political fight over these sales, however, and the resulting congressional mandate, the court views the statutory deadline as a critical matter.

23-30666.7524

this sale proceed, the court can only preserve their right to relief in a final adjudication through the issuance of a preliminary injunction. Meanwhile, the government can see these preliminary measures undone if it does prevail on the merits by voiding the sales or proceeding with additional regulation through Interior's authority over further steps of offshore leasing, exploration, and production.

### 2. Availability of mandatory injunction for APA violations

Next, the court turns to the availability of mandatory injunctive relief under the APA. Both of plaintiffs' claims arise under § 706(2) of that statute, based on government defendants' failure to follow procedures and the arbitrary and capricious agency action. Plaintiffs maintain that their requested relief is not an order for affirmative agency action but instead one prohibiting the agency from including the two challenged provisions in the sale. They therefore maintain that it is well within the scope of the court's authority. *See, e.g.*, *Cigar Ass'n of Am. v. FDA*, 480 F.Supp.3d 256, 281 (D.D.C. 2020) (enjoining only one aspect of agency action).

Assuming that the requested relief amounts to a mandatory injunction, the court finds that such relief would be available in this matter. In "rare circumstances," remand to the agency is not the appropriate solution for a § 706(2) violation and the court may instead order affirmative agency action. *O'Reilly*, 477 F.3d at 238–39 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). "Remand, not vacatur, is generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given the opportunity to do so" and where vacatur would be "disruptive." *Tex. Assoc. of Manufacturers v. U.S. Consumer Product Safety Comm.*, 989 F.3d 368, 389–390

(5th Cir. 2021); *Cent. & S.W. Servs.*, 220 F.3d 683, 692 (5th Cir. 2000). Here the government defendants have not shown such a possibility, even if the court credits their post hoc rationalizations. As for disruptiveness, government defendants have failed to substantiate their claims of the complications arising from changes to the sale. Additionally, the court must consider the statutory deadline imposed on this specific lease sale after multiple contentious legal battles over the remaining leases in the 2017–22 Five-Year Plan. Plaintiffs have shown that it would be significantly disruptive to their interests to allow Interior to proceed with Lease Sale 261 under the challenged terms, and that it is plaintiffs rather than defendants who lack any other recourse. Accordingly, remand is not the proper remedy here.

Finally, as defendants note, preliminary injunctions ordering a party to take a certain action must meet a higher standard. Mandatory preliminary injunctive relief, "which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) (citations omitted). In this matter, plaintiffs have met the heightened standard. The imposition of the challenged terms right before a statutory sale deadline, the unavailability of any other recourse to plaintiffs, and the fact that defendants may see all this neatly undone if they prevail on the merits leave the court with only one option at this stage.

## IV.
### CONCLUSION

For the reasons stated above, the court hereby **ORDERS** that the Motions for Preliminary Injunction be **GRANTED.** Accordingly, the government defendants are enjoined from implementing the acreage withdrawal and Stipulation 4(B)(4) as described in the Final Notice of Sale and Record of Decision for Lease Sale 261. Government defendants are ordered to proceed with Lease Sale 261, absent the challenged terms, by September 30, 2023.

**THUS DONE AND SIGNED** in Chambers on the 21st day of September, 2023.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

23-30666.7527

# TAB 5

Sale 261 is the second ROD that relies on the analysis in the GOM Lease Sales 259 and 261 Supplemental EIS.  BOEM has reviewed new and relevant information since the issuance of the GOM Lease Sales 259 and 261 Supplemental EIS and has verified that the GOM Lease Sales 259 and 261 Supplemental EIS adequately addresses the environmental effects of the proposed action.  There are no new circumstances, information, or changes in the proposed action or its impacts that require supplementation of the GOM Lease Sales 259 and 261 Supplemental EIS.

## 2  DECISION

Pursuant to my authority to exercise the delegable functions and duties of the Assistant Secretary for Land and Minerals Management, I have chosen to offer for lease in GOM Lease Sale 261 a subset of the blocks analyzed as Alternative D in the GOM Lease Sales 259 and 261 Supplemental EIS, with the exclusion of whole and partial blocks that were previously subject to the Topographic Features Stipulation, the Live Bottom (Pinnacle Trend) Stipulation, and the Blocks South of Baldwin County, Alabama, Stipulation.  In the GOM Lease Sales 259 and 261 Supplemental EIS, Alternative D excluded the blocks listed in Items 1 through 6 below.  My decision is to also exclude those blocks listed in Items 7 through 11 below.  Excluding additional blocks that contain banks[1] that are adjacent to blocks previously included in the Topographic Features Stipulation would protect sensitive benthic habitat in Garden Banks 181.  Excluding blocks identified in Items 8 through 10 from this lease sale will help reduce identified space-use conflicts or competing interests in the GOM while we study whether these areas are compatible for use by more than one infrastructure type, and maintains the status quo and reduces or avoids any potential impacts on these blocks while that analysis takes place.  Finally, in Item 11, excluding whole and partial blocks between the 100-meter and 400-meter isobaths across the northern Gulf of Mexico could reduce potential conflicts with the endangered Rice's whale.  Recent limited evidence shows that the Rice's whale may be present in this area and removing the area reduces risks from new leasing while BOEM and the Bureau of Safety and Environmental Enforcement (BSEE) are engaged in a reinitiated consultation with National Marine Fisheries Service (NMFS) (described below).  A benefit of this alternative over Alternative A (a GOM lease sale of all unleased available blocks in the Western Planning Area [WPA], Central Planning Area [CPA], and Eastern Planning Area [EPA]) is that it avoids sensitive benthic habitat and visual resources rather than applying mitigation measures to protect the habitat and resources.  Excluding blocks in items listed in 8 through 10 below helps reduce identified space-use conflicts or competing interests in the GOM, and does not otherwise alter the analysis and other reasonably foreseeable impacts of Alternative D.  Excluding blocks in Item 11 below would help reduce potential impacts to Rice's whale, if present in the area.

In making my decision, I have considered the analyses in the 2017-2022 GOM Multisale EIS, 2018 GOM Supplemental EIS, GOM Lease Sales 259 and 261 Supplemental EIS, and the documents incorporated by reference.  The impacts of Alternative A and the chosen subset of Alternative D are not materially different, except for the additional benefits of eliminating potential impacts to benthic habitat from bottom-disturbing activities and visual impacts from OCS oil- and gas-related activities,

---

[1] "Banks" are a combination of underwater mountains, ridges, troughs, and hard bottoms patches.

considered environmentally preferable because not holding the lease sale would preclude OCS oil-and gas-related activities related to new leases from occurring, along with the resulting environmental effects in the Gulf of Mexico. However, significant OCS oil- and gas-related activity would be expected to continue under existing leases, and the decision to not hold a single lease sale would result in only slightly less cumulative OCS oil- and gas-related activity. In the short term, assuming OCS oil- and gas-related activities remain confined to acreage currently leased, OCS operators would likely reevaluate their exploration, delineation, and development strategies across their existing portfolio and reallocate resources accordingly. This could also lead to small increases in the intensity of the activities in already leased areas and attendant small increases in impacts in those areas. Regardless, Alternative E was not selected because, under the IRA, BOEM must hold GOM Lease Sale 261 by the end of September 2023. I cannot choose Alternative E absent an act of Congress.

## 5 MITIGATING MEASURES

As part of the decision to hold GOM Lease Sale 261, all practicable means to avoid or minimize environmental harm from the selected alternative at the lease sale stage are being adopted. In addition, post-lease activities (e.g., exploration and development plans), which may be expected as a result of GOM Lease Sale 261, will undergo additional environmental review and may include additional project-specific mitigating measures applied as conditions of individual plan approvals. The various mitigating measures adopted for the lease sale, and those that may be applied during post-lease reviews, are summarized below.

*Lease Stipulations* – I have decided that the leases will be offered subject to the relevant lease stipulations described in the GOM Lease Sales 259 and 261 Supplemental EIS. Because the OCS blocks that were previously subject to the Topographic Features Stipulation, Live Bottom (Pinnacle Trend) Stipulation, and Blocks South of Baldwin County, Alabama, Stipulation have all been removed from leasing under the chosen lease sale area, a subset of Alternative D, these stipulations will not be applied to leases issued as a result of this sale. The eight lease stipulations that I am adopting for GOM Lease Sale 261 are as follows: the Military Areas Stipulation; the Evacuation Stipulation; the Coordination Stipulation; the Protected Species Stipulation; the United Nations Convention on the Law of the Sea Royalty Payment Stipulation; the Stipulation on the Agreement between the United States of America and the United Mexican States Concerning Transboundary Hydrocarbon Reservoirs in the Gulf of Mexico; the Restrictions Due to Rights-of-Use and Easement for Floating Production Facilities Stipulation; and Royalties on All Produced Gas Stipulation. The Protected Species Stipulation was also updated for this sale to include interim measures to protect the endangered Rice's whale within the 100-meter to 400-meter isobaths across the northern Gulf of Mexico, until BOEM and BSEE complete reinitiated consultation with the NMFS under the Endangered Species Act (ESA) (refer to *Endangered and Threatened Species Protections* below). These eight stipulations will be added as lease terms where applicable and are enforceable as terms of the lease. The eight stipulations being applied to GOM Lease Sale 261 are provided in full in the Final Notice of Sale package. The blocks to which each stipulation applies are identified on the map entitled, "Final Notice of Sale, Gulf of Mexico OCS Oil and Gas Lease Sale 261, September 2023, Stipulations and Deferred Blocks," which is included in the Final Notice of Sale package.

*Site-Specific Conditions of Approval* – There are post-lease conditions of approval that have been developed through experience and post-lease environmental analyses that are more appropriately applied during site-specific, plan, and permit approval stages. Many of these mitigating measures have already been adopted and incorporated into BOEM's and BSEE's approved plans and permits for blocks leased in previous lease sales in accordance with processes established in regulations to adopt measures identified in the National Environmental Policy Act analyses or ESA consultations relevant to OCS exploration, development, and production activities. For example, additional mitigating measures may require surveys to detect and avoid archaeological sites and biologically sensitive areas, such as topographic features and deepwater benthic communities. BOEM and BSEE incorporate the applicable conditions of approval into plans and permit approvals. All submitted plans and permit applications for site-specific, OCS oil- and gas-related activities (e.g., exploration and development plans, pipeline applications, and structure-removal applications) also go through additional review by BOEM, BSEE, or both to ensure compliance with established laws and regulations.

BOEM and BSEE have developed a list of over 120 "standard" conditions of approval that are often applied to plan or permit approvals. Appendix B of the 2017-2022 GOM Multisale EIS, which is incorporated by reference into the GOM Lease Sales 259 and 261 Supplemental EIS, provides a list and description of many of these post-lease conditions of approval that may be required by BOEM or BSEE as a result of plan and permit review processes in their respective New Orleans Office and Gulf of Mexico OCS Region office. These conditions of approval include hazard survey reviews, inspection requirements, notifications, post-approval submittals, and safety precautions. Many of these conditions of approval clarify existing mitigation requirements included in regulations or lease instruments, based on site-specific reviews. The conditions cover such areas as air quality, archaeological resources, artificial reef material, deepwater benthic communities, the Flower Garden Banks National Marine Sanctuary, topographic features, potentially sensitive biological features, hard bottoms, military warning areas, hydrogen sulfide, drilling hazards, remotely operated vehicle surveys, geophysical survey reviews, and general safety concerns. BOEM or BSEE may also apply conditions of approval that are developed on a case-by-case basis during the plan or permit approval process.

*Endangered and Threatened Species Protections* – On April 20, 2018, the U.S. Fish and Wildlife Service (FWS) issued its 10-year programmatic Biological Opinion under the ESA for BOEM's and BSEE's oil- and gas-related activities in the Gulf of Mexico. The FWS Biological Opinion does not include any terms and conditions for the protection of endangered species that the Bureaus, lessees, or operators must implement. On March 13, 2020, NMFS issued a Biological Opinion and related terms and conditions and reasonable and prudent measures for future approvals of oil- and gas-related activities (including lease sales) in the Gulf of Mexico for the protection of species listed as endangered or threatened under the ESA and under NMFS jurisdiction. The NMFS programmatic Biological Opinion, as amended, addresses any future lease sales and approvals issued by BOEM and BSEE, under both existing and future OCS oil and gas leases in the GOM, over a 10-year period. Applicable terms and conditions and reasonable and prudent measures from the NMFS Biological Opinion are included in this lease sale in the Protected Species Stipulation; other specific conditions of approval will also be applied to site-specific, post-lease approvals (e.g., permits and plans) and environmental

reviews.  The 2020 NMFS Biological Opinion[3] made a jeopardy determination concerning the Bryde's whales (now known as the Rice's whale) due to the potential for vessel strikes from service vessels transiting the Rice's whale area, which is largely in the portion of the Gulf of Mexico currently subject to a 2020 Presidential Withdrawal.[4]  Therefore, this area is not included in this lease sale or in the 2020 NMFS Biological Opinion.  BOEM notified NMFS that it was adopting the reasonable and prudent alternative for the Rice's whale and continues to review the analyses in the 2020 NMFS Biological Opinion to ensure that any future Federal action it undertakes will not violate Section 7(a)(2) of the ESA, which prohibits any action that would jeopardize the continued existence of a listed species or cause adverse modification of designated critical habitat.  Both BOEM and BSEE will ensure that both the lease sale and any post-lease approvals comply with Section 7(a)(2) of the ESA.  In addition, BOEM will continue to provide the National Oceanic and Atmospheric Administration with the opportunity for a step-down review of certain post-lease approvals (e.g., seismic surveys, and new and unusual technologies) pursuant to the process specified in the Biological Opinion.  In those areas not subject to the 2020 Presidential Withdrawal, BOEM will process requests to conduct geological and geophysical surveys related to the oil and gas program, conduct site-specific reviews, and consider, as appropriate, any relevant provisions of NMFS' Biological Opinion, including application of relevant terms and conditions and reasonable and prudent measures.

On October 25, 2022, BOEM and BSEE requested reinitiation of the consultation with NMFS based on a reevaluation of the oil-spill analysis presented in the 2020 Biological Opinion, as well as BOEM's preparation of an updated oil-spill risk analysis in the GOM, and to incorporate certain previously developed and implemented conditions of approval.  The existing 2020 Biological Opinion, as amended, remains in effect until the reinitiated consultation is completed and a new or amended Biological Opinion becomes available.  During the reinitiation process, BOEM will continue to implement the Reasonable and Prudent Alternative for the Rice's whale, and comply with all Reasonable and Prudent Measures and Terms and Conditions under the existing 2020 Biological Opinion, as amended.  This includes continuing to request step-down reviews for the prescribed activities and implementing and adaptively managing the mitigation, monitoring, and reporting requirements (2020 Biological Opinion Appendices and/or Conditions of Approval, as amended) imposed by the Bureaus on plans and permits, and as coordinated with NMFS and industry.  In addition, based on a recent study that the endangered Rice's whale occurs in portions of the northern Gulf of Mexico between the 100-meter and 400-meter isobaths eastward from the Mexico border with Texas and westward of the Rice's Whale Core Area identified in the 2020 Biological Opinion (as amended in April 2021), removing this area from the lease sale could reduce risks to this species while reinitiated consultation with NMFS is ongoing.  Further, the updated Protected Species Stipulation includes interim measures to require certain speed restrictions and other measures between the 100-

---

[3] The 2020 NMFS Biological Opinion was amended in April 2021 to address changes in certain terms and conditions, reasonable and prudent measures and certain step-down consultation procedures and to account for new mitigations implemented through Bureau conditions of approval.

[4] Since issuance of the 2020 NMFS Biological Opinion, President Trump exercised authority granted him under Section 12(a) of OCS Lands Act, 43 U.S.C. § 1341(a), and issued a presidential memorandum on September 8, 2020, that withdrew the Gulf of Mexico Energy Security Act moratorium area (that had been in effect until June 30, 2022) from leasing for an additional 10 years, beginning on July 1, 2022, and ending on June 30, 2032.

meter to 400-meter isobaths. These measures will remain in place while the reinitiated consultation is ongoing and until a new or amended biological opinion is issued by NMFS. BOEM has documented that nothing in this lease sale or the reasonably foreseeable post-lease activities will prevent the Bureaus and Department from complying with their obligations under Section 7 of the ESA to prevent jeopardy to listed species or adverse modification of designated critical habitat. The impacts to ESA-listed species from an oil and gas lease sale were addressed in the 2017-2022 GOM Multisale EIS, 2018 GOM Supplemental EIS and GOM Lease Sales 259 and 261 Supplemental EIS, and were used to support the proposed action; the completion of the two Biological Opinions and the reinitiation of consultation do not significantly alter the conclusions in those EISs and thus supplementation is not required.

BOEM petitioned NMFS for rulemaking under the Marine Mammal Protection Act to assist industry in obtaining incidental take coverage for all marine mammals due to oil and gas geological and geophysical surveys in the Gulf of Mexico. On December 8, 2020, NMFS submitted to the *Federal Register* its final rule as a result of the petition; with the publication of the final rule, NMFS amended its 2020 Biological Opinion (which also served as the intra-service consultation for the rule) in April 2021. The final rule includes additional mitigating measures beyond what is currently within Appendices A and C of the 2020 NMFS Biological Opinion. These additional mitigation measures will be applied by industry through the rule and the Letter of Authorization process and would only be expected to further reduce impacts already addressed in the 2017-2022 GOM Multisale EIS and 2018 GOM Supplemental EIS. As the final incidental take regulation took effect on April 19, 2021, survey operators are now able to apply for Letters of Authorization. BOEM acknowledges that, due to some initial calculation errors (which largely meant that exposure numbers for certain species were underestimated), industry was reaching annual take limits earlier than expected or needed. The NMFS subsequently announced a plan to replace the existing rule, and on January 5, 2023, published a proposed incidental take regulation with a revised analysis. The effective end date of this rulemaking will remain the same as the original (April 18, 2026). See 88 Fed. Reg. 916 (Jan. 5, 2023).

***Mitigation Monitoring and Adaptation*** – BOEM and BSEE continually assess compliance and effectiveness of mitigating measures, where appropriate, to allow BOEM's New Orleans Office and BSEE's Gulf of Mexico OCS Region office to adjust mitigation as needed. This effort relies on lessees or operators submitting required information within the specified time period after plan and permit approvals or after triggering events (e.g., end of operations reports for plans, construction reports for pipelines, and removal reports for structure removals). This information is tracked and assessed by BOEM, BSEE, or both.

***Enforcement*** – BSEE has the authority under 30 CFR part 250 subpart N to inspect operations and enforce the conditions of any lease terms, including stipulations, as well as the conditions of any plan or permit approval. BOEM may likewise refer potential violations to BSEE for investigation and potential enforcement. BSEE may impose penalties on or require corrective actions from any lessee or any operator that fails to comply with the terms of a lease, including stipulations and other mitigation measures, and conditions of any post-lease plan approvals or permits.

13

# TAB 6

| | |
|---|---|
| High Island Area, East Addition (Leasing Map TX7A) | 6, 10, 38-42, 45, 46, 60-65, 74-76, 83, 84, 85, |
| Mobile (Leasing Map NH 16-04) | 765-767, 778, 779, 809-824, 826-830, 853-874, 897-918, 942, 946, 947, 954-962, 991, 999-1006 |
| Main Pass Area (Leasing Map LA10) | 6, 39-44, 58-60, 86-90, 92-120, 125-129, 139, |
| Main Pass, South and East Addition (Leasing Map LA10A) | 161, 162, 180, 181 |
| South Pelto Area (Leasing Map LA6B) | 1-20, 23-25 |
| Sabine Pass Area (LA) (Leasing Map LA12) | 8-16 |
| South Marsh Island Area, North Addition (Leasing Map LA3D) | 207-237, 241-249, 259-261, 267, 268 |
| Ship Shoal Area (Leasing Map LA5) | 24-26, 37, 38, 63-75, 84-100, 107-114, 119, 120 |
| South Timbalier Area (Leasing Map LA6) | 9-11, 16-18, 34, 51, 52, 54, 55, 66, 67, 72 |
| Sabine Pass Area (TX) (Leasing Map TX8) | 9, 17, 18, 40, 44 |
| Viosca Knoll (Leasing Map NH 16-07) | 23, 34-38, 67, 78-82, 111, 155 |
| Vermilion Area (Leasing Map LA3) | 11, 30, 49, 51-54, 68-77, 86-96, 108-111 |
| West Cameron Area (Leasing Map LA1) | 20-22, 41-45, 56-60, 78-83, 90-95, 113-118, 128-134, 146-150, 153-157, 160, 161, 162, 168-172, 181 |
| West Cameron Area, West Addition (Leasing Map LA1A) | 154-157, 160-162, 287 |
| West Delta Area (Leasing Map LA8) | 20-31, 32, 43-50, 56-61 |

- **Whole or partial blocks whose lease status is currently under reconsideration; and**
- **Any remaining blocks in which the status of existing leases is under appeal, if the lease status is not resolved before publication of the Final NOS.**

BOEM reserves the right to modify the sale area in the Final NOS, including removing additional areas from Lease Sale 261. Specifically, BOEM is considering removing the area comprising the northeastern Gulf of Mexico and continental shelf break between the 100 meters and 400 meters in depth isobaths to protect Rice's Whales that may transit through the area.

The final list of blocks available for bid will be posted on BOEM's website at https://www.boem.gov/Sale-261/ under the Final NOS tab.

## Bonus Bid Deposit for Apparent High Bids

Each bidder submitting an apparent high bid must submit a bonus bid deposit to ONRR equal to one-fifth of the bonus bid amount for each such bid. A copy of the notification of the high bidder's one-fifth bonus bid amount can be obtained on the BOEM website at http://www.boem.gov/Sale-261/ under the heading "Notification of EFT 1/5 Bonus Liability" after 1:00 p.m. on the day of the sale. All payments must be electronically deposited into an interest-bearing account in the U.S. Treasury by 1:00 p.m. Eastern Time the day following the bid reading (no exceptions). Account information is provided in the "Instructions for Making Electronic Funds Transfer Bonus Payments" found on the BOEM website identified above.

Bidders must submit payment to their financial institution as soon as possible on the day of bid reading and no later than 7:00 pm Eastern Time on the day of bid reading. This will help ensure that deposits have time to process through the U.S. Treasury and post to ONRR. ONRR cannot confirm payment until the monies have been moved into settlement status by the U.S. Treasury.

BOEM requires bidders to use EFT procedures for payment of one-fifth bonus bid deposits for GOM Lease Sale 261, following the detailed instructions contained on the ONRR Payment Information webpage at https://www.onrr.gov/ReportPay/payments.htm. Acceptance of a deposit does not constitute, and will not be construed as, acceptance of any bid on behalf of the United States.

## Withdrawal of Blocks

The United States reserves the right to withdraw any block from this lease sale prior to issuance of a written acceptance of a bid for the block.

## Acceptance, Rejection, or Return of Bids

The United States reserves the right to reject any and all bids, regardless of the amount offered. Furthermore, no bid will be accepted, and no lease for any block will be awarded to any bidder, unless:
1) The bidder has complied with all applicable regulations and requirements of the Final NOS, including those set forth in the documents contained in the Final NOS package;
2) The bid is the highest valid bid; and
3) The amount of the bid has been determined to be adequate by the authorized officer.

Any bid submitted that does not conform to the requirements of the Final NOS, OCSLA, or other applicable statute or regulation will be rejected and returned to the bidder. The United States Department of Justice and the Federal Trade Commission will review the results of the lease sale for any antitrust issues prior to the acceptance of bids and issuance of leases.

## Bid Adequacy Review Procedures for GOM Lease Sale 261

To ensure that the U.S. Government receives fair market value for the conveyance of leases from this sale, BOEM will evaluate high bids in accordance with the bid adequacy procedures that are effective on the date of the sale. The bid adequacy procedures are available on BOEM's website at http://www.boem.gov/Oil-and-Gas-Energy-Program/Leasing/Regional-Leasing/Gulf-of-Mexico-Region/Bid-Adequacy-Procedures.aspx.

23-30666.2505

**Lease Award**

Leases issued as a result of GOM Lease Sale 261 are expressly limited to oil and gas exploration and development. As noted in section 19 of the lease form, all rights in the leased area not expressly granted to the Lessee by the Act, the regulations, or this lease are hereby reserved to the Lessor.

BOEM requires each bidder that is awarded a lease to complete the following:

1) Execute all copies of the lease (Form BOEM-2005 [February 2017], as amended);

2) Pay by EFT the balance of the bonus bid amount and the first year's rental for each lease issued in accordance with the requirements of 30 CFR 1218.155 and 556.520(a); and

3) Satisfy the bonding requirements of 30 CFR part 556, subpart I, as amended.

ONRR requests that bidders use only one transaction for payment of the balance of the bonus bid amount and the first year's rent. Once ONRR receives such payment, the bidder awarded the lease may not request a refund of the balance of the bonus bid amount or first year's rental payment.

# XI.  Delay of Sale

The BOEM GOM RD has the discretion to change any date, time, and/or location specified in the Final NOS if the RD deems that an emergent event could interfere with a fair and orderly lease sale. Such events could include, but are not limited to, natural disasters (e.g., earthquakes, hurricanes, floods), wars, riots, acts of terrorism, fires, strikes, civil disorder, or other events of a similar nature. In case of such events, bidders should call (504) 736-0557, or access the BOEM website at http://www.boem.gov, for information regarding any changes.

# XII.  Upcoming Milestones

After the Governors of the affected States (Texas, Mississippi, Florida, Alabama, and Louisiana) and local governments have had an opportunity to comment on the size, timing, and location of the proposed lease sale, as required by section 19 of OCSLA (see 43 U.S.C. § 1345), the Assistant Secretary for Land and Minerals Management will decide how to proceed with GOM Lease Sale 261. Following the Assistant Secretary's decision, BOEM will publish a Final NOS in the *Federal Register* at least 30 days prior to the date of the public bid reading. The Final NOS Package will be available on BOEM's website at http://www.boem.gov/Sale-261/.

The Department of the Interior reserves the right to revise the areas offered for bidding and associated terms and conditions described in this Proposed NOS.

23-30666.2506

# TAB 7

BOEM has identified Alternative D (No Action) from the Final Programmatic EIS as the environmentally preferable alternative. Section 2.9 and Section 4.5 of the Final Programmatic EIS support the identification of Alternative D as the environmentally preferred alternative in the Program areas analyzed. However, Alternative D does not meet the purpose and need for action as stated in the Final Programmatic EIS as it leaves a void in planning for national energy needs.

The selection of the 2017-2022 Program as described in the PFP and Section 2.8 of the Final Programmatic EIS (Alternative C – Preferred Alternative) is based on a balancing of national policy considerations as outlined in Chapter 2 of the PFP and explained throughout the PFP. These considerations arise from the statutory directive to best meet national energy needs, while weighing the factors identified in Section 18(a) of OCSLA. With an oil price of $40 per barrel, the 2017-2022 Program makes available approximately 70 percent of the oil and gas resources that are economically recoverable and nearly one half of the estimated undiscovered technically recoverable OCS oil and gas resources.

BOEM also considered the application of programmatic mitigation measures in the Final Programmatic EIS, including some that do not affect the size, timing, and location of the proposed lease sales. The following measures avoid or minimize adverse effects in the Gulf of Mexico and Cook Inlet Program Areas, respectively: 1) Protection of Biologically Sensitive Underwater Features in the GOM (Final Programmatic EIS, Section 2.6.1.3) and 2) Alaska Conflict Management Plan (Final Programmatic EIS, Section 2.6.2). BOEM recommends adoption of these two landscape-scale mitigation measures and requests your approval at the program stage because of their comparative importance and basis in longstanding applications with proven efficacy in the respective OCS regions.

Alternative B in the Final Programmatic EIS also considers the exclusion of Beluga Whale Critical Habitat in the northernmost part of Cook Inlet Program Area. Although BOEM is not recommending this exclusion at this time, the Final Programmatic EIS recognizes the seasonal importance of that critical habitat area to beluga whales. In December 2016, BOEM completed the Cook Inlet Lease Sale 244 Final EIS in which BOEM considers seasonal restrictions on seismic surveys and exploration drilling in the Cook Inlet Beluga Whale Critical Habitat area as part of its preferred alternative. BOEM recommends a more detailed lease sale analysis of this seasonal restriction in the EIS for the proposed Cook Inlet Lease Sale 258 in the 2017-2022 Program.

The Final Programmatic EIS also discusses additional mitigation measures that have been historically applied at the lease sale stage to avoid or minimize environmental harm (see Appendix I). Adopting all the mitigation measures in Appendix I at the Program stage of the planning process is impracticable because most measures are developed for and individually applied to specific circumstances associated with each lease sale offering and subsequent site-specific plan approvals. However, while most of these site- or resource-specific mitigation measures are not adopted at the Program stage, they should be considered, and if applied, monitored for compliance, as appropriate, during subsequent stages. Additional specific mitigation measures may also be developed and applied, as appropriate.

At the conclusion of the 60-day period that commenced upon submission of the PFP to the President and Congress, BOEM recommends that you approve the 2017-2022 OCS Oil and Gas Leasing Program as set forth in the PFP issued on November 18, 2016, with the addition of the two programmatic mitigation measures stated above. Moreover, BOEM recommends you direct the Bureau to analyze a seasonal restriction on seismic surveys and exploration drilling for Cook Inlet Lease Sale 258, in order to mitigate the site- and seasonally-specific potential for impacts to beluga whales, as broadly recognized in the Final Programmatic EIS, Section 2.1.10.

Secretarial Decision

My approval of this memorandum constitutes the decision to proceed as described in the PFP, which schedules 11 potential oil and gas lease sales, one sale in the Cook Inlet (Alaska) Program Area and 10 sales in the GOM Program Area. The Cook Inlet sale would include the northern portion of the Cook Inlet Planning Area, which is adjacent to areas of oil and gas development in State waters. It would be scheduled for 2021. The GOM sales would be region-wide and include unleased acreage not subject to moratorium or otherwise unavailable, in the Western, Central, and Eastern Gulf of Mexico. BOEM recommends this region-wide approach to provide greater flexibility to industry, including more frequent opportunities to bid on rejected, relinquished, or expired OCS lease blocks. The 10 GOM sales are scheduled to occur over the 5 years of the 2017-2022 Program, with one sale in 2017, two each in 2018-2021, and one in 2022.

My approval includes adoption of the application, at the programmatic stage, of the two mitigation measures mentioned above, the Protection of Biologically Sensitive Underwater Features in the GOM and the Alaska Conflict Management Plan.

Moreover, I direct BOEM to analyze a seasonal restriction on seismic surveys and exploration drilling for Cook Inlet Lease Sale 258.

Attachments

Approved: _____     Disapproved: _____

Secretary of the Interior

Date: ___JAN 1 7 2017___

Attachments

# TAB 8

listed species and/or critical habitat, such as fishery surveys, which are not or cannot be covered by the Oil and Gas GOM BiOp.

Following the lease sale(s), when any COPs are submitted to BOEM, site specific effects of construction, operation, and decommissioning of any future wind projects will be considered in later consultations on BOEM's proposed approval of the COPs.

**Rice's whale**

We highlight to BOEM' the Rice's whale habitat in the GOM Call Area. This species -- the most highly endangered large whale in the world -- is considered to have its core habitat area in the northeastern GOM. The Rice's whale core distribution area in the northeastern GOM is based on visual sighting data, and includes a 30-km buffer around known whale sightings that accounts for animal movement of tagged whales and uncertainty. However, increasing evidence from sighting data, passive acoustic monitoring (PAM), and habitat suitability modeling is showing Rice's whale's occurrence in the western and central GOM at the edge of the continental shelf in the depth band from 100 to 400 meters (Appendix A). Their occurrence in the western and central GOM is persistent, with PAM data indicating sporadic occurrence of Rice's whales throughout the year, on 16-30% of days, and presence in every month of the year (Soldevilla et al, in review[11]; Soldevilla, unpublished). Maintaining the long-term monitoring partnership with BOEM through Gulf of Mexico Marine Assessment Program for Protected Species (GoMMAPPS) provides the capacity for population monitoring on a broad scale across its known range. Further, targeted surveys, expanded tagging, and comprehensive monitoring through a network of passive acoustics and environmental DNA (eDNA) to further understand Rice's whale distribution, abundance, and seasonality in the western and central GOM will be of critical benefit in refining the potential for interactions with offshore wind activities. Assessing potential co-occurrence of this species and avoiding impacts to it should be one of BOEM's top priorities for endangered and threatened species considerations in the draft PEA.

Offshore wind energy development activities have the potential to cause the following stressors to the Rice's whales: vessel strikes; entanglement; entrapment; habitat destruction and modification and reduction in habitat range; changes to migrating or reproduction behavior; impacts to prey and prey availability; marine debris; disruption of feeding caused by alterations to diving patterns; noise impacts; and increased predation risks. Due to very small population size, restricted habitat range, and seemingly poor health of individual animals, the loss of even a single reproductive female could lead this species to extinction. Such a finding in an ESA Section 7 consultation on proposed leasing would lead to a jeopardy conclusion, precluding the proposed leasing. Also, and as mentioned above, rulemaking is currently underway to establish Rice's whale critical habitat in the GOM based on sightings data, long-term PAM, and habitat suitability modeling. ESA consultations on proposed leasing will need to be conducted or possibly re-initiated when critical habitat designation becomes final. **NOAA Fisheries recommends no offshore wind leasing and/or development occur within the boundaries of the currently known distribution of Rice's whales in the western and central GOM, between the 100 to 400 meter isobaths.**

---

[11] Soldevilla, Melissa S., Amanda J. Debich, Lance P. Garrison, John A. Hildebrand, and Sean M. Wiggins. Rice's Whales in the Northwestern Gulf of Mexico: Call Variation and Occurrence Beyond the Known Core Habitat. Submitted to *Endangered Species Research*.

23-30666.6138

# TAB 9

BOEM considered the recommendations of the Governors pursuant to Section 19 of OCSLA and BOEM's regulations at 30 CFR 556.307(b). Similar to considerations for GOM Lease Sale 259, BOEM has determined that offering the area recommended herein for the Final NOS provides sufficient access to available acreage for leasing (approximately 67.3 million acres), ensures effective environmental protection, and provides a reasonable balance between the national interest and the well-being of citizens of Alabama, Mississippi, Texas, Florida, and Louisiana. The acreage offered in this sale is nearly the same as that offered in GOM Lease Sale 259 (held on March 29, 2023), with the exception of an additional exclusion of whole and partial blocks between the 100 m and 400 m isobaths across the northern Gulf of Mexico on the OCS. The exclusion of whole and partial blocks between the 100 m and 400 m isobaths provides a reasonable balance between protecting the endangered Rice's whale, which may occur in portions of this area, at least while reinitiated consultation is ongoing with NMFS (as described below), and offering a sizeable area for leasing that will continue to meet national energy needs and provide for the well-being of citizens on the Gulf coast. And while Lease Sale 259 offered less acreage than other GOM regionwide sales under the 2017-2022 National OCS Program, Lease Sale 259 resulted in more bids on more acres with a greater sum of high bids than any other sale in this Program. As such, BOEM is confident that the final sale area for Lease Sale 261 offers sufficient acreage to support robust leasing.

Additionally, the identified exclusions will help reduce space-use conflicts and competing interests in the Gulf of Mexico and avoid sensitive benthic habitat and visual impacts to onshore resources. Also, exclusion of the expanded Rice's whale area from Lease Sale 261 minimizes disturbances to the Rice's whale in areas where they are believed to occur. BOEM's recommendations on the sale area align with the Department's move toward a policy of avoidance rather than mitigation. Accordingly, BOEM recommends adopting the lease sale area described in Option A.4 and shown in **Figure 1**. BOEM does not recommend adopting the States' recommendations to include "all available acreage" as was done for past GOM regionwide lease sales. If the decision is to adopt the recommended lease sale area, BOEM will prepare a response in writing to Governors Abbott, Ivey, and Tate, notifying each of them of the reasons for rejecting their recommendations. BOEM will then proceed with holding GOM Lease Sale 261 as directed by the IRA under the terms described in the Final NOS.

### Other Comments Received

BOEM also received comments from Chevron U.S.A. Inc. (Chevron; May 12, 2023), American Petroleum Institute (API; May 15, 2023), and the Center for Biological Diversity (CBD; May 12 and 15, 2023). BOEM considered comments from these parties in making its recommendations for Lease Sale 261. Chevron stated its support for holding Lease Sale 261 but raised concerns over BOEM's proposed exclusions, including blocks that were previously available and subject to lease stipulations; whole and partial blocks identified as either Wind Energy Area Options (Areas A, B, C, D, E, F, G, H, J, K, L, and N) or final Wind Energy Areas (Areas I and M); and blocks identified as significant sediment resource areas. Chevron also stated it would be inappropriate and outside the legal authority for BOEM to remove blocks within the identified Rice's whale corridor. Similarly, API stated its support for holding Lease Sale 261. API also disagreed with BOEM's proposal to remove acreage from the sale area, arguing that doing so is inconsistent with the statutory language in the IRA, and specifically regarding the Rice's whale areas, premature and unsupported by evidence. Chevron and API requested that BOEM offer for lease all available acreage not subject to moratoria in the Gulf of Mexico. In contrast, CBD stated that BOEM

On October 25, 2022, BOEM and BSEE requested reinitiation of the ESA consultation with NMFS considering an upcoming oil-spill risk analysis and to incorporate certain previously developed and implemented mitigations for Rice's whales. The 2020 BiOp, as amended, will remain in effect until the reinitiated consultation is completed and a new or amended BiOp becomes available. During the reinitiation process, BOEM will continue to implement the reasonable and prudent alternative and comply with all reasonable and prudent measures and terms and conditions under the existing 2020 BiOp, as amended. This includes continuing to request step down reviews for the prescribed activities and implementing and adaptively managing the mitigation, monitoring, and reporting requirements (2020 BiOp Appendixes and/or Conditions of Approval) imposed by the Bureaus on plans and permits, and as coordinated with NMFS and industry. In addition, BOEM has updated the Protected Species stipulation to include a new paragraph B.4, which provides certain interim protections for the Rice's whale between the 100 m and 400 m isobaths east of the Mexican border with Texas and west of the Rice's whale area identified in the 2020 NMFS BiOp. These interim measures in paragraph B.4, which will be in place while the reinitiated consultation is ongoing, include maintaining a vigilant watch during transit, separation distances, speed restrictions, and avoidance of transit through the area at night or during low visibility to the maximum extent practicable.

The impacts to ESA-listed species from an oil and gas lease sale and associated future activities were addressed in the 2017–2022 GOM Multisale EIS and used to support the proposed action; new and updated information has been included in the 2018 GOM Supplemental EIS and GOM Lease Sales 259 and 261 Supplemental EIS as appropriate. Based on the most recent and best available information at the time, BOEM and BSEE will continue to closely evaluate and assess risks to listed species and designated critical habitat in upcoming environmental compliance documentation under NEPA and other applicable statutes.

***Essential Fish Habitat (EFH)*:** Pursuant to section 305(b) of the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. § 1855(b)), Federal agencies are required to consult with NMFS on any action that could result in adverse effects on EFH. BOEM prepared an EFH Assessment technical report that describes the OCS proposed activities, analyzes the effects of the proposed activities on EFH, and identifies proposed mitigating measures (BOEM 2022). The EFH Assessment was sent to NMFS on May 25, 2022, with a letter requesting formal consultation. The NMFS responded to BOEM's consultation request with conservation recommendations on July 29, 2022. The regional programmatic EFH consultation concluded on September 27, 2022, when BOEM and BSEE responded via letter to NMFS' conservation recommendations. This consultation covers reasonably foreseeable oil and gas activities on the Gulf of Mexico OCS. Reasonably foreseeable activities include proposed lease sales and activities related to exploration, development, production, and decommissioning, including, but not limited to, geological and geophysical activities, drilling, construction, support, removal, and site clearance operations. The agreed upon conservation recommendations contain provisions for initiating supplemental discussions should it be determined that site-specific or activity-specific consultation is necessary.

### Compliance with National Historic Preservation Act (NHPA), Section 106 (54 U.S.C. § 306108)

Section 106 of the NHPA requires that Federal agencies with direct or indirect jurisdiction over a proposed federal, federally assisted, or federally licensed undertaking, take into account the

# TAB 10

and C to align with the incidental take regulation and updated the COAs developed since the release of the programmatic 2020 BiOp. The Appendices and COAs may be imposed on lessees and operators through ESA compliance reviews associated with the 2020 BiOp when lessees or operators submit requests for plans or permits, or through Letters of Authorization issued under the incidental take regulation. Any additional mitigations applied by industry through the rule would only be expected to further reduce impacts already addressed in the 2017-2022 GOM Multisale EIS, 2018 GOM Supplemental EIS, and GOM Lease Sales 259 and 261 Supplemental EIS. As the final incidental take regulation took effect on April 19, 2021, survey operators are now able to apply for Letters of Authorization. BOEM acknowledges that, due to some initial calculation errors (which largely meant that exposure numbers for certain species were underestimated), industry was reaching annual take limits earlier than expected or needed under the regulation. The NMFS has subsequently announced a plan to replace the existing rule with a new or amended rule prior to the existing one expiring, though the effective end date will remain as April 18, 2026. On January 5, 2023, NMFS published a proposed incidental take regulation with a revised analysis. See 88 Fed. Reg. 916 (Jan. 5, 2023).

Section 50264 of the Inflation Reduction Act (IRA) requires that GOM Lease Sale 261 be held on or before September 30, 2023, regardless of expiration of the 2017-2022 National Outer Continental Shelf Oil and Gas Leasing Program.

**ESA Section 7(d) Determination**

Section 7(a)(2) of the ESA requires Federal agencies, in consultation with NMFS, to ensure that their actions are "not likely to jeopardize the continued existence of any" listed species (or destroy or adversely modify its designated critical habitat; 16 U.S.C. § 1536(a)(2)). Section 7(d) of the ESA requires that, after initiation (or reinitiation in this case) of consultation under Section 7(a)(2), the Federal agency "shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any RPA measures which would not violate subsection (a)(2) of this section" (16 U.S.C. § 1536(d)).

For the reasons below, BOEM has determined that a decision to hold GOM Lease Sale 261, and the subsequent approval of post-lease exploration, drilling, and production activities in the GOM during NMFS' reinitiated consultation, are consistent with the requirements of ESA Section 7(d). The approval and/or conduct of these activities will not foreclose the formulation or implementation of any RPA measures that may be necessary to avoid jeopardy (or the likely destruction or adverse modification of critical habitat).[3] Furthermore, NMFS recently proposed to designate critical habitat for Rice's whale (88 FR 47453) and green sea turtles (88 FR 46572). Given the current reinitiated

---

[3] Reasonable and prudent alternatives (RPAs) refer to alternative actions identified during formal consultation that can be implemented in a manner consistent with the intended purpose of the action, that can be implemented consistent with the scope of the Federal agency's legal authority and jurisdiction, that are economically and technologically feasible, and that the Director believes would avoid the likelihood of jeopardizing the continued existence of listed species or resulting in the destruction or adverse modification of critical habitat (defined at 50 CFR § 402.02).

23-30666.7029

# TAB 11

| 2020 | 34 | 51 | Endangered | Hayes et al. 2021 |
| 2022 | 34 | 51 | Endangered | Hayes et al. 2023 |

12.     The most recent NOAA stock assessment report for Rice's whales lists the potential biological removal (PBR) of Rice's whale individuals without impacting the population's viability as 0.07, and is the lowest value of any marine mammal species included in the U.S. Atlantic and Gulf of Mexico (Hayes et al. 2023) . The PBR estimate represents the maximum number of animals (excluding natural mortality) that can be removed from the population that still allows for the population to reach a sustainable goal (https://www.fisheries.noaa.gov/laws-and-policies/glossary-marine-mammal-protection-act#potential-biological-removal-(pbr)-level). For Rice's whales, a PBR of 0.07 indicates that less than one Rice's whale can die from non-natural causes *per decade* in order for the species to reach a sustainable population. For comparison, the only large whale species more vulnerable that the Rice's whales is the North Pacific right whale (found in the U.S. Pacific Coast and Alaska and estimated to number less than 30 individuals (Young et al. 2023)). The species has a PBR of 0.05, and the stock assessment report states that a sustainable take rate for species "would be equivalent to one take every 20 years" (Young et al. 2023).

13.     Based on ship-based surveys in 2009, NOAA believed Rice's whales inhabited a "core area" (also referred to as a Biologically Important Area) in the northeast Gulf of Mexico along the West Florida Shelf (Waring et al. 2013; LaBrecque et al. 2015) (Figure 1). Although there had been a low number of observations of Rice's whales west of Florida in the Gulf of Mexico (Waring et al. 2004), the majority of observed Rice's whales had occurred in the core area. For instance, in the 2001 SEFSC spring vessel surveys, there was a single observation of a Rice's whale west of Florida and outside of the core area due south of the Texas/Louisiana Border between the 100 m and 1000 m isobaths (Waring et al. 2004; LaBrecque et al. 2015). Additional acoustic and ship-based surveys (e.g., Rice et al. 2014a; Rice et al. 2014b; Širović et al. 2014; Hodge et al. 2015b; Soldevilla et

17.     The Bureau of Ocean Energy Management recently produced a map, included in Lease Sale 261, that accurately reflects the updated understanding of Rice's whale habitat.



Figure 2. Map of the Gulf of Mexico, the expanded Rice's whale distribution in the Gulf of Mexico compared to the previous "Core Area" in in the northeast Gulf of Mexico.

### III.     Threats to Rice's whale survival and recovery.

18.     Rice's whales are at chronic and/or acute risk from shipping traffic, oil spills, increases in noise, and other human activities combined with changing oceanographic conditions within the Gulf of Mexico.

19.     Rice's whales are particularly susceptible to vessel strikes. The probability of ship strikes to marine species is influenced by the amount of vessel traffic in an area, the size and speed of transiting vessels, the overlap between key habitats and shipping lanes, and the animal's diving behavior and time spent near the surface (Soldevilla et al. 2017). As a shallower water baleen whale species, Rice's whales are known to reside closer to the surface, particularly at night, compared to other endangered cetaceans in the Gulf of Mexico. Results from a tagged Rice's whale individual

10

shows that it spent 70% of its time within 15 m of the surface, indicating a vulnerability to ship strikes. Indeed, the Rice's Whale Recovery Workshop identified vessel strikes as one of the greatest threats to Rice's whales (NOAA Fisheries 2021). Although cetacean fatalities from vessel strikes are often difficult to document, particularly for Rice's whales in the Gulf of Mexico, there has been at least one documented ship strike fatality of a Rice's whale (Soldevilla et al. 2017). Consequently, for the Gulf of Mexico Oil and Gas Program Incidental Take Statement, vessel level of activity is used as a proxy indicator for the level of ship strike risk, rather than the number of injured animals (2020 BiOp at 606–07).

20.     Vessel noise is another likely major stressor to the Rice's whale. Marine mammals may suffer major impairments to their fitness and survival due to vessel noise (National Research Council 2003, 2005; Hatch et al. 2008; Jensen et al. 2009; Gervaise et al. 2012; Hatch et al. 2012a; Culloch et al. 2016; Cholewiak et al. 2018; Putland et al. 2018). The noise generated from passing vessels directly overlaps with the higher-sensitivity frequency range of what baleen whales are predicted to hear, as well as overlaps with the frequency range where most baleen whale vocalizations occur, consequently masking their vocalizations (Clark et al. 2009; Erbe et al. 2016), and significantly decreasing the distance over which whales can communicate with each other (Hatch et al. 2012b; Cholewiak et al. 2018). A study of New Zealand Bryde's whales demonstrated a >95% decrease in communication range as a function of passing vessel noise (Putland et al. 2018), which may have detrimental consequences to long term fitness for species in high noise environments that rely on acoustic communication to mediate long distance social and reproductive interactions. Bryde's whales are the closely related sister species to Rice's whales (Rosel et al. 2021), and a good proxy for how Rice's whales might respond to vessel noise.

21.     Oil spills also have been identified as an extensive threat to Rice's whales (NOAA Fisheries 2021). While the exact mechanism of injury is not clear, it may be possible for Rice's

whales to ingest oil when feeding, as well as breathing in aerosolized oil particles, which is why EPA air quality standards are mentioned in the BiOp in the context of possible impacts to Rice's whales. The long term consequences of acute and chronic exposure to oil for cetaceans is unclear; however, studies of oil exposure in other animal models indicates a variety of deleterious physiological effects (Geraci 1990). The Deepwater Horizon oil spill was estimated to have caused up to a 22% decline in the Rice's whale population size (Hayes et al. 2018). With the extensive oil and gas activity in the Gulf of Mexico, the potential risk of future oil spills cannot be disregarded.

**IV. An evaluation of the prior assumptions made and mitigation measures contained in the NMFS BiOp and Final Supplemental EIS for Lease Sale 261 on Rice's whales.**

22. The prior analyses from both NMFS (the 2020 BiOp) and the Bureau of Ocean Energy Management (Supplemental EIS for Lease Sale 261) did not adequately account or mitigate for the presence of Rice's whales outside of the previously-recognized "core" area in the eastern Gulf of Mexico. To begin, information contained in the Amended ITS was assembled before predictive spatial modeling of Rice's whale distribution in the Central and Western Gulf of Mexico Planning Areas. As such, it contains some now obsolete assumptions on Rice's whale habitat and its current population status. Data collected after the issuance of the Final Supplemental EIS have significant implications for threats to Rice's whale. Recognizing the need for adaptive management approaches to mitigate impacts to Rice's whales, the Amended Incidental Take Statement from April 2021 states:

> "Reinitiation [of the Biological Opinion] may be needed if . . . New scientific information becomes available about the Gulf of Mexico Bryde's whale relevant to our assessment of the effects of the action on this species, which could include information about population trends or distribution, significant changes to the known distribution area, distribution outside the Bryde's whale area or publication of new density models or abundance estimates. This information may be relevant to inform our vessel strike analysis, which involved uncertainty regarding Bryde's whales outside the area where they are usually observed." (2021 Amended ITS at 24–25).

23. The BiOp assumes that Rice's whales do not inhabit the Western or Central Planning Areas of the Gulf and are confined to NOAA's identified "core area" in the northeastern Gulf of

reduction would reduce risk of lethal vessel strike to Gulf of Mexico Bryde's whales, specifically in the area off Louisiana where vessel traffic is highest and risk of strike may be most likely for occurrences of animals outside the Bryde's whale area. This would reduce potential for strike risk similar to the voluntary speed reduction that has been implemented in Harauki Gulf, New Zealand for that localized population of Bryde's whales (Ebdon et al. 2020)."

26.     The mitigation measures in the BiOp alone do not adequately mitigate noise exposure or vessel strikes for Rice's whales.

27.     First, the mitigation measures only pertain to the Rice's whale core area. As explained above, individuals are known to move into the central and western Gulf of Mexico (Soldevilla et al. 2017; Rosel et al. 2021; Soldevilla et al. 2022a; Soldevilla et al. 2022b). With only a voluntary recommendation for speed reduction outside of the core area, the BiOp contains no requirements to mitigate harms from vessels to the Rice's whale outside of the designated core area.

28.     Second, while the BiOp provides recommendations to mitigate vessel strikes and associated vessel noise to Rice's whales in the core area, the RPA does not provide any recommendations to mitigate possible harassment or elevated noise exposure from other sounds associated with other oil and gas activities which are likely to adversely affect Rice's whales in the core area or anywhere else. While vessel noise is a well-established concern for cetaceans (Richardson et al. 1995), it is the chronic exposure to noise that entails long term impacts, which has proven difficult to demonstrate on long-lived cryptic species such as cetaceans. However, small-scale studies have demonstrated rapid changes in stress levels for baleen whales in response to changes in vessel noise (Rolland et al. 2012). With industry vessel source levels ranging between 144–206 dB$_{rms}$ (re: 1 µPa) in different frequency bands (Cholewiak et al. 2018), the spatial extent of vessel noise greatly exceeds 500 m, and is within the range of tens of kilometers (for example, see noise propagation models in the Gulf of Mexico at https://cetsound.noaa.gov/sound_data and

23-30666.7430

https://cetsound.noaa.gov/gallery.php?dir=SoundMaps/GoMEX/Chronic/NA_USEEZ_GOM_Chronic_Sum/GoMEX_Sum_noAG_ThirdOctave, for noise levels from vessels). As an empirical example of the long distance propagation of vessel noise in the Gulf of Mexico, a recent passive acoustic study in the Flower Garden Banks National Marine Sanctuary demonstrates that although the entire sanctuary has an exclusion zone prohibiting all oil and gas activities (*see* 2020 BiOp at 152 fig.20), elevated noise levels caused by a prevalence of nearby vessels and other oil and gas activities were detectable within the sanctuary (Stanley et al. 2021).

## V.      The need for protective measures for Rice's whales.

29.      The Rice's whale population cannot sustain more loss. The most recent NOAA stock assessment report for Rice's whales lists the PBR of Rice's whale individuals without impacting the population's viability as 0.07 (Hayes et al. 2023). The estimated mortality of Rice's whales due to oil and gas activities as described in the Final Supplemental EIS likely exceeds this 0.1 threshold for population sustainability. In other words, without additional mitigation beyond what is discussed in the Supplemental EIS, the oil and gas activities described will likely cause or contribute to a continued decline in Rice's whales. For comparison, the PBR for North Atlantic right whales is higher than Rice's whale at 0.7 (Hayes et al. 2021), yet, in the U.S. Atlantic EEZ, extensive caution and mitigation measures are undertaken by NOAA and BOEM to minimize impacts to right whales from renewable energy development. Given that the species' size of Rice's whale is approximately 10% that of North Atlantic right whales, similar precautionary approaches as used for right whales (e.g., cessation of pile driving or other high-noise activities, rerouting shipping lanes to avoid right whale habitats) should be applied to Rice's whales.

30.      At a minimum, expanding protective measures to the 100–400 m isobaths throughout the Gulf of Mexico is essential. As explained above, the evidence available on Rice's whale habitat and range indicate that the species is not confined to the core area (NMFS 2020; NOAA Fisheries 2021). The protective measures for the species should match the reality of their

current status and existence. The Bureau's decision to recognize this habitat and to include interim measures to protect it as part of Lease Sale 261 is consistent with the best available science on the range of this species and the need to better protect the species from the likely adverse effects of oil and gas activities.

31.     As detailed above, Rice's whales are particularly vulnerable to vessel strikes.  The recent "Spatial analysis of ship strike risk for Rice's whale in the Gulf of Mexico" prepared by Dr. Best applies new data regarding Rice's whale densities throughout their habitat in the Gulf and follows the same methodology and the same vessel data that NMFS employed in the 2020 BiOp to produce an updated assessment of vessel strike risk. According to Dr. Best's analysis, oil-and-gas-related vessel traffic accounts for 40% of the vessel transits and thus 40% of the risk of vessel strikes throughout Rice's whale habitat. This is a significant risk to a species that cannot sustain more loss and for which a small number of potentially fatal vessel strikes would have drastic consequences on the species' continued existence. The Bureau's ROD and Final Notice of Sale include an interim stipulation requiring lessees who secure a lease to follow a combination of interim measures that apply to any vessels associated with that lease. Those measures include limiting speeds to 10 knots or less when transiting Rice's whale habitat and avoiding nighttime transit of Rice's whale habitat to the maximum extent practicable. While these conditions will not be enough to eliminate the overall risk from oil- and gas-related vessel traffic, they are in my opinion essential first steps as they reduce the near-term risk of vessel strike from activities associated with Lease Sale 261.

32.     Similarly, excluding Rice's whale habitat from Lease Sale 261 will also provide some benefit by reducing the overall number of vessels operating within that habitat. The Bureau's ROD for Lease Sale 261 identifies potential for vessel strikes from oil and gas service vessels in the Rice's Whale Core Area in the Eastern Planning Area as a sufficient criterion to exclude the Eastern Planning Area from oil and gas development:

> "The 2020 NMFS Biological Opinion made a jeopardy determination concerning the Bryde's whales (now known as the Rice's whale) due to the potential for vessel strikes from service

vessels transiting the Rice's whale area, which is largely in the portion of the Gulf of Mexico currently subject to a 2020 Presidential Withdrawal. Therefore, this area is not included in this lease sale or in the 2020 NMFS Biological Opinion." (ROD at 12).

Applying the same framework, BOEM then also properly concluded that the potential for vessel strikes supported the exclusion of the more recently recognized expanded habitat in the 100–400 m isobaths throughout the northern Gulf from Lease Sale 261:

> "In addition, based on a recent study that the endangered Rice's whale occurs in portions of the northern Gulf of Mexico between the 100-meter and 400-meter isobaths eastward from the Mexico border with Texas and westward of the Rice's Whale Core Area identified in the 2020 Biological Opinion (as amended in April 2021), removing this area from the lease sale could reduce risks to this species while reinitiated consultation with NMFS is ongoing." (ROD at 12).

33. The oil and gas development that leasing enables can significantly adversely affect whales. Harm from oil spills that occur in or reach their habitat have the most obvious and devastating consequences, as was the case with Deepwater Horizon. In addition to increasing the risks of an oil spill, additional leasing within the whale habitat results in multiple phases of development that generate harmful levels of noise. In addition to vessel noise, the BiOp catalogs likely harm to Rice's whales from seismic airgun surveys used to locate oil deposits on leases as well as activities like pile driving and pipeline construction that are necessary for new platforms or wells. In addition, noise from vessels servicing any new infrastructure increases levels of chronic, ambient noise in the whales' habitat. The BiOp does not provide any recommendations or requirement to mitigate possible harassment or elevated noise exposure from these other sounds associated with other oil and gas activities which are likely to adversely affect Rice's whales. While vessel noise is a well-established concern for cetaceans (Richardson et al. 1995), it is the chronic exposure to noise that entails long term impacts, which has proven difficult to demonstrate on long-lived cryptic species such as cetaceans. However, small-scale studies have demonstrated rapid changes in stress levels for baleen whales in response to changes in vessel noise (Rolland et al. 2012). Excluding all of Rice's whale habitat from the acreage offered in Lease Sale 261 will reduce these risks from activities

resulting from this Lease Sale.

34.     In my opinion, the lease stipulations pertaining to vessels transiting Rice's whale habitat throughout the northern Gulf of Mexico and the exclusion of that habitat from Lease Sale 261 are both necessary, though not sufficient by themselves, to reduce the likelihood of harm to Rice's whales from the effects of Lease Sale 261.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of September, 2023, at Ithaca, NY.

_____

Aaron Rice

# TAB 12

# CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed with the Clerk of the Court

for the United States Court of Appeals for the Fifth Circuit by using the appellate

CM/ECF system on October 6, 2022. I certify that this motion was served on

counsel for all parties via email and the Court's CM/ECF system.

October 6, 2023                    /s/ Christopher D. Eaton

                                   Christopher D. Eaton
                                   EARTHJUSTICE
                                   810 Third Avenue, Suite 610
                                   Seattle, WA 98104
                                   (206) 343-1526
                                   ceaton@earthjustice.org

                                   *Counsel for Intervenors-Appellants*